# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM A. MORGAN, JR., P.C., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SUSAN WISWELL, ) <br> ANGELA MURPHY, ) <br> JOHN DOES(S) 1-10, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO. _____ |

### DECLARATION OF MERRITT WINGATE

I, Merritt Wingate, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. I am Vice President of William A. Morgan, Jr., P.C. ("Morgan"), the Plaintiff in this case. My primary responsibilities include scheduling the accounting and tax work done for clients, supervising the accounting staff, preparing the tax returns for a number of large clients, and reviewing most of the accounting and tax work done by the rest of the accounting staff.

2. The facts set forth in this Declaration are based upon my personal knowledge and, if called to testify about those facts, I could and would do so completely.

3. As an employee at Morgan, I have a username and password that allow me to log into my email account at Morgan. I have reviewed the copies of Morgan's server access logs attached as Exhibit 1 to the Declaration of Natalia Lamb and Exhibits 2, 6, and 7 to the Declaration of Alex Rosenbaum. The entries in the server access logs list dates and times when my username and an invalid password were used in a failed attempt to access my email account at Morgan. During the time period covered by the server access logs, however, I did not make any unsuccessful attempts to log into my email account.

4.  Morgan instituted an email policy on or about June 2, 2002. A copy of that policy is attached as Exhibit 1.

5.  Morgan uses passwords to protect its computer network and email system. Each Morgan employee has a NetWare® password to Morgan's computer network and a GroupWise® password to Morgan's email system. Employees can access their own email account in one of two ways: (1) they can access it locally in Morgan's offices; or (2) they can access it remotely through the Internet. In addition to me, Mr. William Morgan (Morgan's President) and Morgan's office manager have "administrative rights" to access the email accounts of other employees. Morgan's office manager also has administrative access to all documents in Morgan's computer network.

6.  Much of the information contained in Morgan's computer system is highly confidential to Morgan and/or to its clients.

7.  Prior to terminating their employment with Morgan, both Angela Murphy ("Murphy") and Susan Wiswell ("Wiswell"), two of the Defendants in this action, had knowledge of my email password. Moreover, as Morgan's former office manager, Murphy had access to the passwords of every Morgan employee. The only other people who knew my GroupWise® password were Mr. Morgan and Ms. Natalia Lamb, who is Morgan's current office manager and who later discovered the forwarding rules in my email account described in the Verified Complaint.

8.  Morgan hired Murphy as a receptionist in September 1998. Murphy was promoted to office manager in September 1999, and was promoted again to bookkeeper in June 2002.

2

9. Morgan hired Wiswell in April 2001 to work as a Certified Public Accountant to prepare and review tax returns.

10. On the night of June 2, 2005, after Morgan's office had closed for the day, Wiswell returned to the office, cleaned out her belongings, and left a resignation letter on Mr. Morgan's chair. Mr. Morgan discovered Wiswell's resignation letter the next morning. Wiswell did not give any advance notice that she would be terminating her employment; her resignation was effective immediately.

11. On June 16, 2005, Murphy verbally informed Mr. Morgan and I that she would be terminating her employment with Morgan in two weeks. Mr. Morgan asked Murphy if she would continue her employment with Morgan through August 15, 2005 to allow Morgan time to find a replacement, as she was the only bookkeeper at the time, but Murphy refused, stating that her last day would be June 30, 2005.

12. The next day, June 17, 2005, Murphy arrived for work at Morgan's offices. Despite having given Morgan two weeks notice, Murphy permanently departed Morgan's premises by approximately 11:30 a.m., without telling anyone she was leaving.

13. On or about June 27, 2005, while looking through the "Sent" email folder in my email account, I discovered that more than 300 of my email messages had been forwarded by blind copy to the email account notmuchman_01@yahoo.com. The first such email was forwarded at approximately 8:37 a.m. on June 17, 2005. After discovering these forwarded emails, I informed Ms. Natalia Lamb, who handles some Information Technology matters for Morgan and currently serves as Morgan's office manager.

3

14. When an employee leaves, Morgan's practice is to check the employee's email account to ensure that all client matters are attended to. After Wiswell terminated her employment, I discovered while checking Wiswell's email account that, on the evening of July 7, 2005, a confidential email from one of Morgan's clients had been forwarded from Wiswell's employee email account to the email address notmuchman_01@yahoo.com.

15. Copies of email messages sent to my email account at Morgan are automatically forwarded to my Blackberry wireless email device. After receiving forwarded email messages from job candidates on my Blackberry, I later discovered that the original emails had been deleted from my email account at Morgan. I did not delete these emails.

16. On or about July 14, 2005, Morgan disabled the GroupWise® passwords that Defendants had used to access Morgan's email system, and instructed all of its employees to change their email passwords as well.

17. Because Morgan performs accounting work for some clients only periodically, such as quarterly or annually, it may not discover on its own if Murphy and/or Wiswell have stolen or deleted client information until the next time Morgan performs work for such clients, if at all. Under the circumstances, it would be extremely expensive and time consuming for Morgan to attempt to make such a determination now, on its own, and there is no guarantee that Morgan would discover all of the information that Murphy and Wiswell may have stolen or deleted.

18. Murphy tendered her resignation voluntarily without being asked to do so.

19. I received emails and a resume from an individual using the name "Tara Benedict." According to her resume, "Tara Benedict" was employed by Watkins, Meegan,

# EXHIBIT 1

# WILLIAM A. MORGAN, JR., P.C.

# POLICIES AND PROCEDURES

Revised June 2002

TABLE OF CONTENTS

I. COMPENSATION

    A. Paychecks
    B. Overtime
    C. Performance Review
    D. Transportation Allowance

II. LEAVE POLICIES

    A. Vacation
    B. Compensatory Time
    C. Sick Leave
    D. Maternity Leave
    E. Bereavement Leave
    F. CPA Exam
    G. Snow Days
    H. Holidays
    I. Termination
    J. Other

III. EXPENSE REIMBURSEMENT

    A. Mileage Reimbursement
    B. Parking Allowance
    C. CPE Courses
    D. Professional Societies

IV. INSURANCE

    A. Group Health
    B. Group Term Life
    C. Disability

V. FLEXIBLE SPENDING ACCOUNT AND SAR SEP

VI. COMPUTER POLICY

VII. DRESS CODE

VIII. WORKDAY

## FLEXIBLE SPENDING ACCOUNT

The firm maintains a Section 125 Flexible Spending Account program for unreimbursed medical/dental expenses and dependent care.

Employees are eligible to participate in this program on the first of the month following their 30th day of employment. The maximum dependent care contribution is $5,000 per year, and the maximum medical spending contribution is $2,400 per year.

## SAR SEP

The firm maintains a salary reduction SEP plan. All employees are eligible to participate on January 1 of the year following the year in which they are hired. The maximum annual deferral is 15% of total compensation subject to dollar limitations imposed by the Internal Revenue Code.

## COMPUTER POLICY

The firm expressly forbids any employee from installing or deleting any programs from his/her workstation without the prior approval of the managing partner. This includes but is not limited to instant messengers and radio streams.

Firm-provided equipment, software, and communications systems, including but not limited to e-mail and voicemail systems, are firm property and as such are provided to employees for business purposes. Communications and/or documents prepared using firm property are the property of the firm. Access to the Internet and World Wide Web (WWW) via firm communications tools are provided for business purposes only. Employees should be aware that these communications and/or documents are not private but rather are business records subject to subpoena by a court of law. The firm reserves the right to monitor, access, disclose and use the content of communications and/or documents composed, sent, or received on firm systems for any legitimate purpose at any time and without notice.

Employees are expected to exercise reasonable business judgement, subject to management approval, in their use of firm systems and to use firm systems in a professional manner. Excessive personal use of firm systems is strictly prohibited.

Inappropriate use of firm systems is grounds for corrective action up to and including termination, and possible legal action.

Drury & Company, L.L.C., and lived at 425 Kentlands Boulevard in Gaithersburg, Maryland. I also received emails and a resume from an individual using the name "David Waskiewicz." According to his resume, Waskiewicz was employed by Aronson & Company and had attended Indiana University. I arranged interviews with both individuals by email, but neither of them showed up. Copies of those emails (showing the IP Addresses) and resumes are attached as Exhibits 10-13 to the Declaration of Alex Rosenbaum.

20.     I later learned that no one named "Tara Benedict" was employed at Watkins, Meegan, Drury & Company, L.L.C., and that no one name "David Waskiewicz" was employed by Aronson & Company. I also learned that the home addresses given for both individuals were fictitious addresses. I am aware, however, that Murphy attended college in Indiana and that Wiswell was previously employed by Watkins, Meegan, Drury & Company and previously lived in the Kentlands community in Gaithersburg, Maryland.

Date: August 2, 2005

_Merritt Wingate_
Merritt Wingate

5