**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM A. MORGAN, JR., P.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05-cv-1561 |
| | ) | |
| SUSAN WISWELL,  et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT SUSAN WISWELL'S AMENDED
### ANSWER, COUNTERCLAIM AND JURY DEMAND

Pursuant to Fed. R. Civ. Proc. 7 to 15, defendant and counterclaim plaintiff Susan Wiswell ("Wiswell") hereby answers the Complaint filed by plaintiff and counterclaim defendant William A. Morgan, Jr., P.C. ("Morgan"), responding to plaintiff's allegations in the Complaint and raising the defenses and counterclaim set forth below:

### I.  RESPONSES TO THE SPECIFIC ALLEGATIONS IN THE COMPLAINT

**A.    Nature of the Action**

1.    Defendant admits the averments in paragraph 1 that Morgan held itself out as a professional accounting firm, but denies any knowledge as to the status and good standing of Morgan.

2.    Defendant admits that she and Murphy are former employees of Morgan.  Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the remaining averments made in paragraph 2 of the Complaint and thus these allegations are denied.

3.    Defendant denies the allegations set forth in paragraph 3 of the Complaint.

4.    Defendant denies the allegations set forth in paragraph 4 of the Complaint.

5.    Defendant denies the allegations set forth in paragraph 5 of the Complaint.

**B.**    **Jurisdiction and Venue**

6.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 6 of the Complaint and thus these allegations are denied.  Since objections to subject matter jurisdiction can and must be raised at any time, she will supplement her response to this allegation if she later learns that subject matter jurisdiction in this Court is inappropriate.

7.    Defendant admits the allegations in paragraph 7 of the Complaint.

**C.**    **The Parties**

8.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 8 of the Complaint and thus these allegations are denied.

9.    Defendant admits the allegations in paragraph 9 of the Complaint.

10.    Defendant admits the allegations in paragraph 10 of the Complaint.

11.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 11 of the Complaint and thus these allegations are denied.

**MORGAN'S BUSINESS OPERATIONS**

12.    Defendant admits the allegations in paragraph 12 of the Complaint.

13.    Defendant admits that Morgan uses an e-mail system.  However, she is without sufficient knowledge or information to form a belief as to the truth of the technical aspects of the software, described in ¶13; accordingly those allegations are denied.  Defendant also admits that Morgan had policies and procedures for its employees but denies plaintiff's description,

characterization and interpretation of the policy.  Defendant denies all other allegations contained in Paragraph 13 of the Complaint which are not specifically admitted herein.

14.    Defendant admits that Morgan uses passwords for its computers, but denies that the passwords used by Morgan were kept secret.  She is without sufficient knowledge or information to form a belief as to the truth of the technical aspects of the software; accordingly those allegations are denied.  Defendant denies all other allegations contained in Paragraph 14 of the Complaint which are not specifically admitted herein.

15.    Defendant is without sufficient information or knowledge to admit to form a belief as to the truth of the averments made in Paragraph 15, and thus these allegations are denied.

16.    Defendant admits that she was given Ms. Wingate's password by Ms.  Wingate and authorized by Ms.  Wingate to use it.  Defendant is without sufficient knowledge or information to form a belief as to the remaining averments made in paragraph 16 of the Complaint and thus these allegations are denied.

17.    Defendant admits the allegations in paragraph 17 of the Complaint except that she does not have sufficient information or knowledge to form a belief as to when she was hired.

18.    Defendant admits the allegations in paragraph 18 of the Complaint.

19.    Defendant admits that she cleaned out her personal effects from her office on June 2, 2005 and left a letter on Mr. Morgan's chair.  Defendant denies plaintiff's characterization and interpretation of the referenced letter.  Defendant also denies that she quit without advance warning; in fact, defendant was constructively terminated by plaintiff.  Defendant is without sufficient information or knowledge to form a belief as to when Mr. Morgan discovered the letter.  Defendant

denies all other allegations contained in Paragraph 19 of the Complaint which are not specifically admitted herein.

20.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 20 of the Complaint and thus these allegations are denied.

21.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 21 of the Complaint and thus these allegations are denied.

**C.    Defendants' Wrongful Acts**   Defendant denies that the allegations identified under the heading "Defendants' Wrongful Acts" were wrongful.

22.    Defendant admits the allegations in paragraph 22 of the Complaint.

23.    Defendant denies the allegations in paragraph 23 of the Complaint

24.    Defendant denies the allegations in paragraph 24 of the Complaint

25.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 25 of the Complaint and thus these allegations are denied.

26.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 26 of the Complaint and thus these allegations are denied.

27.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 27 of the Complaint and thus these allegations are denied.

28.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 28 of the Complaint and thus these allegations are denied.

29.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the allegations in paragraph 29.

30.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments regarding Ms. Wingate.  Defendant denies that she was unauthorized to access Morgan's accounts.  Defendant admits that she read e-mails including the one referenced in paragraph 30 of the Complaint.

31.    Defendant denies the allegations set forth in paragraph 31 of the Complaint to the extent it accuses her of deleting e-mails from job applicants; she also denies that she was unauthorized to access Ms. Wingate's account.  Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the remaining averments made in paragraph 31 of the Complaint and thus these allegations are denied.

32.    Defendant denies the allegations set forth in paragraph 32 of the Complaint.

33.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 33 of the Complaint and thus these allegations are denied.

34.    Defendant denies that she tried to hack into Morgan's e-mail system, e.g. by using a password cracker.  Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the remaining averments made in paragraph 34 of the Complaint and thus these allegations are denied.

35.    Defendant denies that her access to Morgan's computer systems would be unauthorized. Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the remaining averments made in paragraph 35 of the Complaint and thus these allegations are denied.

36.    Defendant denies the allegations set forth in paragraph 36 of the Complaint.

37.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 37 of the Complaint and thus these allegations are denied.

38.    Defendant admits that she sent resumes to Morgan using the name Tara Benedict and that the resume attached to the Declaration of Alex Rosenbaum is a copy of that resumes. Defendant denies all other allegations contained in Paragraph 38 of the Complaint, including the characterization of those resumes, which are not specifically admitted herein.

39.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 39 of the Complaint and thus these allegations are denied.

40.    Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 40 of the Complaint and thus these allegations are denied.

41.    Defendant denies the allegations set forth in paragraph 41 of the Complaint.

**COUNT I**

42.    Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

43.     Defendant Wiswell is without sufficient knowledge or information to form a belief as to the truth of the averments made in paragraph 43 of the Complaint and thus these allegations are denied.

44.     Defendant denies the allegations set forth in paragraph 44 of the Complaint.

45.     Defendant denies the allegations set forth in paragraph 45 of the Complaint.

46.     Defendant denies the allegations set forth in paragraph 46 of the Complaint.

47.     Defendant denies the allegations set forth in paragraph 47 of the Complaint.

48.     Defendant denies the allegations set forth in paragraph 48 of the Complaint.

49.     Defendant denies the allegations set forth in paragraph 49 of the Complaint.

**COUNT II**

50.     Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

51.     Defendant denies the allegations set forth in paragraph 51 of the Complaint.

52.     Defendant denies the allegations set forth in paragraph 52 of the Complaint.

53.     Defendant denies the allegations set forth in paragraph 53 of the Complaint.

54.     Defendant denies the allegations set forth in paragraph 54 of the Complaint.

**COUNT III**

55.     Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

56.     Defendant denies the allegations set forth in paragraph 56 of the Complaint.

57.     Defendant denies the allegations set forth in paragraph 57 of the Complaint.

58.     Defendant denies the allegations set forth in paragraph 58 of the Complaint.

7

59.     Defendant denies the allegations set forth in paragraph 59 of the Complaint.

60.     Defendant denies the allegations set forth in paragraph 60 of the Complaint.

61.     Defendant denies the allegations set forth in paragraph 61 of the Complaint.

## COUNT IV

62.     Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

63.     Defendant denies the allegations set forth in paragraph 63 of the Complaint.

64.     Defendant denies the allegations set forth in paragraph 64 of the Complaint.

65.     Defendant denies the allegations set forth in paragraph 65 of the Complaint.

66.     Defendant denies the allegations set forth in paragraph 66 of the Complaint.

## COUNT V

67.     Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

68.     Defendant denies the allegations set forth in paragraph 68 of the Complaint.

69.     Defendant denies the allegations set forth in paragraph 69 of the Complaint.

70.     Defendant denies the allegations set forth in paragraph 70 of the Complaint.

71.     Defendant denies the allegations set forth in paragraph 71 of the Complaint.

72.     Defendant denies the allegations set forth in paragraph 72 of the Complaint.

## COUNT VI

73.     Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

74   Defendant denies the allegations set forth in paragraph 74 of the Complaint.

75.   Defendant denies the allegations set forth in paragraph 75 of the Complaint.

76.   Defendant denies the allegations set forth in paragraph 76 of the Complaint.

77.   Defendant denies the allegations set forth in paragraph 77 of the Complaint.

78.   Defendant denies the allegations set forth in paragraph 78 of the Complaint.

## COUNT VII

79.   Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

80.   Defendant denies the allegations set forth in paragraph 80 of the Complaint.

81.   Defendant denies the allegations set forth in paragraph 81 of the Complaint.

82.   Defendant denies the allegations set forth in paragraph 82 of the Complaint.

83.   Defendant denies the allegations set forth in paragraph 83 of the Complaint.

84.   Defendant denies the allegations set forth in paragraph 84 of the Complaint.

85.   Defendant denies the allegations set forth in paragraph 85 of the Complaint.

86.   Defendant denies the allegations set forth in paragraph 86 of the Complaint.

87.   Defendant denies the allegations set forth in paragraph 87 of the Complaint.

## COUNT VIII

88.   Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

89.   Defendant denies the allegations set forth in paragraph 89 of the Complaint.

90.   Defendant denies the allegations set forth in paragraph 90 of the Complaint.

91.   Defendant denies the allegations set forth in paragraph 91 of the Complaint.

92.     Defendant denies the allegations set forth in paragraph 92 of the Complaint.

93.     Defendant denies the allegations set forth in paragraph 93 of the Complaint.

94.     Defendant denies the allegations set forth in paragraph 94 of the Complaint.

95.     Defendant denies the allegations set forth in paragraph 95 of the Complaint.

<u>**COUNT IX**</u>

96.     Defendant incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

97.     Defendant denies the allegations set forth in paragraph 97 of the Complaint.

98.     Defendant denies the allegations set forth in paragraph 98 of the Complaint.

99.     Defendant denies the allegations set forth in paragraph 99 of the Complaint.

100     Defendant denies the allegations set forth in paragraph 100 of the Complaint.

**II.  <u>AFFIRMATIVE DEFENSES</u>**

<u>**FIRST DEFENSE**</u>

101.    The Complaint fails to state a claim upon which relief can be granted.

<u>**SECOND DEFENSE**</u>

102.    Plaintiff's claims are barred by statute of limitations and/or laches.

<u>**THIRD DEFENSE**</u>

103.    Plaintiff's claims are barred by set off, offset and/or recoupment.  <u>See</u> defendant's Counterclaim <u>infra</u>.

<u>**FOURTH DEFENSE**</u>

104.    To the extent any damages have been caused to plaintiff, the damage was caused by either the intentional and/or negligent conduct of plaintiffs and/or third parties.

10

## FIFTH DEFENSE

105.    Plaintiff's claims are barred by contributory negligence.

## SIXTH DEFENSE

106.    Plaintiff's claims are barred by voluntary assumption of the risk.

## SEVENTH DEFENSE

107.    Plaintiff's claims are barred by its own breaches and anticipatory breaches of contract.

## EIGHTH DEFENSE

108.    Plaintiff's claims are barred by estoppel and/or waiver.

## NINTH DEFENSE

109.    Plaintiff's claims are barred in whole or in part by accord, satisfaction and release.

## TENTH DEFENSE

110.    Plaintiff's claims are barred by consent and/or license.

## ELEVENTH DEFENSE

111.    Plaintiff's claims are barred by duress.

## TWELFTH DEFENSE

112.    Plaintiff's claims are barred by its own fraud and/or illegality.

## THIRTEENTH DEFENSE

113.    Defendant reserves the right to supplement her defenses.

WHEREFORE, having fully answered the Complaint and shown cause why the relief should be denied, defendant respectfully requests:

A.    That this Honorable Court pass an Order dismissing this case and requiring plaintiff to pay all costs and attorneys' fees for this proceeding.

B.      And for such other and further relief as the nature of its cause may require.

### III.  COUNTERCLAIM

114.    Counterclaim Defendant William A. Morgan, Jr., P.C. ("Morgan") is a professional corporation organized and existing under the laws of the District of Columbia with a principal place of business located at 4910 Massachusetts Ave., NW, #10, Washington, DC 20016.

115.    Counterclaim Plaintiff Susan Wiswell resides at 4295 Hollow Court, Middletown, Maryland.

116.    This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1337, 1343 and 1367.

117.    Venue in this judicial district is proper under 28 U.S.C. § 1391.

118.    Morgan is a CPA firm providing accounting and tax services to individuals and businesses in the metropolitan DC area.  William Morgan is President and Merritt Wingate is Vice President of Morgan.

119.    In the winter of 2001, Susan Wiswell began looking for a job as a certified public accountant.  Since she was pregnant and already had two children, Ms. Wiswell sought a position which would allow her to spend time with her family.  During her search, she saw an advertisement in the Washington Post for a Certified Public Accountant Position at Morgan, which appeared ideal for her situation.  Specifically, the advertisement highlighted the fact that the work hours would be flexible for the position.

120.    After seeing this advertisement, Ms. Wiswell contacted Morgan and interviewed for the position with Ms. Wingate.  At the interview, Ms. Wiswell emphasized that she could not work from 9:00 a.m. to 5:00 p.m., which were the normal business hours for Morgan, because traffic at

those times would make her commute unbearable and take her away from her family for an unacceptable period of time; she also stated that she would like to work from home so that she could maximize her time with family.  Morgan agreed to hire Ms. Wiswell and set her hours from 6:30 a.m. to 3:30 p.m. Monday to Friday.  Morgan also agreed that if they were satisfied with the quality of her work after 30 days, Ms. Wiswell would be allowed to work from home on Tuesdays and Thursdays.  After she worked there about one month, Ms. Wiswell was allowed to work from home two days a week.  One year later, Morgan noted that Ms. Wiswell had assumed more responsibilities in her position and that she could no longer work from home.  Ms. Wiswell agreed to this change so long as she was allowed to come in and leave early.  At this time, Ms. Wiswell's hours were changed to 7:00 a.m. to 4:00 p.m., Monday through Friday at Mr. Morgan's request.  Thereafter, Ms. Wiswell essentially worked the same hours during her entire employment except at tax season when she worked well before the beginning and past the close of regular business hours.

121.    Ms. Wiswell was hired at a salary of $47,000.  After her first year of employment, her salary was increased to $52,000; in subsequent years, her salary was increased from $60,000 to $70,000 and finally to $77,000.

122.    During Ms. Wiswell's employment, men with equal or less qualifications than her were paid as much as $15,000 a year more than her.  Despite the fact that males were paid more, their skills, efforts, responsibilities and working conditions were substantially similar to those of Ms. Wiswell.

123.    While she worked at Morgan, Ms. Wiswell was not paid overtime despite working more than forty hours per week. However, Ms. Wiswell was not exempt from the payment of overtime wages.

13

124.    On May 4, 2005, Mr. Morgan scheduled a meeting with Ms. Wiswell's for a yearly
performance review.  Before the meeting started, Ms. Wingate insinuated that Ms. Wiswell would
be fired, asking her whether she had a box for her personal belongings.  When Ms. Wiswell did not
respond emotionally, Ms. Wingate taunted her, saying she did not cry as easily as Ms. Murphy.
During the subsequent meeting with Ms. Wiswell, Mr. Morgan stated that "we need to get the office
hours back to 9 to 5."  In response, Ms. Wiswell stated that she could not do this and reminded him
that when she was hired, she was specifically told that the hours would be flexible.  Mr. Morgan
acknowledged that Ms. Wiswell was correct, and then stated that he would have to discuss this with
Ms. Wingate, noting that in the meantime she could continue working the previously agreed upon
hours.  Also, Ms. Wiswell had expected to be paid a comparable salary to male employees with
similar responsibility, but her raise was significantly lower than the salary paid to males.  When Ms.
Wiswell protested, Mr. Morgan advised Ms. Wiswell that he would get back to her on the hours and
salary.

125.    After the review was finished, the relationship between Mr. Morgan and Ms.
Wingate, and Ms. Wiswell cooled noticeably.  Although they previously had a great rapport, e.g.
going to lunch together many times a month, Mr. Morgan and Ms. Wingate stopped talking to Ms.
Wiswell almost entirely.

126.    On May 9, 2005, Morgan had its weekly employee meeting.  At the end of the
meeting, Mr. Morgan stated that a number of employees were violating firm policy.  Specifically,
he said it had come to his attention that people were not adhering to the normal business hours of
9:00 to 5:00.  Since Morgan's staff knew that only Angela Murphy, Jennifer Leibold and Susan
Wiswell arrived before 9:00 a.m., and left before 5:00 p.m., it was understood by them that these

14

employees were the culprits. Since Ms. Wiswell had express permission to work the hours that she did, she was publicly humiliated by Mr. Morgan's false and defamatory statement that she had broken his rules.

127.    After this meeting, Ms. Wiswell attempted to work from 9:00 a.m. to 5:00 p.m. However her commute time increased from under 3 hours per day to over 4 hours per day. As a result, she saw her children sometimes as little as 20 minutes a day. This of course made her miserable.

128.    Adding to her disconsolateness, the atmosphere in the office became tense. Mr. Morgan and Ms. Wingate continued their silent treatment of Ms. Wiswell, essentially behaving as if Ms. Wiswell were a nonentity. Other coworkers followed Ms. Wingate and Mr. Morgan's lead, limited their socializing with Ms. Wiswell, e.g. for tea and coffee breaks. Even though Mr. Morgan was responsible for creating this pattern of ostracism, he nevertheless criticized Ms. Wiswell (he screamed at her to "be happy") as if she had been responsible for its occurrence.

129.    As a result of Morgan's inhumane treatment and constructive termination, Ms. Wiswell had no choice but to leave the employment.

### COUNT I
**(Defamation)**

130.    Counterclaim Plaintiff incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

131.    Morgan falsely stated that Ms. Wiswell was violating firm policy/rules by arriving at work before 9:00 a.m. and leaving before 5:00 p.m.

132.    Morgan published this statement to his employees without privilege.

15

133.    Defendant knew that this public statement made to Ms. Wiswell's colleagues was false when he made it based upon the explicit approval given to Ms. Wiswell to work the hours that she did. Nevertheless, he made these statements with the malicious intent to hold Ms. Wiswell up to public opprobrium and cause Ms. Wiswell harm.

134.    As a result of this statement, Ms. Wiswell's reputation was diminished and harmed. Other employees in the office reduced or stopped their interaction with Ms. Wiswell. Ms. Wiswell also suffered emotional distress as a result of Morgan's efforts to publicly humiliate her.

WHEREFORE, counterclaim plaintiff Wiswell demands judgment against defendant Morgan in the amount of $100,000 compensatory damages and $300,000 punitive damages, plus interest, costs and attorneys fees.

## COUNT II
### (Intentional Infliction of Emotional Distress)

135.    Counterclaim Plaintiff incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

136.    During the course of Ms. Wiswell's employment with Morgan, scores of people were hired and then forced out of Morgan's employ. Ms. Wiswell observed that very few employees, if any, left on good terms. Typically, the terminations or forced resignations occurred after a meeting with Mr. Morgan and/or Ms. Wingate, and the employee departed without working a two week, or any, notice period.

137.    A noticeable pattern developed before many of the employee departures. Mr. Morgan and Ms. Wingate began ostracizing each targeted employee and generally treating him or

16

her in an inhumane manner. Employee e-mails, both personal and work-related, were read without their knowledge.

138.    Mr. Morgan and Ms. Wingate spoke to and about each of the targeted employees in a derogatory manner. They derided employees for reasons such as their personal appearance, weight, sexual preference, age, race, height, hairline, clothing, the employee's spouse, national origin, and income level. Common known names around the office for employees, behind their backs, were "Fat Pat" for Pat Bernot, "Old Pat" for Pat Adad, "TPT" for the prior bookkeeper, Lisa Little, which stood for trailer park trash and "short Ron" for Ron Busch, among others.

139.    Ms. Wingate commented that if they hired a particular job applicant for bookkeeper, they'd have to call her "Black Angela." Mr. Morgan and Ms. Wingate declared that Pat Adad's husband ran drugs for the mafia. In the presence of Ms. Murphy and other employees, they played and proceeded to mock, "Fat Pat's" emotional voice mail message in which she advised she was leaving Morgan's employ. They shared "Fat Pat's" e-mails with other employees as they laughed and badmouthed Pat Bernot. During the forced departure of Angela Lovelace, a young and skilled but untrained employee, they told her she should consider a different line of work. They made fun of Kathleen Donaghy's weight, sexual preference and the vest she wore. They pronounced that she wore a tight vest so she didn't have to wear a bra.

140.    Ms. Wingate regularly derided employees, both present and former, to other employees. She referred to Selena Reed as an idiot, Jennifer Leibold as lazy and Kathleen Donaghy as having bad work product. In May 2005, Mr. Morgan told Ms. Murphy that Susan Wiswell was unprofessional and disrespectful. Mr. Morgan remarked that former employee Teresa Kendrick got

what she deserved in reference to an injury that her daughter suffered as a baby while in daycare, leaving the child brain damaged.

141.    Rather than terminating employees directly, Mr. Morgan and Ms. Wingate employed a pattern of relentlessly diminishing, humiliating and picking on employees they wished to leave and made their lives miserable until the targeted employee left. This was a firm practice instituted by Morgan in order to avoid paying unemployment compensation. Mr. Morgan began sending things back to "Old Pat" if a staple was not where he liked it or if a mailing label was out of line by the space of one letter. Not long afterward, "Old Pat's" employment with Morgan ended.

142.    If the course of outrageous treatment was not successful in forcing the employee out the door, Mr. Morgan had what he called a "Come to Jesus" meeting with the employee. During these meetings, Mr. Morgan and/or Ms. Wingate reviewed with the employee a long list of alleged deficiencies and gave the employee an impossible period of time in which to correct them. Mr. Morgan joked about his "Come to Jesus" meetings and how they meant the end of employment with Morgan. Indeed, employees rarely returned to Morgan's office after such a meeting.

143.    Although Ms. Wingate often did her badmouthing behind people's backs, Ms. Wiswell was aware of the following comments made by Ms. Wingate. Without having any business justification, Ms. Wingate told a subordinate employee, Mara Lederer, that Ms. Murphy had problems with depression. Ms. Wingate stated to Ms. Murphy that she could almost be attractive when she tried. She disparaged Ms. Murphy for not wearing makeup. She disparaged Ms. Murphy's shoes. She told Ms. Murphy she was "Midwestern" in a tone to convey her belief that being Midwestern was clearly undesirable. Ms. Wingate, Mr. Morgan and Natasha Lamb derided Ms. Murphy because she cried easily. Ms. Wingate disparaged Ms. Murphy for keeping notes in

a client file concerning changes and corrections made on the prior year's tax information. Ms. Wingate stated that if Ms. Murphy were a good preparer, she wouldn't need to look at last year's file; her conclusion was preposterous.

144.    Morgan similarly engaged in extreme and outrageous acts against Ms. Wiswell by taunting Ms. Wiswell before her review that she should have ready a box for personal items, implying she would be terminated, then verbally confirming that her purpose had been to make Ms. Wiswell cry. In the ensuing review, Morgan announced a salary for Ms. Wiswell that was still $8,000 less than similarly qualified males who had already received $15,000 more than Ms. Wiswell had received. Mr. Morgan then forced Ms. Wiswell to change her work hours by falsely telling her coworkers that Ms. Wiswell had violated company policy/rules by arriving at work before 9:00 a.m. and leaving before 5:00 p.m. By unilaterally changing her work hours, Morgan increased Ms. Wiswell's commute time, depriving her of her opportunity to spend time with her husband and children, knowing it would be unacceptable and devastating to Ms. Wiswell. Following her review by Mr. Morgan, Ms. Wiswell vomited and cried hysterically. Thereafter, Ms. Wiswell was unable to sleep or eat. Compounding this negative impact on Ms. Wiswell's mental state, Morgan took away Ms. Wiswell's support in the office by falsely making her coworkers think she had violated firm policy/rules in order to further isolate her.

145.    When Mr. Morgan saw that Ms. Wiswell was upset at his actions, he compounded them by berating her and screaming at her to socialize more with her co-workers and to be happy. He irrationally continued to demand that she act happy. Thereafter, Ms. Wingate took away Ms. Wiswell's review responsibilities, without explanation, over another employee.

146.    Mr. Morgan and Ms. Wingate took these actions with the intent to cause Ms. Wiswell severe emotional distress.  Indeed, they knew that spending time with her family was Ms. Wiswell's highest priority.  They knew that Ms. Wiswell had taken the job with Morgan because of the opportunity to work flexible hours, which would allow her to maximize her family time.  They knew that changing her hours would not benefit the company at all.  Nevertheless, they changed Ms. Wiswell's hours, gave her inadequate compensation, cut her responsibilities and demanded she act happy in a way which was calculated to punish Ms. Wiswell emotionally through public humiliation.

147.    Ms. Wiswell has in fact suffered severe emotional distress as a result of Morgan's actions.  In fact she has vomited, cried and lost sleep after Mr. Morgan and Ms. Wingate publicly humiliated her in front of her coworkers.

WHEREFORE, counterclaim plaintiff Wiswell demands judgment against defendant Morgan in the amount of $100,000 compensatory damages and $300,000 punitive damages, plus interest, costs and attorneys fees.

### COUNT III
### (Equal Pay Act Claim)

148.    Counterclaim Plaintiff incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

149.    Morgan paid male employees more than females for work which was substantially similar in skill, effort, responsibility, and working conditions.

150.    Morgan's actions violate the Equal Pay Act, 29 U.S.C. § 206(d) and subjects it to liability for back pay, attorneys' fees, pre and post judgment interest and liquidated damages.

151.    As a result of Morgan's actions, Ms. Wiswell has received less wages than she should have if she had not been the target of discrimination.

WHEREFORE, counterclaim plaintiff Wiswell demands judgment against defendant Morgan in the amount of $120,000.00, plus interest, costs and attorneys' fees.

## COUNT IV
### (Fair Labor Standards Act Claim)

152.    Counterclaim Plaintiff incorporates each and every allegation set forth in this Answer and Counterclaim as if set forth herein.

153.    Pursuant to 29 U.S.C. § 207, Morgan was obligated to pay Ms. Wiswell not less than one and one-half times the regular rate at which she was compensated for any time she worked over forty hours in any given work week.

154.    Despite the fact that Ms. Wiswell usually worked more than forty hours a week, Morgan did not pay her time and a half for any time worked by her in excess of forty hours and at times, did not pay her at all.

155.    As a result of this violation, Ms. Wiswell did not receive pay, including overtime pay, to which she was entitled.  Furthermore, she is entitled to liquidated damages and attorneys fees pursuant to 29 U.S.C. §216(b).

156.    Attached hereto is Ms. Wiswell's consent to this suit in accordance with 29 U.S.C. §216(b).

WHEREFORE, counterclaim plaintiff Wiswell demands judgment against defendant Morgan in the amount of $100,000.00, plus interest, costs and attorneys' fees.

## COUNT V
### (Claim Under D.C. Code Ann. §32-1308 and §32-1012)

157.    Counterclaim Plaintiff incorporates each and every allegation set forth in this Answer and counterclaim as if set forth herein.

158.    As her employer, Morgan was obligated to pay Ms. Wiswell not less than one and one-half times the regular rate at which she was compensated for any time she worked over forty hours in any given week.

159.    Despite the fact that Ms. Wiswell has often worked more than forty hours a week, Morgan has not fully paid Ms. Wiswell at the rate of time and a half for wages earned by her during her employment.

160.    Ms. Wiswell has a right to bring an action in this Court to recover these wages, liquidated damages, costs and her attorneys' fees for bringing this action pursuant to D.C. Code Ann. § 32-108 and §32-1012.

161.    Attached hereto as Exhibit A is Ms. Wiswell's consent to this suit in accordance with D.C. Code Ann. §§32-1012(b).

WHEREFORE, counterclaim plaintiff Wiswell demands judgment against defendant Morgan in the amount of $75,000.00, plus interest, costs and attorneys' fees.

**JURY DEMAND**

Defendant/Counterclaim Plaintiff demands a jury trial for all issues so triable.

Respectfully Submitted


_____/s/_____
Roger C. Simmons, Esq.
D.C. Bar No. 12915
Victor E. Cretella, III. Esq.
D.C. Bar No. MD13459
Gordon & Simmons, LLC
603-B W. Patrick Street
Frederick, MD 21705
Phone: (301) 662-9122
Fax: (301) 698-0392
Attorney for Defendants


**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 8, 2005, a copy of the foregoing was sent to the following via first class mail, prepaid postage:

Janice Rockwell, Esq.: 121-A North Court Street, Frederick, MD 21701,
AND that the following person was served by the CM/ECF software:
John Hornick, Esq.: Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.: 901 New York Ave., N.W., Washington D.C. 20001-4413.


_____/s/_____
Victor E. Cretella, III. Esq.


Z:\wiswell\amendedanswerandcounterclaim.pld.wpd


23