**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM A. MORGAN, JR., P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:05cv-1561 |
| | ) | |
| SUSAN WISWELL, | ) | |
| ANGELA MURPHY, | ) | |
| JOHN DOE(S) 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF WILLIAM A. MORGAN, JR., P.C.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiff, William A. Morgan, Jr., P.C. ("Morgan, PC"), by and though undersigned

counsel, submits the following Memorandum in Support of its Motion To Dismiss Defendant

Susan Wiswell's ("Counterclaimant Wiswell") Amended Counterclaim under Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief may be granted. Counterclaimant

Wiswell's Amended Counterclaim fails to state a single cause of action, and none of the facts

alleged are sufficient to support any cause of action set forth in Counterclaimant Wiswell's

Counterclaim.

## FACTUAL HISTORY AND BACKGROUND

Morgan, PC is a professional accounting firm that provides tax, accounting, and

consulting services to individuals and businesses. (Verified Complaint at ¶ 1) ("Verified

Complaint"). Counterclaimant Wiswell is a former employee of Morgan, PC. (Verified

Complaint at ¶ 2.) Morgan, PC hired Counterclaimant Wiswell in April 2001 to work as a

Certified Public Accountant. (Verified Complaint at ¶ 18.) Without any prior notice,

Counterclaimant Wiswell voluntarily resigned her employment with Morgan, PC on June 2, 2005 by leaving a resignation letter on Mr. William Morgan's chair after hours, which Mr. Morgan discovered the next morning. (Verified Complaint at ¶ 19.)

On June 16, 2005, co-defendant Angela Murphy ("Counterclaimant Murphy") resigned, promising two weeks' notice to Morgan, PC. (Verified Complaint at ¶ 20.) However, the next day, Counterclaimant Murphy permanently departed Morgan, PC's premises, also without telling anyone she was leaving. (Verified Complaint at ¶ 21.)

Prior to and after resigning their positions with Morgan, PC, Counterclaimant Wiswell and Counterclaimant Murphy (collectively "Counterclaimants") repeatedly and continually attempted to gain and did gain unauthorized access to the electronic mail ("email") accounts of Morgan, PC's President (Mr. William Morgan) and Vice President (Ms. Merritt Wingate). (Verified Complaint at ¶¶ 22-29.) Counterclaimant Wiswell misappropriated Morgan, PC's stored email messages. She forwarded copies of Morgan, PC's email messages to her own private email accounts, for the purpose of misappropriating those email messages and other valuable information from Morgan, PC's computer system concerning Morgan, PC and its clients. (Verified Complaint at ¶ 32.)

Counterclaimant Wiswell admits in her Amended Answer and Counterclaims that she sent Morgan, PC fictitious resumes (Defendant Susan Wiswell's Amended Answer, Counterclaim, and Jury Demand at ¶ 38) ("Amended Counterclaim"). Counterclaimant Wiswell also arranged bogus employee interviews with Morgan, PC, using the names from the fictitious resumes, apparently to delay Morgan, PC's ability to replace the Counterclaimants. Counterclaimant also deleted emails sent to Morgan, PC by legitimate job replacement candidates. (Verified Complaint at ¶ 3.)

After terminating their employment with Morgan, PC, Counterclaimants logged into Morgan, PC's email server, without authorization, by using the usernames and passwords of Mr. William Morgan and Ms. Merritt Wingate and creating a "rule" in each email account that caused copies of all incoming and outgoing email to be forwarded to Counterclaimants' two Yahoo! email accounts.  (Verified Complaint at ¶ 23.)  Shortly after the forwarding rules were discovered and deactivated by Morgan, PC, Counterclaimant Wiswell remotely deleted the forwarding rules she had created to conceal her activity.  (Verified Complaint at ¶ 29.)

After receiving forwarded email messages on her Blackberry device, Ms. Wingate discovered that original emails had been deleted from her GroupWise account at Morgan, PC.  (Verified Complaint at ¶ 31.)  This unauthorized access and activity has caused Morgan, PC serious harm.  Counterclaimant Wiswell's actions were undertaken to leave Morgan, PC understaffed, to prevent Morgan, PC from hiring employees to replace Counterclaimant Wiswell, to steal or destroy Morgan, PC's proprietary business information, to steal Morgan, PC's clients, to damage Morgan, PC's reputation, and, ultimately, to damage Morgan, PC's ability to operate its business and serve its clients.  (Verified Complaint at ¶ 41.)

Counterclaimant Wiswell compounds her wrongdoing by filing her Counterclaim in response to Morgan, PC's original Temporary Restraining Order, Preliminary Injunction, and Complaint.  Counterclaimant Wiswell did not raise any of these claims before or immediately after terminating her employment with Morgan, PC.

Counterclaimant Wiswell did not file any of these claims -- she did not even notify Morgan, PC of any of these alleged facts -- until she was faced with a Complaint about her unlawful activity.

## PROCEDURAL HISTORY

On August 3, 2005, Plaintiff Morgan, PC filed a Motion for Temporary Restraining Order and Preliminary Injunction in this Court. That same day, Morgan, PC also filed a Verified Complaint in this Court, alleging nine original causes of action against Counterclaimant Wiswell, Counterclaimant Murphy, and John Doe(s) 1–10.

On August 29, 2005, Counterclaimant Wiswell filed an Answer and Counterclaim in this matter. In addition to responding to the Verified Complaint and raising affirmative defenses, Counterclaimant Wiswell also filed a Counterclaim alleging five separate causes of action that are the subject of this Motion to Dismiss: (1) Count I – Defamation; (2) Count II – Intentional Infliction of Emotional Distress; (3) Count III - Equal Pay Act Claim; (4) Count IV – Fair Labor Standards Act Claim; and (5) Count V – Claim Under D.C. Code Ann. § 32-108.

On September 8, 2005, Counterclaimant Wiswell filed an Amended Answer, Counterclaim, and Jury Demand, containing the same five causes of action, with the exception of Count V, to which Counterclaimant Wiswell added a statutory basis for raising the claim. Pursuant to Fed. R. Civ. P. 12(b)(6), Morgan, PC hereby files this Motion to Dismiss, Proposed Order, and Memorandum in Support of Motion to Dismiss.

## ARGUMENT

The Counterclaimant fails to allege facts sufficient to support any cause of action set forth in the Counterclaim. As such, all five counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### I.    The Standard for Dismissing a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the District Court for the District of Columbia must assume the truth of the facts alleged in the complaint (or counterclaim) and may grant the motion only if "it appears beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 2005 WL 1906393, at *5 (D.D.C. August 10, 2005); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint is construed liberally in the moving party's favor, and a court should grant the moving party the benefit of all inferences that can be derived from the alleged facts. *Bannum,* 2005 WL 1906393, at *5, *citing Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court "need not accept the legal conclusions of the non-moving party." *Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 (D.D.C. 2004), *citing Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

A motion to dismiss "tests not whether the plaintiff will prevail on the merits, but whether the plaintiff has properly stated a claim." *Adams v. Hitt Contracting, Inc.,* Slip Opinion, 2005 WL 1903547, at *2 (D.D.C. July 11, 2005), *citing Chandamuri v. Georgetown Univ.,* 274 F. Supp. 2d 71, 76 (D.D.C. 2003); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A plaintiff need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

**II.    Counterclaimant's Counts Should Be Dismissed under Rules 12(b)(6) Because They Do Not Allege Any Facts Sufficient to Support a Cause of Action Recognized by This Court.**

**A.    Count I:  Counterclaimant fails to allege any facts that support a claim of Defamation.**

Counterclaimant's first cause of action alleges defamation.  To make out a *prima facie* case of defamation under District of Columbia law, a plaintiff must allege facts showing that: (1) defendant made a false and defamatory statement concerning the plaintiff; (2) defendant published the statement without privilege to a third party; (3) defendant's fault in publishing the

statement amounted to at least negligence; and (4) the statement is actionable as a matter of law irrespective of special harm or whether its publication caused the plaintiff special harm. *Marsh*, 339 F. Supp. 2d at 5; *Bannum*, 2005 WL 1906393, at *6.

This count must be dismissed for several reasons:  First, Counterclaimant Wiswell fails to allege that Morgan, PC made a false statement.  In fact, she admits the truth of the statement. Second, any of the alleged statements were privileged, and Counterclaimant Wiswell fails to allege that the statement was published to a third party.  (*See* discussion in Section II(A)(3), *infra*).  Third, Counterclaimant Wiswell does not allege any facts to show that the statements were malicious.  Taking all of Counterclaimant's allegations as true, the defamation claim should be dismissed.

Counterclaimant Wiswell makes the following allegations in her claim of defamation:

- Morgan, PC falsely stated that Counterclaimant Wiswell was violating firm policy/rules by arriving at work before 9:00 a.m. and leaving work before 5:00 p.m. (Amended Counterclaim at ¶ 131);

- Morgan, PC published this statement to its employees without privilege (Amended Counterclaim at ¶ 132);

- Morgan, PC knew that this statement made to Counterclaimant Wiswell's colleagues was false when it made was based upon the explicit approval given to Counterclaimant Wiswell to work the schedule she did.  Nevertheless, William Morgan made these statements with the malicious intent to hold Counterclaimant Wiswell up to public opprobrium and cause her harm (Amended Counterclaim at ¶ 133);

- As a result, Counterclaimant Wiswell alleges her reputation was diminished and harmed and that she suffered emotional distress as a result of William Morgan's efforts to publicly humiliate her (Amended Counterclaim at ¶ 134).

Counterclaimant offers the following facts to support her allegations:

On Monday, May 9, 2005, Morgan held its weekly employee meeting. Morgan's entire staff of approximately eight to nine employees was present.  At the end of the meeting, Mr. Morgan intimated that a number of employees were violating firm policy.  Specifically, he said it had come to his attention that

people were not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m.
Since Morgan's staff knew that Angela Murphy, Jennifer Leibold and Susan
Wiswell arrived before 9:00 a.m., and left before 5:00 p.m., it was understood
by them that these employees were the culprits. Since Ms. Wiswell had express
permission to work the hours that she did, she was publicly humiliated by Mr.
Morgan's false defamatory statement that she had broken his rules.

(Amended Counterclaim at ¶126.)

Thus, the only statement that is alleged to be defamatory is the William Morgan

statement that it had come to his attention that "people were not adhering to the office's

established business hours of 9:00 a.m. to 5:00 p.m." This statement is neither defamatory nor

false.

### 1.    Counterclaimant admits the truth of Morgan, PC's allegedly false and defamatory statement.

A plaintiff bringing a defamation action must allege that the defendant made a false and

defamatory statement concerning the plaintiff. *Bannum,* 2005 WL 1906393, at *6; *see also*

*Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) ("In addition, a plaintiff must establish the

falsity of the statement by a preponderance of the evidence.").

Counterclaimant Wiswell admits that the statements made by William Morgan were true.

In her Counterclaim, Counterclaimant Wiswell alleges that William Morgan "said it had come to

his attention that people were not adhering to the office's business hours of 9:00 a.m. to 5:00

p.m." (Amended Counterclaim at ¶ 126.)

Even taking the alleged facts as true, Counterclaimant Wiswell has failed to allege that

Morgan, PC made a single false statement, much less a defamatory statement. The Counterclaim

only alleges that Mr. Morgan said he was aware that people were not adhering to the office's

business hours of 9:00 a.m. to 5:00 p.m. (Amended Counterclaim at ¶ 126.) The President of

Morgan, PC merely conveyed a company policy to his employees at a meeting. Those are the

office hours, and Counterclaimant Wiswell admits in her own Amended Answer and

Counterclaim that she was not in the office from 9:00 a.m. to 5:00 p.m. (Amended Counterclaim at ¶ 124.) Thus, Mr. Morgan's alleged statement is not false by Counterclaimant's own admission. The Counterclaim fails to state an essential element to any defamation claim, and should be dismissed.

> ### 2.    The statements fall within a well-established immunity or privilege from defamation claims.

It is well settled that legitimate, business-related communications between an employer and employee, as well as communications by an employer about an ex-employee, are immune from defamation claims: "There is no doubt that an employer has a right to inquire into the manner in which his employees are conducting his affairs without subjecting himself to liability for defamation." *Thomas v. Howard*, 168 A.2d 908, 909 (D.C. 1961); *see also Wallace v. Skadden, Arps, Slate, Meagher and Flom*, 715 A.2d 873, 879 (D.C. 1998) ("The law has long recognized a privilege for anything 'said or written by a master in giving the character of a servant who has been in his [or her] employment.'"), *quoting White v. Nichols*, 44 U.S. (3 How.) 266, 287 (1845). This qualified immunity from defamation claims is subject to loss only by a showing of malice. *Wallace*, 715 A.2d at 879 (D.C. 1998). The Counterclaimant has not, and cannot, demonstrate malice (*see* discussion, *infra*).

At all relevant times, Mr. Morgan was acting properly, carrying out his duties and obligations as the President. As the President of Morgan, PC, William Morgan is entitled to change policies and procedures at the workplace. The statements made by William Morgan at the meeting on May 9, 2005 were directly related to his company's legitimate business interests that the office be properly staffed during established business hours. Mr. Morgan has an interest and privileged right to communicate office policies to his employees, and his way of

communicating those hours to the employees during a staff meeting was both a legitimate and tactful way of communicating those interests.

### 3.    The statements were not published to a third party.

When employees communicate a statement among themselves within the scope of employment or relative to duties performed for the corporation, this communication is internal, and thus not "published" to a "third party." *See Woods v. Helmi*, 758 S.W. 2d 219, 224 (Tenn. App. 1988). The District of Columbia recognizes a similar privilege for intra-corporate communications in certain conspiracy claims. *See Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3-4 (D.D.C. 1998) (recognizing intracorporate immunity in conspiracy to restrain trade cause of action under Sherman Act, and that intracorporate immunity can be overcome only by a showing that the agents of an entity are acting solely for personal, nonbusiness motivations).

The alleged defamatory statement was uttered only internally to Morgan, PC employees, and the statement involved only internal Morgan, PC policies. (Indeed, it was not even the party Morgan, PC, but an employee who was alleged to have uttered these statements to fellow employees.) The statements regarded office business hours, and were communicated at a staff meeting attended by only Morgan, PC employees. (Amended Counterclaim at ¶ 126.) Mr. Morgan is entitled to report to employees of Morgan, PC the status of corporate policies, performance of employees, conduct of employees, and other matters that have a direct effect on the day-to-day operations of the business. *Woods* at 224; *Wesley* at 3-4. Any such speech, absent a showing of malice, is immune from defamation claims as a matter of law.

### 4.    The Counterclaimant has not and cannot show malice.

Because the statements are privileged, the Counterclaim must allege facts that establish that Mr. Morgan's statements were malicious. *Wallace* at 879. This the Counterclaimant has not alleged and cannot allege. Malice under D.C. defamation law is "the doing of an act without just

cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977).

Viewed in light of this clear case law, Mr. Morgan's statements, even if false, were not malicious. Counterclaimant Wiswell only alleges that Mr. Morgan conveyed the office's business hours to the staff, and his view that some staff were not adhering to these hours. The alleged defamatory statements did not even name Counterclaimant Wiswell, and the Counterclaim does not allege that Mr. Morgan ever identified Counterclaimant by name during the meeting. Such a discreet method of conveying legitimate business policies during an office meeting can not rise to "malicious" as a matter of law under D.C. law because discretely omitting peoples' identities is clearly the opposite of "disregard as to its results or effects upon the rights or feelings of others." *Ford Motor*, 367 A.2d at 1314.

Rather, the alleged statements made by William Morgan were general statements of human resource policy. This does not qualify as a "malicious" allegation merely because Counterclaimant Wiswell believes it "was understood" by co-workers that the Counterclaimants "were the culprits." Far from being "without just cause or excuse," Mr. Morgan's statement served a legitimate business purpose.

Also, because Mr. Morgan's statements were not *false*, his comments cannot rise to the level of "malicious" statements required to overcome the legitimate business interest privilege. In *Bannum*, the D.C. District Court noted that "actual malice" constitutes knowledge that the published statement was false or reckless disregard for its veracity. 2005 WL 1906393, at *6. In holding that the plaintiffs could not demonstrate malice, the *Bannum* court evaluated whether the statements could even be considered false: "The available evidence suggests, if anything, that

defendants' statements may not have been false at all." *Id.* at *8. In this case, Counterclaimant Wiswell has admitted in her own Counterclaim the truth of Morgan, PC's statements. Thus, here again Morgan, PC's statements cannot as a matter of law be deemed "malicious" speech. The Counterclaimant's defamation count should be dismissed.

### B.    Count II:  Counterclaimant has failed to allege any facts that support a claim of Intentional Infliction of Emotional Distress.

Counterclaimant's second cause of action fails to properly allege Intentional Infliction of Emotional Distress.

A claim for intentional infliction of emotional distress requires a plaintiff to show (1) extreme and outrageous conduct by the defendant which (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. *Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 38 (D.D.C. 2001) ("the 'extreme and outrageous' requirement is *not* an easy one to meet.") (emphasis added); *see also Sere v. Group Hospitalization*, 443 A.2d 33, 37 (D.C. 1982). A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id., citing Jackson v. District of Columbia*, 412 A.2d 948, 957 (D.C. 1980); *see also Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998); *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994) (quoting Restatement (Second) of Torts § 46 comment h (1965)).

As the District of Columbia Court of Appeals noted in *Drezda*, "[t]he requirement of outrageousness is *not* an easy one to meet." *Drejza*, 650 A.2d at 1312 (emphasis added). Indeed, liability will not be imposed for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C. 1980) (citations omitted); *see also Sterling Mirror of Md., Inc. v. Gordon,* 619 A.2d 64, 67 (D.C. 1993).

The Counterclaim does not allege any facts that, taken as true, can support this claim, and it should be dismissed.

### 1.    The alleged conduct does not go "beyond all possible bounds of decency."

In an employment context, the evidence required to support a claim for intentional infliction of emotional distress is particularly demanding. *Lockamy*, 182 F. Supp. 2d at 38, *citing Kerrigan v. Britches of Georgetown, Inc.*, 705 A.2d 624, 628 (D.C. 1997). In *Lockamy*, a D.C. District Court granted summary judgment to an employer where an African-American plaintiff alleged that his supervisor sabotaged and unfairly scrutinized his work, denied him the opportunity to work overtime, instructed him that he could not address white employees by their first names, told him that he could not speak to certain African-American employees, cursed at him, and told him that he could not use a typewriter that other employees in his department were authorized to use. *Id*. The court held that while the allegations and conduct were "quite troubling," the conduct was not "extreme and outrageous." *Id.*

In *Kerrigan v. Britches of Georgetown*, the D.C. Court of Appeals held that the alleged conduct of the employer in targeting a male employee for a sexual harassment investigation, manufacturing evidence against him to establish false claims of sexual harassment, leaking information from the investigation to other employees, and unjustifiably demoting the employee to a position of store manager to promote a woman to his position, was not sufficiently outrageous to sustain a claim of intentional infliction of emotional distress: "This conduct, even construed as true, was of the type attributable to 'employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct.'" 705 A.2d at 628.

The alleged facts in *Lockamy* and *Kerrigan* are far more serious than Counterclaimant's allegations and yet fell far short of the legal standards for "outrageousness." The only conduct

before this court that is outrageous is that of the Counterclaimants in this case.  The Counterclaimant has spied on Morgan, PC employees, stolen confidential information from Morgan, PC, misappropriated information, attempted several times to hack into Morgan, PC's network and email systems, sent phony resumes to Morgan, PC, and deleted otherwise legitimate resumes of Morgan, PC job applicants.  Counterclaimants' conduct is "outrageous" as the word is commonly used.  But even that behavior falls below the clear, strict threshold needed to sustain a claim for intentional infliction of emotional distress under D.C. law.

### 2. Counterclaimant has not alleged any facts that rise to this level of conduct.

Counterclaimant Wiswell alleges that Morgan, PC intentionally inflicted emotional distress by forcing her to change her work hours and then by intimating to her co-workers that Counterclaimant had violated company policy/rules by arriving at work before 9:00 a.m. and leaving before 5:00 p.m.  (Amended Counterclaim at ¶ 144.)  Counterclaimant alleges this change in hours increased her commute time and prevented her from spending time with her husband and children.  (Amended Counterclaim at ¶ 144.)  Counterclaimant Wiswell also alleges that Mr. Morgan "screamed" at her to socialize more with her co-workers and to be happy. (Amended Counterclaim at ¶ 145.)  Counterclaimant alleges that Ms. Wingate took away her review responsibilities, without explanation, over another employee.  (Amended Counterclaim at ¶ 145.)  These actions are simply not cognizable in an action for the intentional infliction of emotional distress.

As a matter of law, Counterclaimant's asserted facts, even if true, do not rise to the level of "extreme and outrageous" conduct demonstrated in cases such as *Lockamy v. Truesdale* and *Kerrigan v. Britches of Georgetown*.  The *Lockamy* and *Kerrigan* cases, *supra*, described behavior that was far more extreme than the facts alleged here by Counterclaimant Wiswell.

Nevertheless, the facts in those cases failed to support a claim of intentional infliction of emotional distress in the District of Columbia as a matter of law.

In conformity with clear D.C. precedent, Counterclaimant's cause of action should therefore be dismissed for failure to meet the "outrageousness" standard as a matter of law.

### 3.    A change in business policy *per se* does not amount to outrageous conduct.

A mere change in a business policy does not rise to the level of "extreme or outrageous." For example, a claim for the intentional inflection of emotional distress brought by an African-American woman fell below the "extreme and outrageous standard" although numerous offenses were described, including not being allowed to supervise two white subordinates; being reprimanded for no reason; being refused participation in [her employer's] Management Incentive Fund; being forced out of her management position as EEO/Employment Manager; being promised a promotion in advertising that she was never given; having a major account taken away from her; being given one of the least lucrative sales territories; being excluded from office activities; and *not being advised of changes in policy and being reprimanded for asking about such changes*.  *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). Among other things, the *Harriston* decision stands for the proposition that changing a company policy -- *and* not informing the plaintiff of those changes -- cannot, as a matter of law, support a claim for the intentional infliction of emotional distress, even when coupled with other troubling accusations.

In another case, a court held that it is not "extreme and outrageous for the defendants to change their policies regarding extension of health insurance or to deny the basis of potential liability . . . unless the plaintiff alleges it was done deliberately to harass her*."  Greene-Wotton v. Fiduciary Trust Co. Intern.* 324 F. Supp. 2d 385, 394 (S.D.N.Y. 2003).

In the context of this case, it follows that Morgan, PC's shift in policy would have to have been made solely to harass Counterclaimant Wiswell and that such a change would have no independent business value. In the instant case, however, Counterclaimant admits that the policy change was announced to, and applied to, the entire staff, and thus by Counterclaimant's own admission it cannot have been made solely to harass her.

Counterclaimant Wiswell's Count II alleges that Morgan, PC changed its policy of allowing some employees to work hours outside of 9:00 a.m. to 5:00 p.m. Taking these allegations as true, they cannot, as a matter of law, support Counterclaimant Wiswell's claim of intentional infliction of emotional distress. Thus, Count II should be dismissed.

> **4.    Other allegations added to Counterclaimant's Amended Complaint and Counterclaims were not directed towards the Counterclaimant, do not involve the Counterclaimant, and were not even alleged to be done in the Counterclaimant's presence.**

Counterclaimant Wiswell also seeks recovery based on conduct not directed towards her (*e.g.*, allegations of a few isolated instances, such as disparaging an employee's shoes) and conduct that occurred between two other people. Such recovery is improper. It is well settled that a third party may only recover for intentional infliction of emotional distress directed at another if the third party is: (1) related to the intended victim and was present at the time of the conduct; or (2) if the person is not related to the intended victim but witnessed the conduct and subsequently suffered bodily harm resulting from the behavior. Restatement (Second) of Torts § 46(2)(a) (1965). More important for purposes here, however, is that conduct that gives rise to third-party recovery must be not only outrageous, but also violent and shocking. *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141 (1983); *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951) (holding that five year-old girl who sued father's estate was entitled to recovery after watching her father kill her mother and subsequently commit suicide because father's conduct

was violent and shocking.); *see also* Prosser, Handbook of the Law of Torts § 12 at 62 (4th ed. 1971).

In the Amended Counterclaim, Counterclaimant Wiswell includes allegations that do not involve her. Indeed, it appears that Counterclaimant simply lifted these passages out of Counterclaimant Murphy's draft counterclaims. (Defendant Angela Murphy's Answer and Counterclaim at ¶ 130.)

Counterclaimant simply includes a list of allegations in paragraph 143 of her Amended Counterclaim.[1] While the alleged conduct fails to rise to the level of "extreme and outrageous" conduct required under D.C. law, Counterclaimant does not allege that she was even present to witness the conduct.

### C.    Count III:  Counterclaimant failed to state a claim under the Equal Pay Act.

Count III of the Amended Counterclaim is a claim under the Equal Pay Act, 29 U.S.C. § 206(d). To establish a *prima facie* case under the Equal Pay Act, a plaintiff must show (1) wage disparity and (2) job equality. *Stevens v. District of Columbia*, 1994 WL 377271, at *2 (D.D.C. 1994) (not reported in F. Supp.), *citing Goodrich v. Int'l Bd. of Elec. Workers,* 815 F.2d 1519, 1523 (D.C. Cir. 1983)("*Goodrich I*"). Counterclaimant has shown neither. While equal work under the Equal Pay Act does not require that the jobs being compared must be "identical," they must be something more than merely "comparable," *i.e.*, capable of being compared. *Goodrich I* at 1524. The prevailing standard is one of "substantial equality." *Id., citing Goodrich v. Int'l*

---

[1] Paragraph 143 reads: "Although Ms. Wingate often did her badmouthing behind people's backs, Ms. Wiswell was aware of the following comments made by Ms. Wingate. Without having any business justification, Ms. Wingate told a subordinate employee, Mara Lederer, that Ms. Murphy had problems with depression. Ms. Wingate stated to Ms. Murphy that she could almost be attractive when she tried. She disparaged Ms. Murphy for not wearing makeup. She disparaged Ms. Murphy's shoes. She told Ms. Murphy she was 'Midwestern' in a tone to convey her belief that being Midwestern was clearly undesirable. Ms. Wingate, Mr. Morgan and Natasha Lamb derided Ms. Murphy because she cried easily. Ms. Wingate disparaged Ms. Murphy for keeping notes in a client file concerning changes and corrections made on the prior year's tax information. Ms. Wingate state that if Ms. Murphy were a good preparer, she wouldn't need to look at last year's file; her conclusion was preposterous."

*Bhd. of Elec. Workers*, 712 F.2d 1488, 1492 (D.C. Cir. 1983) ("*Goodrich II*"); *Thompson v. Sawyer*, 678 F.2d 257, 274 (D.C. Cir. 1982). The Counterclaimant has not alleged any facts that would show, as a matter of law, that the work she performed was substantially equal to the work being performed by any of the males in the office. Counterclaimant also has not alleged any facts that would demonstrate that any pay disparity was based only on sex and no other legitimate reason. As such, Count III should be dismissed.

### 1. Counterclaimant has not alleged facts that to show that the work she performed was substantially equal to that of male employees.

In her Answer and Counterclaim, Counterclaimant Wiswell alleges that:

- Morgan paid male employees more than females for work which was substantially similar in skill, effort, responsibility, and working conditions (Amended Counterclaim at ¶¶ 122, 149);

- Also, Ms. Wiswell had expected to be paid a comparable salary to male employees with similar responsibility, but her raise was significantly lower than the salary paid to males (Amended Counterclaim at ¶ 124); and

- As a result of Morgan's actions, Counterclaimant received less wages than she should have if she had not been the target of discrimination (Amended Counterclaim at ¶ 151).

Counterclaimant does not allege a single fact that she performed work that was substantially similar in skill, effort, responsibility, and working conditions to her male counterparts.

Counterclaimant Wiswell's pay *expectations* play no role in this Court's determination that the work she performed at Morgan, PC was substantially equal to that of her male counterparts. The initial inquiry in an Equal Pay Act claim focuses on the primary *duties* of each job, not on the *expectations* of the claimant. *See Goodrich I* at 1524. Counterclaimant has failed to plead how her responsibilities, efforts, and work conditions were similar to her male counterparts.

###### 2.    The Counterclaim does not allege that salary disparity, if any, was based solely on sex.

The Equal Pay Act, 29 U.S.C. § 206(d), states that an employer may not pay wages to employees at a rate less than the rate at which he pays wages to employees of the opposite sex for performance of similar jobs.  However, the Act creates specific exemptions where a different payment rate is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; and/or (iv) a differential based on any other factors "other than sex."  *Id.*  These four factors (seniority, merit, quantity/quality of production, and factors other than sex) constitute the four clear exceptions under the Act. *Goodrich I* at 1521; *see also Smith v. City of Jackson*, 125 S.Ct. 1536, 1544 n.11 (2005) ("[f]or instance, in the Equal Pay Act of 1963, *29 U.S.C. § 206(d)(1)*, Congress barred recovery if a pay differential was based "on any other factor" -- reasonable or unreasonable -- "other than sex.").

The D.C. District Court and the U.S. Supreme Court have indicated that the "other than sex" defense is inconsistent with a disparate impact theory of liability.  *Hyman v. First Union Corp.*, 980 F. Supp. 38, 43 n.3 (D.D.C. 1997); *quoting County of Washington v. Gunther*, 452 U.S. 161, 170-171 (1981) ("[t]he fourth affirmative defense of the Equal Pay Act however, was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination.").  Thus, Counterclaimant must allege facts to suggest that gender was the *only* reason she was paid less, and that there were no other, non-gender-based reasons for her receiving less pay.

Counterclaimant Wiswell has not alleged any facts that suggest that Morgan, PC paid Counterclaimant less based solely on her gender, and fails to allege that any disparity was not subject to merit, seniority, or any other grounds other than sex.  The Counterclaim does not allege that an absence of merit, seniority, tenure or other obvious nondiscriminatory factors

could have resulted in the alleged disparity.  As such, the Count is not sufficiently pled and the claim should be dismissed.

**D.    Count IV:  The Counterclaimant has failed to allege any facts that support a claim under the federal Fair Labor Standards Act.**

Count IV of the Counterclaim contains a count under the federal Fair Labor Standards Act ("FLSA").  The overtime provisions of Section 207 of the FLSA, 29 U.S.C. § 207, clearly exempt from coverage any employee in "a bona fide executive, administrative, or *professional* capacity."  29 U.S.C. § 213(a)(1) (emphasis added).  Counterclaimant is not entitled to overtime pay under the FLSA because she is clearly an "exempt" employee as a matter of law.  As such, Count IV fails to state a claim upon which relief can be granted.

**1.    Counterclaimant is exempt from overtime pay under the Department of Labor's professional exemption.**

Under Department of Labor regulations implementing the FLSA, the term "employee employed in a bona fide professional capacity" means any employee:

- compensated on a salary or fee basis of not less than $455 per week[2]; and

- whose primary duty is the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.  29 C.F.R. § 541.301(a).

The phrase "field of science or learning" specifically includes the traditional professions of law, medicine, theology, *accounting*, etc.  29 C.F.R. § 541.301(c) (emphasis added).  The DOL regulations further specify that:

---

[2]  Counterclaimant concedes that her salary started at $47,000 per year, and ended at $77,000 per year.  (Amended Answer and Counterclaims at ¶ 121).  Thus her salary at all times exceeded the $455 per week figure required to qualify for exempt status.  A $47,000 annual salary equates to $903 per week.  Thus this element of the definition of exempt status does not appear to be at issue by the Counterclaimant.

*Accountants.*  Certified public accountants generally meet the duties requirements for the learned professional exemption.  In addition, many other accountants who are not certified public accountants but perform similar job duties may qualify as exempt learned professionals.  29 C.F.R. § 541.302(e)(5).

## 2.    Counterclaimant is exempt from receiving overtime pay.

In her counterclaim, Counterclaimant alleges that:

- Pursuant to 29 U.S.C. § 207, Morgan, PC was obligated to pay her not less than one and one-half times the regular rate at which she was compensated for any time she worked over forty hours in any given work week (Amended Counterclaim at ¶ 153); and

- Despite the fact that Counterclaimant usually worked more than forty hours a week, Morgan, PC did not pay her time and a half for any time worked in excess of forty hours in a week, and at times did not pay her at all (Amended Counterclaim at ¶ 154).

However, Counterclaimant specifically states in her Counterclaim that in the winter of 2001, she was looking for work as a Certified Public Accountant (CPA), Morgan advertised for a position opening as a CPA, and that she interviewed and was hired for that position.  (Amended Counterclaim at ¶¶ 119, 120.)

CPAs are exactly the type of employees who were intended to be exempt under the FLSA, and courts have recognized CPAs as exempt under the learned professional exemption. *See Galso v. Eisman, Zucker, Klein, and Ruttenberg*, 310 F. Supp 2d. 569, 575 (S.D.N.Y. 2004) ("[t]he undisputed evidence reveals that plaintiff is a certified public accountant. . . . He falls squarely within the "learned professional" exemption of the FLSA."); *Rausch v. Wolf*, 72 F. Supp. 658, 663 (N.D. Ill. 1947) (holding that Certified Public Accountant was exempt from overtime pay under the FLSA as a bona fide professional employee.); *Owsley v. San Antonio Indep. School District*, 187 F.3d 521, 525 (5th Cir. 1999) ("[e]ven though the pilots did not obtain a college degree, their 'extensive knowledge of aerodynamics, airplane regulations, airplane operations, [and] instrument procedures' convinced us that that their training was as complex as

that of 'nurses, accountants, and actuarial computants' who are regarded as employees in learned professions.").

Thus there is no dispute that Counterclaimant, who admits that she worked as a CPA for Morgan PC, is exempt from the scope of coverage of the overtime provisions of the Fair Labor Standards Act.

Count IV thus fails to state a claim under the FLSA, and Counterclaimant's claim should be dismissed under Rule 12(b)(6).

### E.    Count V:  Counterclaimant has failed to state a claim under D.C. Code Ann. § 32-1308 and § 32-1012.

Count V of the Amended Counterclaim alleges a claim under D.C. Code Ann. § 32-1308 and § 32-1012.

Morgan, PC expressly incorporates the arguments set forth above as to Counterclaimant Wiswell's exempt status.

The District of Columbia Wage and Hour Law, D.C. Code Ann. § 32-1001 *et seq.*, does not apply to any employee employed in a *bona fide* executive, administrative, or professional capacity, or in the capacity of an outside salesman (as these terms are defined by the Secretary of Labor under 201 *et seq.* of the Fair Labor Standards Act).  D.C. Code Ann. § 32-1004; *see Jones and Assoc. v. District of Columbia*, 642 A.2d 130, 132 (D.C. 1994) (District of Columbia Court of Appeals applying FLSA exemption for administrative employees to claims seeking overtime pay under D.C. Wage and Hour Law.).

The Counterclaimant alleges that:

- As her employer, Morgan was obligated to pay Counterclaimant not less than one and one-half times the regular rate at which she was compensated for any time she worked over forty hours in any given week (Amended Counterclaim at ¶ 158);

- Despite the fact that Counterclaimant worked more than forty hours a week, Morgan, PC did not pay Counterclaimant at the rate of time and a half for wages earned during her employment (Amended Counterclaim at ¶ 159).

As set forth above, Morgan is exempt from the overtime requirements under the FLSA and is, therefore, exempt from overtime payment requirements under the D.C. Wage and Hour Law.  It is clear that the D.C. Court of Appeals applies federal FLSA criteria in evaluating claims under the D.C. Wage and Hour Law.  *See Jones*, 642 A.2d at 132.  Because she is an exempt employee under the federal professional exemption, Counterclaimant has no right to bring an action to recover wages under D.C. Code Ann. §§ 32-1012 and 32-1308.  Therefore, Counterclaimant fails to state a claim under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiff Morgan, PC respectfully requests that the Court dismiss Counterclaimant's counterclaims with prejudice for failure to state a claim upon which relief may be granted under Fed. R. Civ. Pro. 12(b)(6).

Respectfully submitted,

___/s/_____
Manesh K. Rath
D.C. Bar No. 457835
George Brent Mickum, IV
D.C. Bar No. 396142
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel: (202) 434-4182
Fax: (202) 434-4646
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY certify that on September 21, 2005, a copy of the foregoing was served by CM/ECF software to:

Roger C. Simmons, Esq.
Victor E. Cretella, III, Esq.
Gordon and Simmons, LLC
603-B West Patrick Street
Frederick, MD 21705-0430

Counsel for Defendant
Susan Wiswell

Janice Rockwell, Esq.
121-A North Court Street
Frederick, MD 21701-5415

Counsel for Defendant
Angela Murphy

John F. Hornick, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Counsel for Plaintiff
William A. Morgan, Jr., P.C.

_____/s/_____
Manesh K. Rath, Esq.