**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM A. MORGAN, JR., P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:05cv-1561 |
| | ) | |
| SUSAN WISWELL, | ) | |
| ANGELA MURPHY, | ) | |
| JOHN DOE(S) 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF WILLIAM A. MORGAN, JR., P.C.'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COUNTERCLAIM OF DEFENDANT ANGELA MURPHY**

Plaintiff, William A. Morgan, Jr., P.C. ("Morgan, PC"), by and through undersigned

counsel, submits the following Memorandum in Support of its Motion To Dismiss Defendant

Angela Murphy's ("Counterclaimant Murphy") Counterclaim under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief may be granted. Counterclaimant Murphy's

Counterclaim fails to state a single cause of action, and none of the facts alleged are sufficient to

support any cause of action set forth in Counterclaimant Murphy's Counterclaim.

**FACTUAL HISTORY AND BACKGROUND**

Morgan, PC is a professional accounting firm that provides tax, accounting, and

consulting services to individuals and businesses. (Verified Complaint at ¶ 1) ("Verified

Complaint"). Counterclaimant Murphy is a former employee of Morgan, PC. (Verified

Complaint at ¶ 2.) Morgan, PC hired Counterclaimant Murphy in September 1998 to work as a

receptionist. (Verified Complaint at ¶ 17.) Counterclaimant Murphy was promoted to office

manager in September 1999, and later was promoted to a bookkeeper in June 2002. *Id.*

On June 16, 2005, Counterclaimant Murphy resigned, giving two weeks' notice to Morgan, PC. (Verified Complaint at ¶ 20.) However, the next day, Counterclaimant Murphy permanently departed Morgan, PC's premises, without telling anyone she was leaving. (Verified Complaint at ¶ 21.)

Prior to and after resigning their positions with Morgan, PC, Counterclaimant Murphy and co-defendant Susan Wiswell ("Counterclaimant Wiswell") (collectively "Counterclaimants") repeatedly and continually attempted to gain and did gain unauthorized access to the electronic mail ("email") accounts of Morgan, PC's President (Mr. William Morgan) and Vice President (Ms. Merritt Wingate). (Verified Complaint at ¶¶ 22-29.) Counterclaimant Murphy, by herself or acting with others, misappropriated Morgan, PC's stored email messages by forwarding copies of Morgan, PC's email messages from Morgan, PC's computer system to private email accounts, for the purpose of misappropriating those email messages and other valuable information concerning Morgan, PC and its clients. (Verified Complaint at ¶ 32.)

Counterclaimants arranged bogus employee interviews with Morgan, PC, using the names from fictitious resumes they sent to Morgan, PC for the express purpose of preventing Morgan, PC from finding replacements for the Counterclaimants. (Verified Complaint at ¶ 3.) Counterclaimants also deleted emails sent to Morgan, PC by legitimate job replacement candidates. *Id.*

After terminating their employment with Morgan, PC, Counterclaimants logged into Morgan, PC's email server, without authorization, by using the usernames and passwords of Mr. William Morgan and Ms. Merritt Wingate and creating a "rule" in each email account that caused copies of all incoming and outgoing email to be forwarded to Counterclaimants' two Yahoo! email accounts. (Verified Complaint at ¶ 23.) Shortly after the forwarding rules were

discovered and deactivated by Morgan, PC, Counterclaimants remotely deleted the forwarding rules they had created to conceal their activity.  (Verified Complaint at ¶ 29.)

After receiving forwarded email messages on her Blackberry device, Ms. Wingate discovered that original emails had been deleted from her GroupWise account at Morgan, PC. (Verified Complaint at ¶ 31.)  This unauthorized access and activity has caused Morgan, PC serious harm.  Counterclaimant Murphy's actions were undertaken to leave Morgan, PC understaffed, to prevent Morgan, PC from hiring employees to replace Counterclaimant Murphy, to steal or destroy Morgan, PC's proprietary business information, to steal Morgan, PC's clients, to damage Morgan, PC's reputation, and, ultimately, to damage Morgan, PC's ability to operate its business and serve its clients.  (Verified Complaint at ¶ 41.)

Counterclaimant Murphy compounds her wrongdoing by filing her Counterclaim in response to Morgan, PC's original Temporary Restraining Order, Preliminary Injunction, and Complaint.  Counterclaimant Murphy did not raise any of these claims before or immediately after terminating her employment with Morgan, PC.

Counterclaimant Murphy did not file any of these claims -- she did not even notify Morgan, PC of any of these alleged facts -- until she was faced with a Complaint about her unlawful activity.

## PROCEDURAL HISTORY

On August 3, 2005, Plaintiff Morgan, PC filed a Motion for Temporary Restraining Order and Preliminary Injunction in this Court.  That same day, Morgan, PC also filed a Verified Complaint in this Court, alleging nine original causes of action against Counterclaimant Murphy, Counterclaimant Wiswell, and John Doe(s) 1–10.

On September 2, 2005, Counterclaimant Murphy sent Mr. John Hornick, Esq., via first class mail, a preliminary draft copy of Defendant Angela Murphy's Answer and Counterclaim ("Counterclaimant Murphy's Answer and Counterclaim") in this matter.  On September 15, 2005, Counterclaimant Murphy filed her Answer and Counterclaim in this court, and served Manesh K. Rath, Esq., via first class mail, with a copy of the Answer and Counterclaim.  In addition to responding to the Verified Complaint and raising affirmative defenses, Counterclaimant Murphy also filed a Counterclaim alleging four separate causes of action that are the subject of this Motion to Dismiss:  Count I – Defamation; Count II – Intentional Infliction of Emotional Distress; Count III – Fair Labor Standards Act Claim; and Count IV – Claim Under D.C. Code Ann. § 32-108.

Pursuant to Fed. R. Civ. P. 12(b)(6), Morgan, PC hereby files this Motion to Dismiss, Proposed Order, and Memorandum in Support of Motion to Dismiss.

## ARGUMENT

The Counterclaimant fails to allege facts sufficient to support any cause of action set forth in the Counterclaim.  As such, all four counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**I.      The Standard for Dismissing a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the District Court for the District of Columbia must assume the truth of the facts alleged in the complaint (or counterclaim) and may grant the motion only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 2005 WL 1906393, at *5 (D.D.C. August 10, 2005); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint is construed liberally in the moving party's favor, and a court should grant the

moving party the benefit of all inferences that can be derived from the alleged facts. *Bannun,* 2005 WL 1906393, at *5, *citing Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court "need not accept the legal conclusions of the non-moving party." *Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 (D.D.C. 2004), *citing Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

A motion to dismiss "tests not whether the plaintiff will prevail on the merits, but whether the plaintiff has properly stated a claim." *Adams v. Hitt Contracting, Inc.,* Slip Opinion, 2005 WL 1903547, at *2 (D.D.C. July 11, 2005), *citing Chandamuri v. Georgetown Univ.,* 274 F. Supp. 2d 71, 76 (D.D.C. 2003); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A plaintiff need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

## II.    Counterclaimant's Counts Should Be Dismissed under Rules 12(b)(6) Because They Do Not Allege Any Facts Sufficient to Support a Cause of Action Recognized by This Court.

### A.    Count I:  Counterclaimant fails to allege any facts that support a claim of Defamation.

Counterclaimant's first cause of action alleges defamation.  To make out a *prima facie* case of defamation under District of Columbia law, a plaintiff must allege facts showing that: (1) defendant made a false and defamatory statement concerning the plaintiff; (2) defendant published the statement without privilege to a third party; (3) defendant's fault in publishing the statement amounted to at least negligence; and (4) the statement is actionable as a matter of law irrespective of special harm or whether its publication caused the plaintiff special harm.  *Marsh*, 339 F. Supp. 2d at 5; *Bannum*, 2005 WL 1906393, at *6.

Count I must be dismissed for several reasons:  First, Counterclaimant Murphy fails to allege that Morgan, PC made a false statement.  In fact, she admits the truth of the statement. Second, any of the alleged statements were privileged, and Counterclaimant Murphy fails to allege that the statement was published to a third party.  (*See* discussion in Section II(A)(3), *infra*).  Third, Counterclaimant Murphy does not allege any facts to show that the statements were malicious.  Taking all of Counterclaimant's allegations as true, the defamation claim should be dismissed.

Counterclaimant Murphy makes the following allegations in her claim of defamation:

- Morgan, PC falsely stated that Counterclaimant Murphy was violating firm policy/rules by arriving at work before 9:00 a.m. and leaving work before 5:00 p.m. (Counterclaimant Murphy's Answer and Counterclaim at ¶ 149);

- Morgan, PC published this statement to its employees without privilege (Counterclaimant Murphy's Answer and Counterclaim at ¶ 150);

- Morgan, PC knew that this statement made to Counterclaimant Murphy's colleagues was false when it made was based upon the explicit approval given to Counterclaimant Murphy to work the schedule she did.  Nevertheless, William

Morgan made these statements with the malicious intent to cause Counterclaimant Murphy harm (Counterclaimant Murphy's Answer and Counterclaim at ¶ 151);

- As a result, Counterclaimant Murphy alleges her reputation was harmed and that she suffered emotional distress as a result of William Morgan's efforts to publicly humiliate her (Counterclaimant Murphy's Answer and Counterclaim at ¶ 152).

Counterclaimant offers the following facts to support her allegations:

On Monday, May 9, 2005, Morgan held its weekly employee meeting. Morgan's entire staff of approximately eight to nine employees was present.  At the end of the meeting, Mr. Morgan intimated that a number of employees were violating firm policy.  Specifically, he said it had come to his attention that people were not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m.  Since Morgan's staff knew that Angela Murphy, Jennifer Leibold and Susan Wiswell arrived before 9:00 a.m., and left before 5:00 p.m., it was understood by them that these employees were the culprits.  Because Murphy had express permission to work the hours that she did, she was publicly humiliated by Mr. Morgan's false defamatory statement that she had broken his rules.

(Counterclaimant Murphy's Answer and Counterclaim at ¶ 133.)

Thus, the only statement that is alleged to be defamatory is the William Morgan statement that it had come to his attention that "people were not adhering to the office's established business hours of 9:00 a.m. to 5:00 p.m."  This statement is neither defamatory nor false.

## 1. Counterclaimant admits the truth of Morgan, PC's allegedly false and defamatory statement.

A plaintiff bringing a defamation action must allege that the defendant made a false and defamatory statement concerning the plaintiff.  *Bannum,* 2005 WL 1906393, at *6; *see also Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) ("In addition, a plaintiff must establish the falsity of the statement by a preponderance of the evidence.").

Counterclaimant Murphy admits that the statements made by William Morgan were true. In her Counterclaim, Counterclaimant Murphy alleges that William Morgan "said it had come to

his attention that people were not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m." (Counterclaimant Murphy's Answer and Counterclaim at ¶ 133.)

Even taking the alleged facts as true, Counterclaimant Murphy has failed to allege that Morgan, PC made a single false statement, much less a defamatory statement. The Counterclaim only alleges that Mr. Morgan said he was aware that people were not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m. *Id.* The President of Morgan, PC merely conveyed a company policy to his employees at a meeting. Those are the office hours, and Counterclaimant Murphy admits in her own Answer and Counterclaim that she arrived before 9:00 a.m., and left before 5:00 p.m. *Id.* Thus, Mr. Morgan's alleged statement is not false by Counterclaimant's own admission. The Counterclaim thus fails to state an essential element to any defamation claim, and should be dismissed.

### 2. The statements fall within a well-established immunity or privilege from defamation claims.

It is well settled that legitimate, business-related communications between an employer and employee, as well as communications by an employer about an ex-employee, are immune from defamation claims: "There is no doubt that an employer has a right to inquire into the manner in which his employees are conducting his affairs without subjecting himself to liability for defamation." *Thomas v. Howard*, 168 A.2d 908, 909 (D.C. 1961); *see also Wallace v. Skadden, Arps, Slate, Meagher and Flom*, 715 A.2d 873, 879 (D.C. 1998) ("The law has long recognized a privilege for anything 'said or written by a master in giving the character of a servant who has been in his [or her] employment.'"), *quoting White v. Nichols*, 44 U.S. (3 How.) 266, 287 (1845). This qualified immunity from defamation claims is subject to loss only by a showing of malice. *Wallace*, 715 A.2d at 879 (D.C. 1998). The Counterclaimant has not, and cannot, demonstrate malice (*see* discussion, *infra*).

At all relevant times, Mr. Morgan was acting properly, carrying out his duties and obligations as the President. As the President of Morgan, PC, William Morgan is entitled to change policies and procedures at the workplace. The statements made by William Morgan at the meeting on May 9, 2005 were directly related to his company's legitimate business interests that the office be properly staffed during established business hours. Mr. Morgan has an interest and privileged right to communicate office policies to his employees, and his way of communicating those hours to the employees during a staff meeting was both a legitimate and tactful way of communicating those interests.

### 3. The statements were not published to a third party.

When employees communicate a statement among themselves within the scope of employment or relative to duties performed for the corporation, this communication is internal, and thus not "published" to a "third party." *See Woods v. Helmi*, 758 S.W. 2d 219, 224 (Tenn. App. 1988). The District of Columbia recognizes a similar privilege for intra-corporate communications in certain conspiracy claims. *See Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3-4 (D.D.C. 1998) (recognizing intracorporate immunity in conspiracy to restrain trade cause of action under Sherman Act, and that intracorporate immunity can be overcome only by a showing that the agents of an entity are acting solely for personal, nonbusiness motivations).

The alleged defamatory statement was uttered only internally to Morgan, PC employees, and the statement involved only internal Morgan, PC policies. (Indeed, it was not even the party Morgan, PC, but an employee who was alleged to have uttered these statements to fellow employees.) The statements regarding office business hours were communicated at a staff meeting attended by only Morgan, PC employees. (Counterclaimant Murphy's Answer and Counterclaim at ¶ 133.) As indicated above, Mr. Morgan is entitled to inform his employees of Morgan, PC the status of corporate policies, performance of employees, conduct of employees,

and other matters that have a direct effect on the day-to-day operations of the business. *Woods,* 758 S.W. 2d at 224; *Wesley,* 3 F. Supp. 2d at 3-4. Any such speech, absent a showing of malice, is immune from defamation claims as a matter of law in the District of Columbia.

### 4.     The Counterclaimant has not and cannot show malice.

Because the statements are privileged, the Counterclaim must allege facts that establish that Mr. Morgan's statements were malicious. *Wallace,* 715 A.2d at 879. This the Counterclaimant has not alleged and cannot allege. "Malice" under D.C. defamation law is "the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977).

Viewed in light of this clear case law, Mr. Morgan's statements, even if false, were not malicious. The allegations specifically contained in Counterclaimant Murphy's Answer and Counterclaim at ¶ 130 do not rise to this level. Counterclaimant Murphy also alleges that Mr. Morgan conveyed the office's business hours to the staff, and his view that some staff were not adhering to these hours. The alleged defamatory statements did not name Counterclaimant Murphy, and the Counterclaim does not allege that Mr. Morgan ever identified Counterclaimant by name during the meeting. Such a discreet method of conveying legitimate business policies during an office meeting can not rise to "malicious" as a matter of law under D.C. law because deliberately omitting a person's identity evidences the absence of malice, which involves the "disregard as to its results or effects upon the rights or feelings of others." *Ford Motor*, 367 A.2d at 1314.

Rather, the alleged statements made by William Morgan were general statements of human resource policy. His statements cannot constitute "malicious" conduct merely because Counterclaimant Murphy believes it "was understood" by co-workers that the Counterclaimants

"were the culprits." (Counterclaimant Murphy's Answer and Counterclaim at ¶ 133.) Far from being "without just cause or excuse," Mr. Morgan's statement served a legitimate business purpose.

Because Mr. Morgan's statements were not *false*, his comments cannot rise to the level of "malicious" statements required to overcome the legitimate business interest privilege. In *Bannum*, the D.C. District Court noted that "actual malice" constitutes knowledge that the published statement was false or reckless disregard for its veracity. 2005 WL 1906393, at *6. In holding that the plaintiffs could not demonstrate malice, the *Bannum* court evaluated whether the statements could even be considered false: "The available evidence suggests, if anything, that defendants' statements may not have been false at all." *Id.* at *8. In this case, Counterclaimant Murphy admits in her own Counterclaim the truth of Morgan, PC's statements. Thus, here again, Morgan, PC's statements cannot as a matter of law be deemed "malicious" speech. The Counterclaimant's defamation count should be dismissed.

### B.    Count II:  Counterclaimant has failed to allege any facts that support a claim of Intentional Infliction of Emotional Distress.

Counterclaimant's second cause of action fails to properly allege a claim for the Intentional Infliction of Emotional Distress.

A claim for intentional infliction of emotional distress requires a plaintiff to show (1) extreme and outrageous conduct by the defendant which (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. *Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 38 (D.D.C. 2001) ("the 'extreme and outrageous' requirement is *not* an easy one to meet.") (emphasis added); *see also Sere v. Group Hospitalization*, 443 A.2d 33, 37 (D.C. 1982). A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id., citing Jackson v. District of Columbia*, 412 A.2d

948, 957 (D.C. 1980); *see also Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998); *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994) (quoting Restatement (Second) of Torts § 46 comment h (1965)).

As the District of Columbia Court of Appeals noted in *Drezda*, "[t]he requirement of outrageousness is *not* an easy one to meet." *Drejza*, 650 A.2d at 1312 (emphasis added). Indeed, liability will not be imposed for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C. 1980) (citations omitted); *see also Sterling Mirror of Md., Inc. v. Gordon,* 619 A.2d 64, 67 (D.C. 1993). The Counterclaim does not allege any facts that, taken as true, can support this claim, and it should be dismissed.

### 1.    The alleged conduct does not go "beyond all possible bounds of decency."

In an employment context, the evidence required to support a claim for intentional infliction of emotional distress is particularly demanding. *Lockamy*, 182 F. Supp. 2d at 38, *citing Kerrigan v. Britches of Georgetown, Inc.*, 705 A.2d 624, 628 (D.C. 1997). In *Lockamy*, a D.C. District Court granted summary judgment to an employer where an African-American plaintiff alleged that his supervisor sabotaged and unfairly scrutinized his work, denied him the opportunity to work overtime, instructed him that he could not address white employees by their first names, told him that he could not speak to certain African-American employees, cursed at him, and told him that he could not use a typewriter that other employees in his department were authorized to use. *Id*. The court held that while the allegations and conduct were "quite troubling," the conduct was not "extreme and outrageous." *Id.*

In *Kerrigan v. Britches of Georgetown*, the D.C. Court of Appeals held that the alleged conduct of the employer in targeting a male employee for a sexual harassment investigation,

manufacturing evidence against him to establish false claims of sexual harassment, leaking information from the investigation to other employees, and unjustifiably demoting the employee to a position of store manager to promote a woman to his position, was not sufficiently outrageous to sustain a claim of intentional infliction of emotional distress:  "This conduct, even construed as true, was of the type attributable to 'employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct.'"  705 A.2d at 628.

The alleged facts in *Lockamy* and *Kerrigan* are far more outrageous than Counterclaimant's allegations and yet fell far short of the necessary legal standards to establish the intentional infliction of emotional distress "outrageousness."  The only conduct before this court that is outrageous is that of the Counterclaimants in this case.  Counterclaimant Murphy has spied on Morgan, PC employees, stolen confidential information from Morgan, PC, misappropriated information, attempted several times to hack into Morgan, PC's network and email systems, sent phony resumes to Morgan, PC, and deleted legitimate resumes of Morgan, PC job applicants.  Counterclaimants' conduct is "outrageous" as the word is commonly used.  But even that behavior falls below the clear, strict threshold needed to sustain a claim for intentional infliction of emotional distress under D.C. law.

> **2.    Counterclaimant has not alleged any facts that rise to this level of conduct.**

Copying the Counterclaim filed by Defendant Wiswell, Counterclaimant Murphy alleges that Morgan, PC intentionally inflicted emotional distress by forcing her to change her work hours and then by intimating to her co-workers that Counterclaimant had violated company policy/rules by arriving at work before 9:00 a.m. and leaving before 5:00 p.m.  (Counterclaimant Murphy's Answer and Counterclaim at ¶ 154.)  Counterclaimant alleges this change in hours increased her commute time and prevented her from spending time with her husband.  *Id.*

Counterclaimant Murphy also alleges that Morgan, PC took away Counterclaimant's support in the office by making her co-workers think she had violated firm policy/rules.  *Id.* Counterclaimant alleges that Ms. Wingate told Counterclaimant Murphy that Morgan, PC would give her old hours back to her if she "held on" for a few weeks.  (Counterclaimant Murphy's Answer and Counterclaim at ¶ 156.)  Counterclaimant alleges that Mr. Morgan and Ms. Wingate knew that Counterclaimants were friends and that telling Counterclaimant Murphy she could have her old hours back, accompanied by the request not to tell other employees, would cause Counterclaimant emotional distress.  (Counterclaimant Murphy's Answer and Counterclaim at ¶ 158.)  The factual allegations in Counterclaimant Murphy's Answer and Counterclaim at ¶ 130 also do not rise to the level of conduct necessary under D.C. law.  These actions are simply not cognizable in an action for the intentional infliction of emotional distress.

As a matter of law, Counterclaimant's asserted facts, even if true, cannot rise to the level of "extreme and outrageous" conduct to sustain the cause of action.  As discussed above, the *Lockamy* and *Kerrigan* cases, *supra*, described behavior that was far more extreme than the facts alleged here by Counterclaimant Murphy.  Nevertheless, the facts in those cases failed to support a claim of intentional infliction of emotional distress in the District of Columbia as a matter of law.

In conformity with clear D.C. precedent, Counterclaimant's cause of action should, therefore, be dismissed.

### 3.     A change in business policy *per se* does not amount to outrageous conduct.

A mere change in a business policy does not rise to the level of "extreme or outrageous." For example, a claim for the intentional inflection of emotional distress brought by an African-American woman fell below the "extreme and outrageous standard" although numerous offenses

were described, including not being allowed to supervise two white subordinates; being reprimanded for no reason; being refused participation in [her employer's] Management Incentive Fund; being forced out of her management position as EEO/Employment Manager; being promised a promotion in advertising that she was never given; having a major account taken away from her; being given one of the least lucrative sales territories; being excluded from office activities; and *not being advised of changes in policy and being reprimanded for asking about such changes*. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). Among other things, the *Harriston* decision stands for the proposition that changing a company policy -- *and* not informing the plaintiff of those changes -- cannot, as a matter of law, support a claim for the intentional infliction of emotional distress, even when coupled with other troubling accusations.

In another illustrative case, a court held that it is not "extreme and outrageous for the defendants to change their policies regarding extension of health insurance or to deny the basis of potential liability . . . unless the plaintiff alleges it was done deliberately to harass her*."* *Greene-Wotton v. Fiduciary Trust Co. Intern.* 324 F. Supp.2d 385, 394 (S.D.N.Y. 2003).

In the context of this case, it follows that Morgan, PC's shift in policy would have to have been made solely to harass Counterclaimant Murphy and that such a change would have no independent business value. In the instant case, however, Counterclaimant admits that the policy change was announced to, and applied to, the entire staff. Thus, by Counterclaimant's own admission, it cannot have been made solely to harass her.

Count II alleges that Morgan, PC changed its policy of allowing some employees to work hours outside of 9:00 a.m. to 5:00 p.m. Taking these allegations as true, they cannot, as a matter

of law, support Counterclaimant Murphy's claim of intentional infliction of emotional distress. Thus, Count II should be dismissed.

> **4.    Many allegations in Counterclaimant's Answer and Counterclaim were not directed towards the Counterclaimant, do not involve the Counterclaimant, and were not even alleged to be done in the Counterclaimant's presence.**

Counterclaimant Murphy also alleges several facts based on conduct not directed towards her (*e.g.*, allegations of commonly known names around the office for other employees) and conduct that occurred between two other people.  Recovery for such conduct is improper.  It is well settled that a third party may only recover for intentional infliction of emotional distress directed at another if the third party is:  (1) related to the intended victim and was present at the time of the conduct; or (2) if the person is not related to the intended victim but witnessed the conduct and subsequently suffered bodily harm resulting from the behavior.  Restatement (Second) of Torts § 46(2)(a) (1965).  More important for purposes here, however, is that conduct that gives rise to third-party recovery must be not only outrageous, but also violent and shocking. *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141 (1983); *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951) (holding that five year-old girl who sued father's estate was entitled to recovery after watching her father kill her mother and subsequently commit suicide because father's conduct was violent and shocking); *see also* Prosser, Handbook of the Law of Torts § 12 at 62 (4th ed. 1971).

In the Amended Counterclaim, Counterclaimant Murphy includes allegations that do not involve her.  Indeed, entire paragraphs include factual allegations that do not even involve her. (Counterclaimant Murphy's Answer and Counterclaim at ¶¶ 124, 125.)

While the alleged conduct fails to rise to the level of "extreme and outrageous" conduct required under D.C. law, Counterclaimant does not allege that she was even present to witness

the conduct.  Therefore, such conduct cannot support a claim of intentional infliction of emotional distress.

**C.    Count III:  The Counterclaimant has failed to allege any facts that support a claim under the federal Fair Labor Standards Act.**

Count III of the Counterclaim contains a count under the federal Fair Labor Standards Act ("FLSA").  The overtime provisions of Section 207 of the FLSA, 29 U.S.C. § 207, clearly exempt from coverage any employee in "a bona fide executive, *administrative*, or professional capacity."  29 U.S.C. § 213(a)(1) (emphasis added).  Counterclaimant is not entitled to overtime pay under the FLSA because she is clearly an "exempt" employee as a matter of law.  As such, Count III fails to state a claim upon which relief can be granted.

**1.    Counterclaimant is exempt from overtime pay under the Department of Labor's administrative exemption.**

Counterclaimant is exempt from overtime pay under the Department of Labor's well-established "administrative" exemption. [1]  Under Department of Labor regulations implementing the FLSA, the term "employee employed in a bona fide administrative capacity" means any employee:

- compensated on a salary or fee basis of not less than $455 per week[2]; and

- whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

- whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(1)–(3).

---

[1]  Plaintiff contends that Counterclaimant is exempt under more than one exemption and intends to plead as much if necessary.  For the purposes of this motion, it is sufficient that Counterclaimant's own Counterclaim admits facts which render fatal her attempt to state a claim due to the administrative exemption.

[2]  Counterclaimant concedes that her salary started at $25,000 per year, and ended at $50,000 per year.  (Answer and Counterclaim at ¶ 122.)  Thus her salary at all times exceeded the $455 per week figure required to qualify for exempt status.  A $25,000 annual salary equates to $480 per week.  Thus this element of the definition of exempt status does not appear to be at issue for the Counterclaimant.

The administrative exemption regulations specifically state that work directly related to the management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; human resources; employee benefits, etc.  29 C.F.R. § 541.201(b).  Additionally, employees acting as advisers to advisers or consultants to their employer's clients or customers (*e.g.,* as tax experts or financial consultants) may be exempt.  29 C.F.R. § 541.201(c).

## 2.    Counterclaimant is exempt from receiving overtime pay.

In her counterclaim, Counterclaimant Murphy alleges that:

- Pursuant to 29 U.S.C. § 207, Morgan, PC was obligated to pay Counterclaimant not less than one and one-half times the regular rate at which she was compensated for any time she worked over forty hours in any given work week (Counterclaimant Murphy's Answer and Counterclaim at ¶ 161);

- Despite the fact that Counterclaimant usually worked more than forty hours a week, Morgan, PC did not pay her time and a half for any time worked in excess of forty hours in a week (Counterclaimant Murphy's Answer and Counterclaim at ¶ 162).

Counterclaimant Murphy alleges that she was hired as a receptionist in 1998, was promoted to office manager after one year, and was promoted again to the position of bookkeeper in June, 2002.  (Counterclaimant Murphy's Answer and Counterclaim at ¶¶ 119, 120.)  Counterclaimant Murphy is exempt from overtime pay as an office manager and bookkeeper.  Counterclaimant admits that while she was the Office Manager, she was responsible for interviewing and making hiring recommendations.  (Counterclaimant Murphy's Answer and Counterclaim at ¶ 140.)

Regardless of Counterclaimant Murphy's title, whether an employee is correctly classified as exempt "depends on the character of [her] responsibilities and tasks, not on her job

title." *Overstreet v. North Shore Corp.*, 318 U.S. 125, 132 (1943).  Courts have applied the administrative exemption even where a significant portion of a plaintiff's job duties were bookkeeping functions.  *Gagnon v. Resource Tech., Inc.*, 2001 WL 909028, at *3 (10th Cir. 2001), *citing Lott v. Howard Wilson Chrysler Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (exempt administrative office manager's primary duty was "office work directly related to the general business operations"); *see also Cowan v. Tricolor, Inc.*, 869 F.Supp. 262, 264-265 (D. Del. 1994), *aff'd without op.* 60 F.3d 814 (3rd Cir. 1995)(employee exempt under administrative exemption where work involved office work 100% of time, and employee regularly and directly assisted her supervisor, the owner of the business, in his supervisory capacity, and the employee regularly exercised discretion in the performance of all her duties);  *Hills v. Western Paper Co.*, 825 F.Supp 936, 938-939 (D. Kan. 1993)(employer's accounting and credit manager was exempt administrative employee even though she spent more than 50% of her time in bookkeeping and clerical activities).

    In holding that a store manager fell within administrative employee exemption under FLSA even where employee spent more than half his workday performing nonexempt work, a Maryland district court cited several analogous instances where store managers, like office managers, were exempt under the administrative exemption.  *Stricker v. Eastern Off Road Equipment, Inc.*, 935 F.Supp. 650, 659 (D. Md. 1996); *citing to Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir.)(convenience store managers), *cert. denied,* 516 U.S. 863 (1995); *Donovan v. Burger King Corp.*, 675 F.2d 516, 520-22 (2nd Cir. 1982)(fast food restaurant assistant manager); *Meyer v. Worsely Cos.*, 881 F.Supp. 1014, 1017-21 (E.D.N.C. 1994).

    In holding that the employee was exempt under the FLSA, the *Gagnon* court noted that the summary of the plaintiff's responsibilities included duties to administer and carry out the

office work necessary to run the defendant's business. *Gagnon*, 2001 WL 909028 at *3. In that case, the plaintiff performed very similar duties as those of Counterclaimant Murphy because the *Gagnon* plaintiff was also the office manager and bookkeeper for the defendant's consulting and engineering firm. *Id.* at *2. Other courts have also held that an office secretary was not entitled to overtime under the FLSA for the time in which she exercised significant discretion and independent judgment. *Syzmula v. Ash Grove Cement Co.*, 941 F. Supp. 1032, 1038 (D.C. Kan. 1996).

Thus, by Counterclaimant's own admission, described above, Counterclaimant Murphy is exempt from the scope of coverage of the overtime provisions of the Fair Labor Standards Act. Count IV thus fails to state a claim under the FLSA, and Counterclaimant's claim should be dismissed under Rule 12(b)(6).

### D.    Count IV:  Counterclaimant has failed to state a claim under D.C. Code Ann. § 32-1308 and § 32-1012.

Count IV of the Counterclaim alleges a claim under D.C. Code Ann. § 32-1308 and § 32-1012.

Morgan, PC expressly incorporates the arguments set forth above as to Counterclaimant Murphy's exempt status.

The District of Columbia Wage and Hour Law, D.C. Code Ann. § 32-1001 *et seq.*, does not apply to any employee employed in a *bona fide* executive, administrative, or professional capacity, or in the capacity of an outside salesman (as these terms are defined by the Secretary of Labor under 201 *et seq.* of the Fair Labor Standards Act).  D.C. Code Ann. § 32-1004; *see Jones and Assoc. v. District of Columbia*, 642 A.2d 130, 132 (D.C. 1994) (District of Columbia Court of Appeals applying FLSA exemption for administrative employees to claims seeking overtime pay under D.C. Wage and Hour Law.).

The Counterclaimant alleges that:

- As her employer, Morgan was obligated to pay Counterclaimant not less than one and one-half times the regular rate at which she was compensated for any time she worked over forty hours in any given week (Answer and Counterclaim at ¶ 167);

- Despite the fact that Counterclaimant worked more than forty hours a week, Morgan, PC did not pay Counterclaimant at the rate of time and a half for wages earned during her employment (Answer and Counterclaim at ¶ 168).

As set forth above, Counterclaimant Murphy is exempt from receiving overtime pay under the FLSA and is, therefore, exempt from receiving overtime pay under the D.C. Wage and Hour Law.  It is clear that the D.C. Court of Appeals applies federal FLSA criteria in evaluating claims under the D.C. Wage and Hour Law.  *See Jones*, 642 A.2d at 132.  Because she is an exempt employee under the federal administrative exemption, Counterclaimant Murphy has no right to bring an action to recover wages under D.C. Code Ann. §§ 32-1012 and 32-1308.  Therefore, Counterclaimant fails to state a claim under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiff Morgan, PC respectfully requests that the Court dismiss Counterclaimant's counterclaims with prejudice for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,


___/s/_____
Manesh K. Rath
D.C. Bar No. 457835
George Brent Mickum, IV
D.C. Bar No. 396142
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel: (202) 434-4182
Fax: (202) 434-4646
Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY certify that on September 26, 2005, a copy of the foregoing was served by CM/ECF software to:

Janice Rockwell, Esq.
121-A North Court Street
Frederick, MD 21701-5415

Counsel for Defendant
Angela Murphy

Roger C. Simmons, Esq.
Victor E. Cretella, III, Esq.
Gordon and Simmons, LLC
603-B West Patrick Street
Frederick, MD 21705-0430

Counsel for Defendant
Susan Wiswell

John F. Hornick, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Counsel for Plaintiff
William A. Morgan, Jr., P.C.

_____/s/_____
Manesh K. Rath, Esq.