William A. Morgan, Jr. vs.  CA 05-1561  August 17, 2005
Susan Wiswell, et al.

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM A. MORGAN, JR.,          :      Civil Action No. 05-1561
                                 :
              Plaintiff          :      August 17, 2005
                                 :
                                 :
v.                               :
                                 :
SUSAN WISWELL, ANGELA MURPHY,    :      4:30 p.m.
JOHN DOES (1 - 10)               :
              Defendants         :
                                 :
. . . . . . . . . . . . . . . . :    . . . . . . . . . . .


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          JOHN F. HORNICK, ESQUIRE
                            FINNEGAN, HENDERSON, FARABOW, GARRETT &
                                 DUNNER, LLP
                            901 New York Avenue, NW
                            Washington, D.C.  20001-4413
                            (202) 408-4000

For the Defendant          JANICE B. ROCKWELL, ESQUIRE
Angela Murphy:             ATTORNEY AT LAW
                            121-A North Court Street
                            Frederick, Maryland  21701
                            (301) 631-0900

For the Defendant          ROGER SIMMONS, ESQUIRE
Susan Wiswell:             KIM LEMPER, ESQUIRE

Court Reporter:            REBECCA KING, RPR, CRR
                            Official Court Reporter
                            Room 4802-B, U.S. Courthouse
                            Washington, D.C. 20001
                            (202) 898-9398

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

William A. Morgan, Jr. vs.                    CA 05-1561                    August 17, 2005
Susan Wiswell, et al.

P R O C E E D I N G S

COURTROOM DEPUTY:  Civil action number 05-CV 156 (sic),
William A. Morgan, Junior versus Susan Wiswell, et al.  John
Francis Hornick present for the plaintiff, and Kim Lemper,
Janice Rockwell and Roger Simmons present for the defendants.

THE COURT:  I'm sorry to keep you waiting, counsel.  I
was double booked at 4:30 and took the one in chambers that I
thought would the shorter one.  Now I hope this will be the
shorter one.

Somebody tell me what's happened since we were last
together.

MR. HORNICK:  Yes, Your Honor.  Your Honor, John
Hornick for the plaintiff.  Since we were last together,
unfortunately not much has happened.  We have been in settlement
talks with the counsel for Ms. Murphy, but there are no serious
settlement talks at this time with counsel for Ms. Wiswell.

What we have been trying to do is we've been trying to
get expedited discovery.  As the judge strongly encouraged
everyone, I should say, at the August 3rd hearing, it was our
understanding that the parties were supposed to cooperate and
engage in expedited discovery, but despite numerous requests
from us, especially to counsel for Ms. Wiswell, who appeared the
day after that hearing, so far we have obtained nothing.

We provided the transcript to counsel, we quoted the
Court's words about expedited discovery, but to date we haven't

William A. Morgan, Jr. vs.                    CA 05-1561                    August 17, 2005
Susan Wiswell, et al.

Page 3

gotten one piece of discovery from them.

        Our motion for expedited discovery, according to local
rules, the response was due on August 15th.  There was no
response to that motion, so as I see it, it's unopposed.

        Now, as I said, we have had some serious settlement
talks with counsel for Ms. Murphy, and we may reach a settlement
there soon.  And we thought maybe we might be able to --

        THE COURT:  Remind me of which one is which.  Which one
is the office manager and which one is the professional --

        MR. HORNICK:  Murphy was the office manager, and
Ms. Rockwell represents Ms. Murphy, and we've been talking about
settlement.  We thought we might be able to do it before we got
here today, but there just wasn't enough time.

        With respect to Ms. Wiswell, who is the CPA, counsel
for Ms. Wiswell has suggested voluntarily extending the
injunction so that expedited discovery wouldn't be necessary.
But we haven't agreed to that at this time because we had
certain questions about the scope of the injunction.

        There were certain points that we wanted to see covered
by an injunction that weren't covered by the order issued by the
Court on August 3rd, so we tried to raise those issues.  We
haven't gotten any response, so therefore there's no -- right
now there's no agreement; in fact, no real serious discussion
about extending the injunction.

        So where we stand is that we would like to get

United States District Court            202-898-9398            Rebecca King, RPR, CRR
For the District of Columbia                                    Official Court Reporter

William A. Morgan, Jr. vs.                    CA 05-1561                    August 17, 2005
Susan Wiswell, et al.

Page 4

expedited discovery.  We provided discovery requests in our

motion, and the Court indicated that defendants could respond.

They haven't done so.  So we feel as though we would like to get

that expedited discovery and then --

        THE COURT:  What discovery do you want, Mr. Hornick?

        MR. HORNICK:  Well, specifically in our motion, we set

forth various requests in our motion, and the first eight dealt

with obtaining mirror images of hard drives of the defendants'

home and work computers.  And the Court indicated that

defendants could respond on that, which they haven't done.

        The remainder of the requests, number nine through 23,

request documents mostly; e-mails intercepted by the parties,

ingoing or outgoing to the plaintiff that were intercepted, also

all messages that went to the two Yahoo accounts that are

identified in the pleadings, documents that were created by the

plaintiff but are in the defendant's possession, custody, and

control.

        And there are a few others.  There's a catch-all

request at the end for any other documents that might relate to

the case.  It's a bit more specific than that, but really what

the request is, is a catch-all.

        So we would like to get those documents so that we can

eventually have a hearing on the preliminary injunction and have

an injunction entered that will preserve the status quo until we

can have a trial.  Right now I would have no reason to believe

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 17, 2005

Page 5

we're going to settle with the Wiswell defendant.  I think we

may do so with the Murphy defendant.

        THE COURT:  Do you represent Ms. Wiswell, sir?

        MR. SIMMONS:  I certainly do.  I certainly have a

different viewpoint, and I would like to address that.

        THE COURT:  I would like to hear your viewpoint.

        Tell me your name again, sir.

        MR. SIMMONS:  Roger Simmons.  I've been in front of

Your Honor at least two or three times.

        THE COURT:  I recognize your face very well, I just

have a bad memory for names.

        MR. SIMMONS:  It's not often I get down here.  I'm

honored to be here again.  I've been a member of this court and

this bar for 34 years, Your Honor.  I've been out in Frederick

practicing out of that office and that area now for about

18 years, but I learned to practice law here and I'm very proud

to be down here in front of this Court and I honor its

traditions.

        I'm a little surprised that -- Mr. Hornick may not be

aware that Ms. Lemper and I had a problem trying to get the

summons, and when it came.  The summons actually didn't get to

me.  I took it by fax on the 11th.  So -- I'm sorry, it was not

the 11th, it was -- let me get my calendar here.  It was a week

ago Monday, and so my response isn't due until Friday.  And I

certainly will respond.

Page 6

        But I proposed to Mr. Hornick both two things.  First

off I proposed to eliminate the bond, the $25,000 bond;

secondly, I proposed to continue the temporary restraining order

in all its aspects completely as it's drafted by Your Honor and

ordered by Your Honor indefinitely.  I have no problem with the

items entered by this Court.  It has been required to be

preserved, and should be done under that TRO.

        I also told Mr. Hornick that I would be happy to go

through any additional things he wanted on the preliminary

injunction, and exchanged e-mails with him on the 11th

responding to him.  I think he got it.  My machine indicated he

did, indicating that I was in agreement to the one specific

thing he asked, which was to add to the list of prohibitions any

interference with plaintiff's use of any password-protected

systems such as Monster.com.  I said, if you have any other

things out of the boilerplate list on the preliminary injunction

you want to add to it, tell me and I'll react to them.  And I

haven't heard one thing after that about any individual items or

specific things.

        I told him the generalized preliminary injunction goes

far beyond both the TRO and anything necessary here, and it's

not required at this point for us to be able to sort out our

defenses and to be able to preserve and get the discovery to one

another promptly.

        As I told him, Your Honor, I had a close family member

Page 7

that was in the hospital over at St. Joe's last week getting a

stint put in, and it disrupted most of my week last week.  I had

two short district court trials this week that have been

terribly time-consuming for me to deal with, and I at the same

time am trying to play catch-up in this case; a situation where

he acknowledges -- he told the Court in the transcript that I

got of the earlier August TRO hearing that it took his client

several weeks to hire people, to look at this and put together

their case.

        And I'm still in that hiring people and getting my case

together, getting an expert hired on this imaging stuff.  We

will be responding on the expedited discovery point, but I've

done everything in my power to eliminate the need to rush, rush.

I've agreed to keep everything exactly as it is, to eliminate

any bonding requirement; to add to that, to the extent he wants

specific items listed, I'll be glad to do that.

        I'm not here to obstruct things, I'm simply trying to

do this in a measured way when I have a chance to be able to

fairly represent my client and get things to Mr. Hornick and his

clients on an expedited basis.

        Now, the shoe is on the other foot, Your Honor.  I have

asked him for expedited treatment in the production of

documents.  He has not given those to me, either.  And where we

got hung up on that, he wants a clause put in to this saying

"attorneys eyes only."  And I explained to him, and I have the

William A. Morgan, Jr. vs.                        CA 05-1561                        August 17, 2005
Susan Wiswell, et al.

Page 8

court orders here from the Superior Court case that I told him
about, two different Superior Court judges specifically held
"attorneys eyes only" inhibit a client's ability to get
effective representation of counsel.  It creates a due process
problem.

        In this situation you can put in a protective order,
but you can't put "attorneys eyes only" on everything he wants
to exchange.  It's just not fair to my client, it puts me in a
handicap position where I'm not able to fairly represent her,
and I can't agree to an attorneys eyes only.  If we have to
brief that, I'll be glad to brief it.  But I have already
briefed it at length in front of Judge Braman and Judge Long
over at the DC Superior Court.  I know what the DC law is on it.

        THE COURT:  I am not a big fan of attorneys eyes only,
not because of due process problems, but because it -- well,
never mind.  We need to find a different way around this than
attorneys eyes only.

        But here's the plaintiff's problem here:  All I did
when I issued this TRO was to enjoin the defendants, including
your client, from intercepting communications, accessing the
network, or trespassing on the personal property.  They wanted a
much broader injunction, because they believed or were informed
and believed that the defendants, including your client, had
made off with significant business information which they were
going to make use of.

William A. Morgan, Jr. vs.                        CA 05-1561                              August 17, 2005
Susan Wiswell, et al.

They don't have an answer to that allegation yet, and
that's -- I'm putting words in their mouth, and they can put it
better, but that's what they're nervous about.

Now, their -- and I am appropriately sympathetic to
your relative's stint problems and to your other professional
problems, but until or unless there's some answer given to what
actually went on here, everybody is pretty nervous.

Now, do you have an answer to that?  Do you know what
your client did?

MR. SIMMONS:  The short answer at this point, Your
Honor, is whatever happened is not going on now, as Mr. Hornick
has acknowledged to me in the e-mails.  Whatever happened is not
going to happen again, by my commitment to the Court and my
promise to him and everyone else.  If my client had anything to
do with anything that happened here, I guarantee it won't happen
again.

She has absolutely no interest in any way in that
Morgan entity, and will not have anything to do with any of the
steps that have been alleged against her here in the future.
And I'm not at this point in a position to be able to tell you
what exactly happened, when it happened and how it happened,
because that's where my ability is limited, because I have not
had the opportunity to go through and either see his computers
or their computers and do this analysis.

I don't have my computer expert on board yet, and to do

Page 10

it on a rush basis is extraordinarily expensive for a small
individual.  I think it's expensive for anyone, but to do it on
a rush basis is ultra expensive.  And therein lies my problem,
trying to get all of this done in such a huge hurry.

I'm willing to temporarily agree to pretty specific and
ironclad protections and guarantees, and I'm not insisting upon
any kind of injunction.  That will allow us to go forward in a
measured, responsible manner and deal with this appropriately.

I hope I've answered Your Honor's query, because
sometimes I get too long-winded.

The thing I'm trying to tell you, Your Honor, is it's
not so much my issues that's a problem, or my schedule; my
inability impacts on my client's ability to get what she needs
in the way of fair representation.

THE COURT:  Let's look at the discovery requests that
are attached that are part of plaintiff's motion for expedited
discovery.  "Plaintiff's computer forensic expert shall be
permitted to inspect and make an electronic image of Susan
Wiswell's entire personal computer hard drive."

MR. SIMMONS:  Your Honor has got the advantage over me.
Give me just a moment.  I think this is in a memorandum, it's
not in a document request.

THE COURT:  No, it's in plaintiff's motion to preserve
evidence and for expedited discovery.  You don't have that?

MR. SIMMONS:  Just a minute.  Do you have a page number

William A. Morgan, Jr. vs.                          CA 05-1561                          August 17, 2005
Susan Wiswell, et al.

Page 11

for me, Your Honor?

       THE COURT:  Page three of that memorandum.  Well,
numbers one, three, four, six, seven, and eight are all for what
I would call purely electronic discovery.

       MR. SIMMONS:  But the problem you have on these, as I
see it, is twofold.  Assuming we can get access to the computer
we're talking about, and that I can't swear to right now, but
assuming that, there's going to be a lot of information on there
that has nothing to do with this case.

       THE COURT:  That's obviously true.

       MR. SIMMONS:  And why should they be given just all of
the personal and potentially business information for others
without a restriction?

       And we've asked -- I mean, if this is going to happen,
we would like it a two-way thing.  We would want the images from
each and every one of the Morgan computers for the same time
frame.  Therein lies my problem.

       THE COURT:  That doesn't compute, Mr. Simmons.

       MR. SIMMONS:  Sure it does.  Because they're saying
that these computers were impacted by my client, and --

       THE COURT:  The question is --

       MR. SIMMONS:  -- if they were, then --

       THE COURT:  Excuse me.

       MR. SIMMONS:  I'm sorry.

       THE COURT:  The question is whether your client took

Page 12

things she shouldn't have taken from --

     MR. SIMMONS:  Well, my information on that is she didn't take anything she shouldn't have, nor did she delete anything she shouldn't have.

     But in order for me to be able to make my case, I've got to get what's on their computer.

     THE COURT:  Mr. Hornick, let me hear from you.  Thank you, Mr. Simmons.

     MR. SIMMONS:  Certainly, Your Honor.

     THE COURT:  Let me hear from you, Mr. Hornick, about what you are informed and believe is going on that requires more expedited discovery, and why a continuation of the TRO for some reasonable period wouldn't do it.

     MR. HORNICK:  Well, Your Honor, with respect to the continuation of the TRO as it is, I would say we had two main concerns.  One Mr. Simmons touched upon, and that was that the current TRO doesn't cover interfering with other computer systems, not our client's systems but other systems like Monster.com.

     The Court may recall that I mentioned during a prior hearing that we learned that someone had tampered with our client's account at Monster.com and changed parameters -- well, turned it off for a while and then changed parameters, so that the only resume's that our client was receiving from Monster.com were Ph.D.s looking for entry-level positions.

202-898-9398

William A. Morgan, Jr. vs.                    CA 05-1561                         August 17, 2005
Susan Wiswell, et al.

            THE COURT:  Haven't you been able to fix that with

Monster.com?

            MR. HORNICK:  Well, I believe it's been fixed now, but

the problem, Your Honor, is there could be other ones out there

that have been changed that we don't know about.  So that's why

we wanted to expand the injunction to cover any third party

computer systems -- interference with any third party computer

systems used by our client.

            Then the other point that we wanted --

            THE COURT:  Would you object to expansion of the TRO to

cover that, since you say they're not doing it anyway?

            MR. SIMMONS:  Absolutely not.  And that specifically is

in an e-mail on August 11th to Mr. Hornick.

            THE COURT:  Okay, fine.  Next?

            MR. HORNICK:  The other point was using or disclosing

any of Morgan's confidential business information.  That's not

covered by the current TRO, and we're concerned that any

information that was obtained could be being used or could be

being disclosed in some way.

            THE COURT:  Any objection to that, Mr. Simmons?

            MR. SIMMONS:  No objection, Your Honor.

            THE COURT:  All right.  What's next?

            MR. HORNICK:  Those were the only points, Your Honor,

that were not adequately covered, in our opinion, by the order.

            But in terms of obtaining discovery, the question then

William A. Morgan, Jr. vs.                    CA 05-1561                              August 17, 2005
Susan Wiswell, et al.

Page 14

becomes, well, when does discovery happen.  Does it happen

30 days from when we served those requests; in other words, or

do we have to wait for a scheduling order and then begin

discovery in the normal course as in any other case?

        Right now we have some discovery requests that have

been in the defendant's hands since the 3rd or the 4th of this

month.

        THE COURT:  You say you didn't get the summons until

the 11th?

        MR. SIMMONS:  I didn't get it until August 8th, Your

Honor.  I misspoke when I said the 11th.  It was the 8th.  It

came to me by fax.

        THE COURT:  And your time to answer is August 28th?

        MR. SIMMONS:  Right.

        MR. HORNICK:  All the papers, though, Your Honor, were

in their hands on the 3rd or the 4th.  I don't know why or if

the summons wasn't there, but all of these other papers were in

their hands.  They had actual notice of this proceeding, and we

had even provided the Court's transcript of the proceeding.

        There are a couple of points that I would like to

respond to, if I can, Your Honor.  With respect to this issue of

producing documents, the defendant has asked for some documents

and we've been ready to produce them.  In other words, all the

things that they say they want to get from us by way of doing

imaging, which I think is unnecessary, we're essentially ready

William A. Morgan, Jr. vs.                    CA 05-1561                          August 17, 2005
Susan Wiswell, et al.

Page 15

to produce, it's just that we proposed a stipulated protective

order that would protect those documents.

        Mr. Simmons said that he didn't have time to review

that adequately, so I said, until we have a protective order in

place, will you agree to hold the documents on an

attorneys-eyes-only-basis.

        He refused to do that, because he said at some point or

another he has to have the ability to show our confidential

documents to his client.  And Mr. Simmons may have been

practicing law longer than me, but in every case that I have

ever seen, there's been a protective order, and the protective

orders are specifically to prevent one client's confidential

information from being shown to the defendant.

        And think about it this way:  In a trade secret case,

we're accusing the defendants of improperly taking information,

doing it the wrong way.  What Mr. Simmons is asking us to do is

to provide information to them the right way; in other words,

the information they couldn't get the wrong way, he wants to be

able to just show to them.  That we say we can't do.

        We have to have a protective order in place to protect

confidential information, and I simply propose that until we

have one, he accept the documents on an

attorneys-eyes-only-basis, in which case he could have had the

documents on the 12th.  They're ready to go, they're sitting

there ready to be produced.

William A. Morgan, Jr. vs.                   CA 05-1561                   August 17, 2005
Susan Wiswell, et al.

But we do object to the imaging of our client's hard
drives --

MR. SIMMONS:  On that point, Your Honor --

THE COURT:  Your turn is coming up, Mr. Simmons.

MR. HORNICK:  On the imaging of our client's hard
drives, we don't see why it is necessary, for several reasons.
One is, any information -- normally when you image hard drives,
it's not to get discovery per se, but it's to get discovery that
you can't get in some other way; for example, documents have
been deleted or they're not being produced in some other way.
You've asked for them but you don't get them, the defendant
says, well, we don't have them.  So you do that discovery to try
to find things.

And often it deals with documents that are supposedly
deleted, and the forensic experts try to recover them.  So you
get the hard drive so that the expert then has something to work
with to recover the documents.

Well, our experts have already done that.  They've
taken our client's hard drives and they've recovered as much as
we can possibly recover that was deleted in the ordinary course
of business, or that was deleted by the defendants when they
left the company, and we've recovered as many logs as we can
possibly recover.  So we have all of that ready to produce.

Our client is very concerned about having their hard
drives imaged, because there's a lot of confidential information

United States District Court                   202-898-9398                   Rebecca King, RPR, CRR
For the District of Columbia                                                  Official Court Reporter

William A. Morgan, Jr. vs.                           CA 05-1561                                    August 17, 2005
Susan Wiswell, et al.

Page 17

on there.  This is an accounting firm --

        THE COURT:  I can't foresee a scenario in which your

client is going to have to turn over an image of your hard

drives.

        Look, until I am shown something darker and more urgent

than has been shown to me so far, I am beginning to form the

impression of this as a case of very bad, very unhappy parting

of the ways between Ms. Wiswell and Morgan, in which arguably

Ms. Wiswell did some things that she should not have done, with

questionable long-term damage or results, but which the

plaintiff is entitled to know about.

        I also have the feeling, particularly now that

Ms. Wiswell is represented by counsel, that whatever she was

doing, if anything - I'm not, of course, prejudging this - she

will stop doing it.  And for us to descend into full-scale,

full-throated discovery litigation here is going to be very

expensive, and ultimately maybe not worth a candle for either

side.

        I would like to find a way, consistent with my

obligations under Rule 1 of the Federal Rules of Civil

Procedure, which is to assure the just, speedy, and inexpensive

resolution of disputes, to keep everybody's expenses down and to

keep some of the heat out of this.

        Now, the defendant, Ms. Wiswell, says that she will

accept both of the amendments you want to the TRO.  She says

United States District Court                    202-898-9398                    Rebecca King, RPR, CRR
For the District of Columbia                                                      Official Court Reporter

William A. Morgan, Jr. vs.                    CA 05-1561                    August 17, 2005
Susan Wiswell, et al.

Page 18

that she will agree to a release of the bond, which cannot be a
pleasant thing to had to have posted.  She says she'll accept an
extension of the TRO indefinitely.  I don't want it to be
indefinite.  I don't want indefinite litigation.  I want this
thing resolved.

        I don't think your discovery requests could fairly run
from the 3rd or 4th of August, and frankly, we could run them
from the 11th, but that would mean that all these responses
would have to be due on September the 11th -- well, I guess
that's all right, September.  We can do that, can't we?

        Now, as far as the protective order is concerned, I had
lunch today with one of my former law clerks who reminded me of
something I did a couple of years ago that I had forgotten doing
it, but it gave me such pleasure to be reminded of it that I
think I'll tell you about it.

        It was a case in which counsel were struggling with
each other over the terms of a protective order, and they
struggled and they struggled and they struggled, and they called
me and asked for conferences and they sent motions back and
forth about what the discovery order should be, and I finally
issued an order that said, basically, counsel will get together
and work out the terms of a discovery order, and if they can't
work it out, they will come to my chambers on the afternoon of
something or other at 5:00 o'clock and we will work out the
terms of the discovery order, following which counsel will be

William A. Morgan, Jr. vs.                    CA 05-1561                    August 17, 2005
Susan Wiswell, et al.

Page 19

required to write it 100 times on the blackboard.

        Which is another way of saying, work it out.  Discovery

orders are common.  It's also not uncommon, Mr. Simmons, if you

have to have the paper before you have the discovery order, to

enter into an attorneys eyes only until you do get the --

        MR. SIMMONS:  That's what I was going to say.

        THE COURT:  -- protective order.

        MR. SIMMONS:  Your Honor, I did offer that, and I told

him that he had to understand that if I agreed to that, then I

reserved the right to come back and get that lifted.  And that's

where we hung up and stopped negotiating.

        THE COURT:  Now, what's going to be turned over under

the protective order is another question entirely.  I do not

expect Morgan to be turning over its business secrets in

discovery, even under a protective order.

        MR. SIMMONS:  I don't want those.  But I do want

anything that refers to my client and stuff they say that she

impacted or touched or anything else.

        THE COURT:  Well, that's something you can work out.

        Now, here are my rulings, which I want you to -- you

can present me with a revised temporary restraining order,

revised as we have worked out here in court, and an order that

releases the bond.

        You can -- Mr. Simmons, you may take the motion for

expedited discovery to be granted in part; that is, that the

United States District Court            202-898-9398            Rebecca King, RPR, CRR
For the District of Columbia                                    Official Court Reporter

William A. Morgan, Jr. vs.          CA 05-1561          August 17, 2005
Susan Wiswell, et al.

Page 20

discovery that has been served upon you is effectively served as

of the 11th of August, and is returnable within the standard

discovery times as of the 11th of August.  If you have

objections to make, object to them in the ordinary course.

        As for a protective order, work it out.  If you can't

work it out, exchange documents under an eyes-only agreement

until you can work it out.  And if you still can't work it out,

come to my chambers at 5:00 o'clock in the afternoon and we will

work it out together and then you will write it 100 times on the

blackboard.

        Now, what I would like to do is to get that done, let

about 45 days or so pass, and then have you come back for a

status conference.  My hope is, frankly, that in the next

45 days some of this heat will have evaporated and you'll settle

this matter.  If you can't, we'll talk about a serious ongoing

schedule for further discovery, pretrial conferences, and

motions.

        Now, I would call that -- a good day for that

October the 5th.

            MR. SIMMONS:  I have a trial that day.

            MR. HORNICK:  May I grab my calendar, Your Honor?

            MR. SIMMONS:  It was just set this morning.

            THE COURT:  October the 11th.

            MR. SIMMONS:  That's free, Your Honor.

            MR. HORNICK:  Fine, Your Honor.

William A. Morgan, Jr. vs.                           CA 05-1561                              August 17, 2005
Susan Wiswell, et al.

Page 21

            THE COURT:  4:30 in the afternoon.

            MS. ROCKWELL:  Your Honor --

            THE COURT:  Oh, guess what?  That will be a very,

very -- we might even have champagne in this courtroom on that

day.  That will be the last day that I occupy this courtroom

before we move to the new annex.

            MR. HORNICK:  Your Honor, can we wait and come to the

new annex?  Just joking, Your Honor.  We'll be happy to come on

the 11th.  I'm just anxious to see the new building.

            THE COURT:  It's a public building.

            MS. ROCKWELL:  Your Honor, I'm Janice Rockwell.  I

represent the other defendant.

            THE COURT:  Ms. Rockwell, you're the good guy here.

You're settling, you're working everything out.  Come up to the

podium.

            MS. ROCKWELL:  Thank you.  Well, we hope so.  And I

just wanted to make clear the status, for the record, on the

motion for the expedited discovery.

            Mr. Hornick and I had discussed prior to coming into

this courtroom today that because we were so close on

settlement, he would not press for expedited discovery or seek

expedited discovery from my client to allow us an opportunity to

work this out.

            So I want it to be absolutely clear that Your Honor's

ruling on the motion for expedited discovery does not pertain to

William A. Morgan, Jr. vs.                    CA 05-1561                        August 17, 2005
Susan Wiswell, et al.

Page 22

defendant Angela Wiswell -- I'm sorry.  I said that wrong.
Angela Murphy.

        THE COURT:  And it pertains to everybody, but, but with
this proviso.  And I haven't issued my standard scheduling
order, but my standard scheduling order always contains a
provision which I will now give you in open court, which is now
the law of this case.

        Which is this:  That if the parties agree among
themselves to any extension of time or any modification of
discovery that does not affect a day in which you have to be
before me, all you have to do is agree to it and advise me of it
in some very informal way.  It can be by e-mail, it can be by
fax, it can be by letter, and today, for today only, it can be
in open court.

        MS. ROCKWELL:  Wonderful.  Can we so advise you, then,
that we agree to extend discovery as to Angela Murphy?

        THE COURT:  Yes.  Understood.

        MR. HORNICK:  Well, Your Honor, I would like to just
comment on that.  I don't think we're far apart on that.  I
guess my view is that we seem to be close to settlement; if we
don't settle within the next couple of days, then we may not,
and I don't see why the September 11th date wouldn't be a good
date for discovery for everybody.

        THE COURT:  Well, that's why I said it applies to
everybody except by agreement.  And if the agreement falls

William A. Morgan, Jr. vs.                  CA 05-1561                      August 17, 2005
Susan Wiswell, et al.

Page 23

apart, then you're going to want to enforce your settlement and

then somebody has got to come back here with a motion.

       MR. HORNICK:  Yes, Your Honor.  And if the negotiations

continue well, then we would be amendable to extending it past

September 11th if we hadn't settled by then.

       THE COURT:  In other words, work it out.  That's my

standard mantra here, work it out.

       MR. HORNICK:  May I ask a question, Your Honor?

       THE COURT:  Yes, sir.

       MR. HORNICK:  With respect to any discovery that has

not yet been exchanged -- we've received some requests from

Mr. Simmons, he has our requests that are set forth in our

motion for expedited discovery.  If we want to do any

additional -- serve any additional requests, same thing,

30 days, just like under the federal rules?

       THE COURT:  Yes.

       MR. HORNICK:  Noticing depositions, fair notice, same

thing?

       THE COURT:  Yes.

       MR. HORNICK:  Thank you, Your Honor.

       THE COURT:  Yes.  Okay?  I do not expect to issue a

written order except the amendment to the TRO that we've talked

about.  So whatever else has been done here is on the record of

this proceeding.

       MR. HORNICK:  So we'll submit the proposed order that

William A. Morgan, Jr. vs.                    CA 05-1561                              August 17, 2005
Susan Wiswell, et al.

Page 24

reflects the Court's current TRO with the additional points we

discussed today?

      THE COURT:  Yes.

      MR. SIMMONS:  Your Honor, I guess Mr. Hornick has given

me his answer here today, but I thought he and I were engaged in

settlement discussions, and I thought I had a draft order or

draft settlement paper in front of me.  It came to my desk today

when I was out at another matter.

      So I'm surprised to hear him tell the Court that I'm

not in settlement negotiations.  I am.  I thought I was.

      THE COURT:  I don't think he said that.  I'm sure he

would be happy to settle with you.

      MR. SIMMONS:  He hasn't even given me a number yet.

      THE COURT:  Well, I don't want to hear that in open

court.

      Thanks, counsel.  We're adjourned.

William A. Morgan, Jr. vs.                    CA 05-1561                    August 17, 2005
Susan Wiswell, et al.

Page 25

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Rebecca King, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.


_____        _____

SIGNATURE OF COURT REPORTER                     DATE