## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WILLIAM A. MORGAN, JR., P.C.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 05-cv-1561** |
| | ) | |
| **SUSAN WISWELL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### DEFENDANT WISWELL'S OPPOSITION TO
### PLAINTIFF MORGAN'S MOTION TO DISMISS COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant and counterclaim plaintiff Susan Wiswell ("defendant" or "Wiswell") opposes the motion to dismiss filed by plaintiff and counterclaim defendant William A. Morgan, Jr., P.C. ("Morgan" or "plaintiff"). For the reasons more fully explained below, Morgan's motion should be denied.

### FACTS ALLEGED

The relevant dealings between and among the parties began during the winter of 2001, when Susan Wiswell, a certified public accountant and then-pregnant mother of two children sought a new job, provided that she could obtain employment with a firm that would be flexible and allow her to work a schedule compatible with demanding parenting responsibilities. Wiswell Am. Countercl. ¶ 119. Morgan represented that it would provide such flexibility and respect for Ms. Wiswell's responsibilities. Wiswell Am. Countercl. ¶ 119-20.

What began as a workable employment relationship began to gradually deteriorate. Almost by accident, Ms. Wiswell discovered that Morgan paid male employees substantially more than it paid Ms. Wiswell, despite the fact that their skills, efforts, responsibilities and working conditions were substantially similar to those of Ms. Wiswell. Am. Countercl. ¶¶119, 122. At Wiswell's

subsequent performance review, Morgan's treatment of Ms. Wiswell turned hostile, beginning with threats that Ms. Wiswell would be fired (without reason), malicious taunts and efforts to elicit emotional reactions on the part of Ms. Wiswell, followed by threats to alter her work schedule so as to interfere with her parenting responsibilities. Id. ¶ 124. Thereafter, Morgan proceeded to maliciously make false statements about Wiswell, including those that harmed her professional reputation as just one of many additional outrageous acts intended to humiliate Wiswell.  Wiswell Am. Countercl. ¶¶124-28. Morgan utilized deliberately inhumane treatment of its employees such as Ms. Wiswell, including, without limitation, derogatory and intimidating attacks on sex, age, race and national origin (id. ¶¶ 138-40), and even went so far as to elicit  weeping and vomiting on the part of Wiswell (Countercl. ¶ 144) as a precursor to further berating and screaming  (id. ¶ 145) – solely to cause a *de facto* termination, while coercing Ms. Wiswell into resignation.

The terror, abuse and resulting damage inflicted by Morgan upon Ms. Wiswell – including emotional distress – was no mere side effect of cold but normal business practices – it was and is Morgan's deliberate management tool.  Morgan identified Ms. Wiswell's deeply personal concerns, values and fears and then systematically and sadistically exploited that knowledge in order to indirectly accomplish improper business ends that are at best highly questionable and immoral.

## LEGAL DISCUSSION

### A.    Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the counterclaim need only set forth a short and plain statement of the claim, giving the counterclaim plaintiff fair notice of the claim and the grounds upon which it rests. Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and Conley v.

<u>Gibson</u>, 355 U.S. 41, 47 (1957)).  In resolving a Rule 12(b)(6) motion, the court must treat the counterclaim's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the counterclaim plaintiff's favor. <u>Macharia v. United States</u>, 334 F.3d 61, 64, 67 (D.C. Cir. 2003).

It is not necessary for the counterclaim plaintiff to plead all elements of her prima facie case in the complaint, <u>Swierkiewicz v. Sonoma N.A.</u>, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." <u>Krieger v. Fadely</u>, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).  Thus, dismissal for failure to state a claim is unavailable unless the counter-defendant can show beyond doubt that the counterclaim plaintiff can prove no set of facts in support of her claim that would entitle her to relief. <u>Warren v. District of Columbia</u>, 353 F.3d 36, 37 (D.C. Cir. 2004).

**B.    <u>Wiswell's Defamation Claim Should Not Be Dismissed</u>**

In its motion to dismiss, Morgan argues that Wiswell failed to allege sufficient facts to support the first two elements of a defamation claim.  Specifically, Morgan argues that Wiswell failed to allege (1) that the Morgan made a false and defamatory statement concerning Wiswell; or (2) that Morgan published the statement without privilege to a third party.[1]  <u>Crowley v. North Am. Telecommunications Ass'n</u>, 691 A.2d 1169, 1173 n.2 (D.C. 1997).  Morgan's arguments are wrong.

**1.    <u>Morgan's Statement Is False and Defamatory</u>**

First, Morgan did not properly preserve its arguments.  In order to be sufficient, the grounds

---

[1]There are a total of four elements required to state a defamation claim.  The two elements which Morgan did not challenge are as follows:  (1) that Morgan published the defamatory statement with fault; and (2) either that the defamatory statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.  <u>Crowley v. North Am. Telecommunications Ass'n</u>, 691 A.2d 1169, 1173 n.2 (D.C. 1997).

for a motion must be stated with particularity. Fed. R. Civ. P. 7(b)(1). Here however, Morgan did not explain with any detail how the statements identified in the defamation count were free of any defamatory meaning as a matter of law. Instead it raised this argument in a purely conclusory fashion. See Mem. at 7 (suggesting that "Wiswell has failed to allege that [Morgan] made a single false statement, much less a defamatory statement") (emphasis added). Accordingly, Morgan's argument that Wiswell failed to identify any defamatory statements should be denied summarily.

Even if Morgan properly preserved the argument, this Court should still reject it. "A defamatory statement is one which tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." Crowley v. North Am. Telecommunications Ass'n, 691 A.2d 1169, 1173 n.2. When determining whether a statement is defamatory, this Court must examine it in context with the surrounding facts. Wallace v. Skadden, Arps, Slate, Meagher & Flom, 715 A.2d 873, 878 (D.C. 1998).

The D.C. Court of Appeals applied these principles in Wallace where the plaintiff alleged that she was defamed by her former employer. Specifically, her employer accused her of being "often out of the office during normal working hours." Id. at 878. Although the Court noted that the statement was not conclusively defamatory, it nevertheless held that the statement "could reasonably be construed, in context, as a reflection on [the employee's] professional performance." Id.; see also Crowley, 691 A.2d at 1173 (statement made by employer that former employee left a bullet casing at the office could "reasonably be understood in a defamatory sense").

Likewise, the statement made by Morgan to his employees can reasonably be construed as defamatory. He told his employees: it had come to his attention that people were "not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m." Wiswell's Am. Countercl. ¶ 126.

4

Accordingly, he created the same defamatory impression created by the employer in <u>Wallace</u>, <u>i.e.</u> that employees were often out of the office during normal business hours. Even if such a statement is not conclusively defamatory, it certainly is capable of reflecting poorly on the employee's dependability and alienating the subject from employees who comply with the company's "policies."

Second, Wiswell has properly alleged that the defamatory statement made by Morgan was false. On May 4, 2005, Mr. Morgan acknowledged that the office hours for his business were not 9 to 5 when he stated to Ms. Wiswell that "we need to get the office hours back to 9 to 5." Wiswell's Am. Countercl. ¶ 124. Although he expressed to her an interest in <u>changing</u> the hours to 9 to 5, he ultimately agreed that she could continue working from 7 to 4. Accordingly, when Mr. Morgan stated on May 9 to all of his employees that several employees were failing to adhere to the firm's 9 to 5 office hours, his statement was patently false because he had admitted 5 days earlier that the office hours were not 9 to 5; Mr. Morgan was not "merely convey[ing] a company policy to his employees at [the May 9] meeting" as suggested in Morgan's motion to dismiss. <u>See</u> Mem. at 7. Instead, he was falsely stating that the 9 to 5 hours were an existing policy and several employees were violating it.

### 2.    <u>Morgan Is Not Protected By Privilege</u>

Morgan's privilege defense is also deficient. Although an employer typically is protected by a conditional privilege when making statements about its employees, this privilege is lost if the statement is made with malice. <u>Wallace v. Skadden, Arps, Slate, Meagher and Flom</u>, 715 A.2d 873, 879 (D.C. 1998). "In the context of defamation, malice means basically that the publisher acted in bad faith." <u>Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan</u>, 374 A.2d 284, 290 (D.C. 1977). Bad faith in turn is described as

the doing of an act without just cause or excuse, with such a
conscious indifference or reckless disregard as to its results or effects
upon the rights or feelings of others as to constitute ill will.

Id. (noting that the "existence of malice is ordinarily a factual issue for the jury").  Malice can be

inferred if the "publisher acts either with knowledge that the statements are false or with reckless

disregard for their truth".  Id. at 291.

Here, Wiswell has sufficiently alleged that Morgan published his defamatory statements with

malice.  Five days before he made the statement to his employees that Wiswell was violating the

firm's office hour policy, he explicitly gave her approval to continue working from 7 to 4.

Accordingly, when he told his employees that she was violating firm policy, he should have known

that this statement was false.  Wiswell's Am. Countercl. ¶¶124-26.  By knowingly making a false

statement about Wiswell, this Court can clearly infer malice. Morgan's ill will is futher evidenced

by the fact that Morgan's defamatory statement was just one of many outrageous acts intended to

humiliate Wiswell.  Wiswell Am. Countercl. ¶¶124-28.

Furthermore, Morgan's defamatory publication was not a general statement of human

resource policy as claimed by Morgan.  See Mem. at 10.  Rather it was a negative public job

evaluation criticizing her work ethic.  This type of conduct is clearly actionable in the District of

Columbia.  Crowley, 691 A.2d at 1173 n.2; Wallace, 715 A.2d at 878.

Moreover, Morgan's conduct was not protected simply because he refrained from identifying

any violators of his "policy" by name at the meeting.  "A public defamation can be aimed at a person

even when his name is not mentioned."  Flamand v. American Int'l Group, Inc., 876 F. Supp. 356

(D. Puerto Rico 1994). This "of and concerning" requirement can be met if the subject, "is pointed

to by description or circumstances tending to identify her." Weinstein v. Bullick, 827 F. Supp. 1193,

1199 (E.D. Pa. 1993). In such a cases, the plaintiff has to allege and prove, by way of colloquium that the defamatory charge refers to him." Flamand, 876 F. Supp. at 372.

Here, everybody at the May 9 meeting understood exactly who Mr. Morgan was referring to when he said particular employees were not working 9 to 5 because they knew Wiswell did not work those hours. Accordingly, Mr. Morgan's statement is "of and concerning" Wiswell because it pointed to her by circumstances perfectly understood by all the listeners. There was nothing "discreet" about his bad conduct.

Additionally, Wiswell has properly alleged that Morgan published the defamatory statement to a third party. In D.C., "to render slander actionable it is necessary that the defaming words be communicated to some person other than the one defamed." Tocker v. Great Atlantic & Pacific Tea Co., 190 A.2d 822, 824 (D.C. 1963). Here that happened when Morgan published his defamatory statements to Wiswell's coworkers. Wiswell's Am. Countercl. ¶ 124.

Morgan attempts to overcome this result by citing to foreign precedent. Specifically, Morgan cites to an opinion rendered by a Court of Appeals of Tennessee for the proposition that:

> "communications among agents of the same corporation made within the scope and course of their employment relative to duties performed for the corporation are not to be considered as statements communicated or publicized to third persons."

Mem. at 9 (citing Woods v. Helmi, 758 S.W.2d 219, 224 (Tenn. App. 1988)). Analogizing to this case, defendant argues that Mr. Morgan's statements to his employees are insulated from liability.

However, Morgan's argument must fail because the Tennessee precedent referenced in his Motion has never been accepted in D.C. Indeed it is contrary to the law of this jurisdiction. In Crowley, the Court of Appeals held that it was improper to dismiss a defamatory statement about a person which was published to the person's former co-workers. 691 A.2d at 1171, 1172-73.

Similarly, in <u>Wallace</u>, the Court of Appeals noted that partners in a single law firm were not absolutely privileged to defame their employees even amongst themselves. 715 A.2d at 879 ("If we were to accept defendants' legal theory, [t]he defendants would thus escape liability even if, <u>e.g.</u>, they falsely and maliciously represented to interested third parties, <u>or to each other</u>, that the plaintiff had embezzled client funds") (emphasis added); <u>Atkins v. Industrial Tele. Ass'n</u>, 660 A.2d 885 (D.C. 1995) (applying Virginia law for the proposition that employer's statements to employees are not absolutely privileged). Accordingly, D.C. law clearly allows former employees like Wiswell to sue their former employee for defamatory statements published to former coworkers.

Neither can Morgan obtain a dismissal by relying upon the <u>Copperweld</u> or "intercorporate immunity" doctrine. Mem. at 9. "Under that doctrine, an entity, its officers and agents are presumed to act as a single enterprise and may not be found to have conspired with one another." Since Wiswell has not alleged any conspiracy in this case, and could not purport to do so when there is only one counterclaim defendant, the <u>Copperweld</u> doctrine is obviously inapplicable to this case. Clearly, the addition of this argument exemplifies just how weak defendant's motion to dismiss is.

**C.**   **<u>Wiswell's Emotional Distress Claim Is Properly Alleged</u>**

Morgan contends that it is proper for a District of Columbia employer to accomplish its human resources objectives (whatever they may be) by intentionally and ruthlessly exploiting the intimate personal and private vulnerabilities of a working mother, through, *inter alia,* intentionally threatening her ability to care for her children and family, liberal use of obscenity, as well as targeted attacks on Counterclaimant's and other employees' sexual preference, age, race, and national origin. Wiswell's Am. Countercl. ¶¶ 138-40. Morgan would have the Court hold that it is mere triviality attendant to the employer-employee relationship to target Counterclaimant with

8

a web of intimidation, abuse and degrading conduct (Wiswell's Am. Countercl. ¶¶ 136-41) as a tactic to force Counterclaimant to submit to Morgan's unbridled discretion (at the expense of her family) and resign just so Morgan could save a few bucks on their bottom line. This also included referring to the targeted employees in derogatory manner, including attacks on their sexual preference, age, race, and national origin. Id. ¶¶ 138-40. Indeed, Mr. Morgan and Ms. Wingate employed a pattern of relentlessly diminishing, humiliating and picking on employees they wished to be rid of -- including the Counterclaimant – solely in order to avoid paying unemployment compensation. Id. ¶ 141.

Morgan asserts that dismissal under Rule 12(b)(6) is appropriate on Count II for intentional or reckless infliction of emotional distress because Morgan alleges that "[t]he alleged conduct does not go 'beyond all possible bounds of decency.'" Mem. at 12. Of course, the corollary that logically flows from Morgan's argument requires one to conclude that District of Columbia community standards actually condone an employer purporting to discipline an employee by inducing weeping and vomiting (Wiswell's Am. Countercl. ¶ 144) as a precursor to further abusive berating of and screaming at such an employee (id. ¶ 145).

Morgan's arguments are singularly unpersuasive and should be rejected by this Court. As is more specifically set forth below, where, as here, an employer knows that an employee is susceptible to particular emotional distress, and sadistically exploits that knowledge in order to inflict such distress (and indirectly accomplish purported business ends that are at best highly questionable and immoral), the Court should conclude that an average member of this community could find that Morgan's conduct was extreme and outrageous–particularly at this preliminary procedural juncture, before witnesses have been sworn and cross-examined.

9

1.       **Overview of Applicable Law.**

The tort of intentional infliction of emotional distress ("Intentional Infliction") consists of three elements: "(1) 'extreme and outrageous conduct' on the part of the [counterclaim] defendant which (2) intentionally or recklessly (3) causes the [counterclaim] plaintiff 'severe emotional distress.'" American Continental Insurance Co. v. Manoochehr, 666 A.2d 1193, 1199 (D.C. 1995). "Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the [counterclaim] plaintiff." Carey v. Piphus, 435 U.S. 247, 263-64 & n. 20 (1978).   "For a prima facie case to be made out, the tortfeasor's conduct must be 'wanton, outrageous in the extreme, or especially calculated to cause serious mental distress.'" Rogers v. L'enfant Plaza Hotel, 526 F. Supp. 523, 530 (D.D.C. 1981) (citation omitted).

2.       **Wiswell Has Alleged Outrageous Conduct.**

Contrary to District of Columbia caselaw, Morgan wholly ignores the factors that guide the analysis required before they can categorically remove their conduct from the realm of outrageousness.   This omission is glaring.   In the District of Columbia, evidence of the actual "applicable  community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place" is essential to any conclusion that there is **no** possibility that Morgan's conduct was legally outrageous.   Duncan v. Children's National Medical Center, 702 A.2d 207, 211 (D.C. 1997).[2] See also Stanford v. Potomac Electric Power Company, ___ F.Supp.2d ___, 2005 WL 2401804 (DDC Sept. 30, 2005), citing

_____

[2]Unlike the situation in _Duncan_, where the D.C. Court of Appeals affirmed the dismissal of a pregnant employee's emotional distress claim arising out of her exposure to radiation, Morgan does not dispute that the damages suffered by Ms. Wiswell were not the result of any "intentional" conduct on the part of Morgan. Instead, Morgan contends that it is his prerogative as employer to treat women this way.

Duncan, 702 A.2d at 211 ( "[i]n determining whether the conduct in question is extreme and outrageous as a matter of law, this [C]ourt [is instructed to] consider[ ] applicable community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place.").

Morgan fails to provide even a scintilla of analysis or argument consistent with the required factors identified by Duncan. Consequently, Morgan's conclusory assertions that its conduct was some measure short of outrageousness must be disregarded and the motion denied as to this counterclaim. Moreover, any attempts to sandbag Counterclaimant with the analysis Morgan elected to withhold from its motion and memorandum in support thereof should be stricken and/or disregarded.

### 3. Morgan's Alleged Conduct Is, As a Matter of Law, Sufficiently Outrageous to Survive Rule 12(b)(6)'s Liberal Pleading Standards.

Morgan's self-serving spin on what in their memorandum purport to be the relevant allegations of Counterclaimant are not entitled to credit or deference. Because Morgan chose to file a Rule 12(b)(6) motion, the court must treat Counterclaimant's factual allegations as true and draw all reasonable inferences therefrom in Counterclaimant's favor. See Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003). Thus, Counterclaimant has clearly pled (for purposes of federal notice pleading), that Morgan *knew* (or assumed because of sexist bigotry) that Counterclaimant was susceptible to the specific emotional distress Morgan sought to inflict, and Morgan exploited and abused her vulnerability. Moreover, Morgan did so in order to accomplish ends that are contrary to public policy (interference with family leave and denial of unemployment benefits). The Court cannot then fairly conclude that where, as here, a Defendant knows that a Wiswell is susceptible to emotional distress, that an average member of this community would not consider the

11

Morgan's conduct extreme and outrageous under all of the circumstances of the case.

Conduct similar – if not identical to that of Morgan here – has repeatedly been held to be sufficiently outrageous to survive summary dismissal.  For example, in <u>Davis v. Russel,</u> 452 S.E.2d 194 (Ga. App. 1994), an employer's systematic and purposefully abusive questioning of an employee as a precursor to employee termination were held to be so extreme and outrageous as to authorize a finding of intentional infliction of emotional distress. <u>Id.</u> at 203.  Much like the circumstances present in this case, in <u>Davis,</u> there was evidence of an orchestrated practice whereby the employer would separately and unexpectedly pull the plaintiff employees aside for intimidating, abusive and well-planned disciplinary meetings. <u>Id</u>.

Morgan would have this Court believe that their conduct in connection with this counterclaim is at worst nothing more than bad manners or question over management style. Morgan seems to contend that intimidation, abuse and degrading conduct of an employer to an employee is somehow proper and beyond justice.  While *laissez-faire* economic values that cast the employment relationship as  an arm's-length adult relationship may provide the public policy rationale for viewing intentional infliction of emotional distress claims in the employment context with greater scrutiny, there is no policy or principle of law that supports the *de facto* privilege Morgan applies to itself.   Particularly where, as here, the employee is subjected to severe mental and emotional distress, not as an incidental effect of an unpleasant managerial practice, but intentionally as a cold-blooded **tactic** to achieve a desired result.

This is not a case where Morgan insisted "on his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." RESTATEMENT (SECOND) TORTS § 46, comment g.  Morgan had no right to target Counterclaimant with a web of

intimidation, abuse and degrading conduct (Wiswell's Am. Countercl. ¶¶ 136-41) in the hope that

such drastic action might force Ms. Wiswell to resign under circumstances where Morgan could save

a few bucks on unemployment compensation and otherwise fatten their bottom line by cutting

benefits.[3]

Here, there is a clear inference that Morgan engaged in a deliberate tactical scheme to

frighten and coerce Counterclaimant – a material aspect of the instant case that distinguishes the

cases cited by Morgan. The emotional distress is not a side effect – it was and is Morgan's human

resources management tool.  As noted by the Oregon Supreme Court, "an additional element appears

when an employee is subjected to severe mental and emotional distress, not as an incidental effect

of an unpleasant confrontation, but intentionally as a cold-blooded tactic of interrogation upon

scanty evidence." Hall v. The May Department Stores Co., 637 P.2d 126, 141-42 (Or. 1981).

Morgan contends that Ms. Wiswell alleges nothing more than a run of the mill employee-employer

conflict regarding a "mere change in business policy" (Mem. at 14); however, the totality of

allegations at issue support the inference that Morgan's actions constituted a deliberate and

systematic tactic to take advantage of the inherent dependency of the employer-employee

relationship by threatening and browbeating Wiswell in order to force her to confer some benefit

upon the employer.  Indeed, it is precisely the foregoing inference that takes Morgan's conduct

outside the sphere of reasonable business judgment into the realm where a reasonable person could

---

[3]Morgan's gratuitous smearing of Ms. Wiswell (Mem. at 13), though intended to imply that Morgans believe she deserved the abuse they dished out, arguably operates to create a fact dispute precluding dismissal at this stage.  As further noted by the Restatement, "there may perhaps be situations in which the actor is privileged to resort to extreme and outrageous words, or even acts, in self-defense against the other, or under circumstances of extreme provocation which minimize or remove the element of outrage." Id. As such, the parties must be afforded the opportunity to take discovery and allow a finder of fact to decide whether this is one of those situations.

very well conclude that Morgan acted in an extreme and outrageous manner.

Other cases in which the requisite outrageousness in the employment context has been held to exist have involved unconscionable conduct in connection with employee entitlements, such as the withholding of benefits due an employee. See e.g. Holmes v Oxford Chemicals, Inc., 510 F Supp 915 (MD Ala. 1981), affd, 672 F2d 854 (11th Cir. 1982) (employer's deliberate reduction of disability plan benefits to a permanently disabled employee held to constitute the tort of outrage, where before it reduced the employee's benefits the employer knew that he was distraught over his medical condition and permanent disability). See also Harrison v Loyal Protective Life Ins. Co. 379 Mass 212 (1979) (cause of action for intentional infliction of emotional distress was stated by complaint alleging that one of employer's officers was aware that plaintiff's decedent had terminal cancer and was therefore unable to continue working for employer, but such officer nevertheless threatened plaintiff's decedent that if he filed for physical disability benefits he would not be allowed to return to work should he regain his health); Smith v Montgomery Ward & Co., 567 F Supp 1331 (D. Colo. 1983) (cause of action for intentional infliction of emotional distress was stated by complaint alleging that Defendants wrongfully discharged plaintiff from employment; caused plaintiff's job performance rating to be lowered, thereby disqualifying him from certain benefits; withheld information regarding plaintiff's benefits; and failed to make timely payments to plaintiff under retirement plan; court held that while conduct alleged barely rose to level of outrageous conduct, issue was for jury).

## D.    Wiswell Has Stated A Claim Under the Equal Pay Act

This Court should also deny Morgan's challenge to Wiswell's Equal Pay Act claim. "The Equal Pay Act was enacted to remedy the 'serious and endemic problem' of sex-based wage

discrimination." Goodrich v. IBEW, 815 F.2d 1519, 1523 (D.C. Cir. 1987). In order to state a

prima facie case, a plaintiff must establish "wage disparity and job equality." Id. at 1523. "Equal

work under the Act does not mean that the jobs being compared must be 'identical,' but they must

be more than merely comparable. . . . The prevailing standard is one of 'substantial equality'" Id.

at 1524 (citation omitted). Once a prima facie case has been established, an employer may raise a

number of affirmative defenses. Id. at 1523.

        In its Motion, Morgan argues that the Equal Pay Act claim should be dismissed because

Wiswell has not alleged the claim with sufficient specificity. Mem. at 17 (complaining that Wiswell

"does not allege a single fact that she performed work that was substantially similar in skill, effort,

responsibility, and working conditions to her male counterparts"). However, this Court should reject

the argument because it assumes that there is some sort of heightened pleading standard when

alleging an Equal Pay Act claim. This is not the case. Robinson v. Davis Memorial Goodwill

Indus., 790 F. Supp. 333, 333  ("Plaintiff is not held to a "heightened pleading" standard in cases

brought under the Equal Pay Act") (D.D.C. 1992).  In fact, Morgan fails to cite a single case

supporting this proposition.[4]

        Although some jurisdictions have in the past applied strict pleading standards to Equal Pay

Act cases, these cases are inconsistent with Supreme Court precedent. For example, in Downes v.

JP Morgan Chase & Co., 2004 WL 1277991 (S.D.N.Y. 2004), the J.P. Morgan moved to dismiss

_____

        [4]Morgan only cited one case which was resolved on the pleadings.  In Stevens v. District of
Columbia, this Court's analysis was limited to a single sentence: "As plaintiff does not allege
that he was paid less than a female who performed 'equal work,' plaintiff fails to state a claim under the
Act." 1994 WL 377271 *2 (D.D.C. 1994).  In other words, the Court did not dismiss the count for
lack of sufficient specificity but because it was devoid of absolutely any allegations on a core
element of an Equal Pay Act claim. Obviously, that rationale is inapplicable here where Wiswell has
alleged that she was paid less than males.  Wiswell's Am. Countercl. ___122, 149.

15

the "skeletal" Equal Pay Act claim because it did not identify sufficient facts.  When rejecting the

claim, the Court relied upon "the liberal notice-pleading standards of Rule 8, and . . . the Supreme

Court's recent admonition to heed this standard in employment discrimination cases."  Id. at 7.  It

further explained:

> The Complaint gives J.P. Morgan adequate notice of the essence of
> Downes's claim: that similarly-situated male employees received
> higher wages than she did.  J.P. Morgan presumably knows in what
> capacity Downes worked for it, and it can ascertain the substance of
> her claim by comparing her skills, responsibilities, and wages to
> those of similarly-situated male workers.

Id.

Applying these principles here, it is clear that Wiswell has sufficiently put Morgan on notice

of the claim.  She has identified what position she held, and even the pay disparity.  Am. Countercl.

¶¶119, 122.  Morgan obviously has sufficient facts to delve deeper into the problem.  Just as

Wiswell's pleading specificity was sufficient for J.P. Morgan in Downes, it is sufficient for William

A. Morgan, Inc. in this case.

Neither should this Court dismiss Wiswell's claim for failing to allege sufficient facts to

avoid Morgan's potential affirmative defenses.  It is black letter law that a plaintiff has no duty to

"plead around" Morgan's affirmative defenses in the Complaint.  United States Gypsum Co. v.

Indiana Gas Co., 350 F.3d 623, 626 (7th Cir. 2003).  Yet, Morgan argues for just that in his Motion

to Dismiss.  Specifically, he claims that Wiswell should have alleged that Morgan's discrimination

was caused by "an absence of merit, seniority, tenure or other obvious nondiscriminatory factors."

Mem. at 18.  Since those factors relate to potential affirmative defense, which Morgan might, but

has not, raised, Goodrich v. IBEW, 712 F.2d 1488, 1491 (D.C. Cir. 1983), Wiswell had no duty to

anticipate them in her Complaint.

E.    **Wiswell Has Stated a Claim Under the Fair Labor Standards Act**.

Neither should this Court grant Morgan's motion to dismiss the Fair Labor Standards Act ("FSLA") claim.  Under the FSLA, an employer is obligated to pay overtime wages to an employee who works more than 40 hours per week.   29 U.S.C. § 207(a)(1).[5]  However, an employer has an affirmative defense to a claim brought under this section when an employee is deemed be an exempt professional.  <u>Dole v. Walker & Armstrong</u>, 763 F. Supp. 1052 (D. Ariz. 1990) ("The employer bears the burden of proving that its employees are exempt under the act").  In order to prove this defense, the employer must show that the employee

(1) was compensated on a salary basis; (2) had as his primary duty the performance of work requiring knowledge of an advanced type in the field of science of learning acquired by prolonged course of specialized intellectual instruction and study; and (3) had responsibilities that include work requiring the consistent exercise of discretion and judgment in its performance.

<u>Galasso v. Eisman, Zucker, Kelein & Ruttenberg</u>, 310 F. Supp.2d 569, 575 (S.D.N.Y. 2004).

Here, Morgan moves to dismiss the Complaint by arguing that Wiswell was an exempt employee.  Mem. at 19-21.  However, since it is generally inappropriate to grant a motion to dismiss pursuant to 12(b)(6) which relies upon an affirmative defense, Morgan's argument is premature.  <u>United States Gypsum Co.</u>, 350 F.3d at 626.  Not surprisingly, Morgan fails to cite a single case in which a Court ruled on an exemption in the context of a 12(b)(6) motion.  Indeed, well established case law holds that an employer's assertion that an employee is exempt from overtime requirements

---

[5] In addition to authorizing the Secretary of Labor to pursue employer violations, the FLSA creates a private cause of action for aggrieved employees.  It provides that the employer shall be liable to the "employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be."  29 U.S.C. § 216(b).  It also requires the employer to pay reasonable attorney's fees and the costs of the action where the court awards any judgment to the employee.  *Id.*

is an affirmative defense to a suit under the FLSA.  <u>Danesh v. Rite Aid Corporation</u>, 39 F. Supp.2d 7, 10 (D.D.C. 1999) (The defendant asserted the defense of professional exemption in response to plaintiff's motion for summary judgment on overtime claims.)  As such, the employer, Morgan has the burden of proving the exemption.  *Id.* (citing <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 196-97, 94 S. Ct. 2223 (1974).  "Moreover, exemptions from the Act [FLSA] are narrowly construed against the employer 'in order to further Congress's goal of affording broad federal government protection.'" <u>Danesh</u>, 39 F. Supp.2d 7, 10 (quoting <u>D'Camera v. of Columbia</u>, 693 F. Supp. 1208, 1210 (D.D.C. 1988)); <u>McCloskey & Co. v. Dickinson</u>, 56 A.2d 442 (D.C. App. 1947) (stating, where employer claimed plaintiff was exempt administrative employee, the FLSA and its regulations must be liberally construed and claims of exemption must be strictly construed).

Furthermore, the very regulation cited by Morgan amplifies this conclusion that Morgan's motion is premature.  Specifically, it provides that Certified Public Accountants are "generally" exempt. 29 C.F.R. § 541.301(c).  However, the use of he word "generally" makes it clear that there may be exceptions to this rule, making it a question of fact in each case whether a CPA is actually exempt.  Thus, Morgan cannot raise its affirmative defense by pre-answer motion under Fed Rule Civ. P. 12(b) when – as here –  the facts giving rise to the defense are not clear from the face of the complaint.  <u>See Smith-Haynie v. District of Columbia</u>, 332 U.S. App. D.C. 182, 155 F.3d 575 (D.C. Cir. 1998).  In <u>Smith-Haynie</u>, a case of first impression on this issue, the D.C. Circuit Court of Appeals held that an affirmative defense may be raised by pre-answer motion under Rule 12(b) if the facts giving rise to it are clear from the face of the complaint.  The facts of <u>Smith-Haynie</u> were perfectly suited for this holding.  The plaintiff pled that she received her right-to-sue letter from the EEOC 92 days before she filed suit, thereby revealing from the face of her complaint that she failed

18

to meet the 90 day statute of limitations. Since Wiswell did not plead the responsibilities of her job with particularity, this Court cannot rule on the pleadings that Wiswell is exempt "as a matter of law".

Morgan's argument is also defective because it has failed to set forth any analysis relating to the first element of its affirmative defense, i.e. that Wiswell was compensated on a salary basis, and has thereby waived it. Since this is a necessary element to an exemption defense, Morgan's failure to establish that Wiswell was paid on a salary basis as a matter of law is fatal to he motion. Even if the argument had not been waived, Morgan never could have proven from the pleadings that Wiswell was paid on a salary basis. In order to be paid on a salary basis, an employee must regularly receive each "pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in he quality or quantity of work performed." 29 C.F.R. § 541.118. Since Wiswell never alleged that she was paid a predetermined amount each week, it is unclear from the pleadings whether her pay is within the definition of salary contained in the regulations.[6] Accordingly, it would be inappropriate to dismiss this claim.[7]

Moreover, the complex regulatory factors that guide the analysis required to determine exempt administrative employee status further demonstrates why this Court cannot possibly rule on

---

[6] In fact, Wiswell's pay was subject to reductions due to variations in quantity or quality of work. Accordingly, if the Court determines that her FLSA claim is defective in any way, she should be granted leave to amend the defect.

[7] Wiswell is not required to anticipate and attempt to defuse Morgan's potential affirmative defenses. Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980); United States Gypsum Company v. Indiana Gas Co., Inc., 350 F.3d 623 (7th Cir. 2003) (holding that on a Fed. R. Civ. P. 12(b)(6) motion, statute of limitations and issue preclusion were affirmative defenses that plaintiff was not required to overcome as it was possible to imagine proof of the critical facts consistent with the allegations in the complaint).

Morgan's defense at this time.  The definition of exempt administrative employee involves a two-pronged analysis: (1) the employee must be paid on a "salary basis;" and (2) the employee must satisfy a duties test.  29 C.F.R. § 541.600 et seq.; 29 C.F.R. § 541.200 et seq.  See Danesh v. Rite Aid Corporation, 39 F. Supp.2d 7 (D.D.C. 1999); Kinney v. District of Columbia, 301 U.S. App. D.C. 279, 994 F.2d 6 (D.C. Cir 1993); D'Camera v. District of Columbia, 693 F. Supp. 1208 (D.D.C. 1988); Harrison v. Washington Hospital Center, 1979 U.S. Dist. LEXIS 10063, 86 Lab. Cas. (CCH) 33,825 (D.D.C. 1979).  If the employer cannot show the employees were paid on a salary basis, as that term is defined by the Department of Labor's ("DOL") implementing regulations, then an analysis of the duties test is unnecessary.  Bongat v. Nursing Care Center, Inc., 341 F. Supp.2d 181, 186 (E.D.N.Y. 2004).

Determining whether an employee is exempt is intensely fact-bound and case specific, Roberts v. Nat'l Autotech, Inc., 192 F. Supp.2d 672 (N.D. Texas 2002), an observation that is readily apparent from the myriad factual patterns reported in the case law.  The revised regulations in 29 C.F.R. Part 541–Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Computer and Outside Sales Employees spanned fifteen pages of the Federal Register when they were published last year which, amazingly enough, was a streamlining of the twenty-seven pages they supplanted.  The regulations contain detailed guidelines as well as examples of circumstances where the various tests are met or not met.  One such guideline provides that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources," describing the work of a bookkeeper to a tee.  In fact, under the old regulations, bookkeepers were specifically excluded from the administrative exemption.  Former 29 C.F.R. § 541.205©)(1) ("It is

20

clear that bookkeepers . . . hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management policies or general business operations.") <u>See</u> <u>Gagnon v. Resource Technology, Inc.</u>, 2001 U.S. App. LEXIS 18290 at 8 (10th Cir. 2001).  While this Court has frequently granted plaintiffs' summary judgment motions in overtime pay cases, even at this later stage of litigation, factual intricacies have prevented courts from making dispositive rulings on summary judgment.

Morgan will not be able to prove that Wiswell was paid on a salary basis[8] or that she satisfied the duties test of an administrative employee.[9]  When the time is appropriate, Wiswell will readily

---

[8]        In relevant part, the salary basis test provides:

**§ 541.602 Salary basis.**

(a) *General rule.*  An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. . . .

29 C.F.R. § 541.602 (a).

[9]The general rule defining administrative employees states:

**§ 541.200 General rule for administrative employees.**

(a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

(b) The term "salary basis" is defined at § 541.602; "fee basis" is defined at § 541.605; "board, lodging or other facilities" is defined at § 541.606; and "primary

respond to Morgan's defenses with relevant facts and legal analysis.  Simply put, that time is not now.  A ruling on Morgan's affirmative defense to Wiswell's FLSA and District of Columbia Wage and Hour claims in the context of a motion to dismiss would be premature and erroneous.

**F.**    **Wiswell Has Stated a Claim Under the District of Columbia Wage and Hour Law.**

For the same reasons set forth in Section E, supra, which are incorporated by reference, the Court should deny Morgan's motion to dismiss Wiswell's claim under D.C. Code Ann. §§ 32-1308 and 32-1012.

## CONCLUSION

For the reasons set forth above, the motion to dismiss filed by plaintiff and counterclaim defendant William A. Morgan, Jr., P.C. should be denied..

---

duty" is defined at § 541.700.

29 C.F.R. § 541.200.

## <u>REQUEST FOR HEARING</u>

Susan Wiswell requests a hearing on Morgan's Motion to Dismiss.


Respectfully submitted,

/s/ Victor E. Cretella, III
Roger C.  Simmons (D.C. Bar No. 12195)
Victor E. Cretella, III, (D.C. Bar No.  MD 13459)
Gordon & Simmons, LLC
603-B West Patrick Street
Frederick, Maryland   21701
Phone: (301) 662-9122

Counsel for Defendant & Counter Plaintiff
Susan Wiswell

Date: October 10, 2005

23

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on October 10, 2005, the requirement of a certificate of service was satisfied by the automatic notice of filing sent by the CM/ECF software to the opposing counsel of record identified below.


Manesh K. Rath
George Brent Mickum, IV
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001

John F. Hornick, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Janice Rockwell, Esq.
121-A North Court Street
Frederick, MD 21701-5415


/s/ Victor E. Cretella, III
Victor E. Cretella, III