**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

WILLIAM A. MORGAN, JR., P.C.    )
                                       )
          Plaintiff,            )
                                       )
          v.                     )     Case No.: 05-cv-1561
                                       )
SUSAN WISWELL,  et al.,        )
                                       )
          Defendants.        )
_____)

**COUNTERCLAIM PLAINTIFF MURPHY'S OPPOSITION TO COUNTERCLAIM
DEFENDANT MORGAN'S MOTION TO DISMISS COUNTERCLAIM**

       Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant/Counterclaim Plaintiff Angela Murphy ("Murphy" or "Counterclaim Plaintiff") opposes the motion to dismiss filed by Plaintiff/ Counterclaim Defendant William A. Morgan, Jr., P.C. ("Morgan" or "Counterclaim Defendant"). For the reasons more fully explained below, Morgan's motion should be denied.

**FACTS ALLEGED**

       Angela Murphy was an employee at the accounting firm of William A. Morgan, Jr., P.C. from September, 1998 to June, 2005.  She began as a receptionist, was promoted to office manager and in June of 2002, was promoted to the position of bookkeeper.  Defendent Angela Murphy's Answer and Counterclaim ("Murphy Countercl.") ¶¶ 119-120.  Ms. Murphy was a conscientious and dedicated employee.  She felt lucky to be working at the Morgan firm, as Morgan's principals told her she should, because she had no accounting degree.  Murphy Countercl. ¶ 131.  Morgan's principals also told her that she was overpaid in light of her skills and qualifications.  *Id.* Consequently, Ms. Murphy feared losing her job as she believed she would have great difficulty

finding a comparable position. Murphy Countercl. *Id.*

While Ms. Murphy valued her job, Morgan knew that Ms. Murphy very much valued her family and personal relationships. Murphy Countercl. ¶¶ 135, 157. They knew that flexible work hours so that she could minimize the horrendous commute from Frederick to D.C. each day were extremely important to Ms. Murphy. Murphy Countercl. ¶ 157. With the exception of her first year of employment as a receptionist, Ms. Murphy's work hours were set at 8:30 a.m. to 4:30 p.m. or most recently, 8:00 a.m. to 4:00 p.m. Every year during her employment review, Mr. Morgan asked Ms. Murphy how her commute was and whether she needed to change her hours to better accommodate it. In the fall of 2004, Ms. Murphy advised that her commute was getting worse, and Morgan approved a change in her hours to 8:00 a.m. to 4:00 p.m. Murphy Countercl. ¶ 121. Morgan also knew that Murphy more than capably accomplished her work within these hours. Murphy Countercl. ¶ 157.

Employee turnover at Morgan was extremely high, and a noticeable pattern of Morgan ostracizing employees and generally treating them in an inhumane manner preceded employee departures. Murphy Counterclaim ¶¶ 123-29. Suddenly, Ms. Murphy found herself on the receiving end of such treatment. Morgan altered Ms. Murphy's work schedule, not to achieve legitimate business purposes, but to exploit her in a way that it knew would cause her severe emotional distress.

With the knowledge that Ms. Murphy had previously suffered from depression and that she cried easily, in Morgan's words, Morgan maliciously made false statements about Murphy, including those that harmed her professional reputation, as just one of many additional outrageous acts intended to humiliate Murphy. Murphy Countercl. ¶¶ 130, 133-39, 142-45. Morgan thus utilized deliberately inhumane treatment, including, without limitation, purporting to discipline Ms. Murphy

by inducing uncontrollable fits of crying, vomiting, diarrhea, nausea, loss of appetite and depression. Murphy Countercl. ¶ 136.  This was but a precursor to events leading to Murphy's realization that Morgan's conduct. if not designed to force her resignation, used her in its scheme to force her coworkers' resignations.  Murphy Countercl. ¶ 138.  Finally, Murphy's employment ended, but not without Morgan further subjecting her to abusive berating and screaming, followed by *persona non grata* treatment.  Murphy Countercl. ¶¶ 142-45.

The terror, abuse and resulting damage inflicted by Morgan upon Ms. Murphy – including emotional distress – was no mere side effect of cold but normal business practices – it was and is Morgan's deliberate management tool.  Morgan identified Ms. Murphy's deeply personal concerns, values and fears and then systematically and sadistically exploited that knowledge in order to indirectly accomplish improper business ends that are at best highly questionable and immoral.

## LEGAL ARGUMENT

## I.    Legal Standard for Reviewing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the counterclaim need only set forth a short and plain statement of the claim, giving the counterclaim defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In resolving a Rule 12(b)(6) motion, the court must treat the counterclaim's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the counterclaim plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003).

It is not necessary for the counterclaim plaintiff to plead all elements of her *prima facie* case

in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted). Thus, dismissal for failure to state a claim is unavailable unless the counterclaim defendant can show beyond doubt that the counterclaim plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004).

II.    **Murphy Has Properly Alleged Causes of Action Recognized by this Court**

   A.    **Murphy's Defamation Claim Is Properly Pled and Should Not Be Dismissed**

   In its motion to dismiss, Morgan argues that Murphy failed to allege sufficient facts to support the first two elements of a defamation claim. Specifically, Morgan argues that Murphy failed to allege (1) that Morgan made a false and defamatory statement concerning Murphy; or (2) that Morgan published the statement without privilege to a third party.[1] *Crowley v. North Am. Telecommunications Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997). Morgan's arguments are wrong.

   1.    **Morgan's Statement Is False and Defamatory**

   First, Morgan did not properly preserve its arguments. In order to be sufficient, the grounds for a motion must be stated with particularity. Fed. R. Civ. P. 7(b)(1). Here however, Morgan did not explain with any detail how the statements identified in the defamation count were free of any defamatory meaning as a matter of law. Instead it raised this argument in a purely conclusory fashion. Plaintiff William A. Morgan, Jr. P.C.'s Memorandum in Support of Motion to Dismiss

---

   [1] A total of four elements are required to state a defamation claim. The two elements which Morgan did not challenge are as follows: (1) that Morgan published the defamatory statement with fault; and (2) either that the defamatory statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *Crowley v. North Am. Telecommunications Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997).

4

Counterclaim of Defendant Angela Murphy ("Mem.") at 7 (suggesting that "Murphy has failed to allege that [Morgan] made a single false statement, <u>much less a defamatory statement</u>") (emphasis added). Accordingly, Morgan's argument that Murphy failed to identify any defamatory statements should be denied summarily.

Even had Morgan properly preserved the argument, this Court should nevertheless reject it. "A defamatory statement is one which tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Crowley v. North Am. Telecommunications Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997). When determining whether a statement is defamatory, this Court must examine it in context with the surrounding facts. *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 878 (D.C. 1998).

The D.C. Court of Appeals applied these principles in *Wallace* where the plaintiff alleged that she was defamed by her former employer. Specifically, her employer accused her of being "often out of the office during normal working hours." *Id.* at 878. Although the Court noted that the statement was not conclusively defamatory, it held that the statement "could reasonably be construed, in context, as a reflection on [the employee's] professional performance." *Id.*; *See also Crowley*, 691 A.2d at 1173 (statement made by employer that former employee left a bullet casing at the office could "reasonably be understood in a defamatory sense").

Likewise, the statement made by Mr. Morgan to his employees can reasonably be construed as defamatory. He told his employees: it had come to his attention that people were "not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m." Murphy's Countercl. ¶ 133. Accordingly, he created the same defamatory impression created by the employer in *Wallace*, *i.e.* that employees were often out of the office during normal business hours. Even if such a statement is not

conclusively defamatory, it certainly is capable of reflecting poorly on the employee's dependability and alienating the subject from employees who comply with the company's "policies."

Second, Murphy has properly alleged that the defamatory statement made by Morgan was false. Every year during her annual review, Mr. Morgan asked Murphy how her commute was and whether she needed to change her hours. Murphy Countercl. ¶ 121. "In the Fall of 2004, during her annual review with Mr. Morgan, Ms. Murphy expressed that her commute was getting worse and that she would like to change her hours to 8:00 a.m. to 4:00 p.m." Murphy Countercl. ¶ 121. "Mr. Morgan said that was fine." *Id.* Previously, Ms. Murphy's hours had been 8:30 a.m. to 4:30 p.m. Murphy Countercl. ¶¶ 119 and 120. Morgan's Vice President, Merritt Wingate, also acknowledged Murphy's office hours when she told Murphy that they would <u>return</u> Murphy's hours to 8:00 a.m. to 4:00 p.m. in a few weeks. Murphy Countercl. ¶ 138. Accordingly, when Mr. Morgan stated on May 9 to all of his employees that several employees were failing to adhere to the firm's 9:00 a.m. to 5:00 p.m. office hours, his statement was patently false because both he and his partner knew that office hours were not 9:00 a.m. to 5:00 p.m. for all employees, and in particular, they were not 9:00 a.m. to 5:00 p.m. for Murphy. Mr. Morgan knew full well that he was not "merely convey[ing] a company policy to his employees at [the May 9] meeting" as suggested in Morgan's motion to dismiss. Mem. at 8. Instead, he was falsely stating that the 9:00 a.m. to 5:00 p.m. hours were an existing, firm-wide policy and several employees were violating it.

## 2.    Morgan Is Not Protected By Privilege

Morgan's privilege defense is also deficient. Although an employer typically is protected by a conditional privilege when making statements about its employees, this privilege is lost if the statement is made with malice. *Wallace v. Skadden, Arps, Slate, Meagher and Flom*, 715 A.2d 873,

879 (D.C. 1998). "In the context of defamation, malice means basically that the publisher acted in bad faith." *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977). Bad faith in turn is described as "the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Id.* (noting that the "existence of malice is ordinarily a factual issue for the jury"). Malice can be inferred if the "publisher acts either with knowledge that the statements are false or with reckless disregard for their truth". *Id.* at 291 (citing *Airlie Foundation, Inc. v. Evening Star Newspaper Co.*, 337 F. Supp. 421 (D.D.C. 1972).

Here, Murphy has sufficiently alleged that Morgan published its defamatory statements with malice. Specifically, she has alleged that when Mr. Morgan accused her of violating firm policy, he knew this statement was false. Indeed, in her most recent annual review, he explicitly gave her approval to work the hours of 8:00 a.m. to 4:00 p.m. Accordingly, when he told his employees that she was violating firm policy, he knew or should have known that this statement was false. Murphy's Countercl. ¶¶ 119-121, 133, 138. Because Morgan knowingly made a false statement about Murphy, this Court clearly can infer malice. This conclusion is bolstered by the fact that Morgan's defamatory statement was just one of many outrageous acts intended to humiliate Murphy. Murphy Countercl. ¶¶ 130-31, 133-34, 148, 142-45.

Morgan shamelessly attempts to rewrite history when it characterizes its defamatory publication as "general statements of human resource policy." Mem. at 10. To the contrary, it was a negative, public job evaluation criticizing Murphy's work ethic. This type of conduct is clearly actionable in the District of Columbia. *Crowley*, 691 A.2d at 1173 n.2; *Wallace*, 715 A.2d at 878.

Moreover, Morgan's conduct was not protected simply because Mr. Morgan refrained from

identifying any violators of company "policy" by name at the meeting. "A public defamation can be aimed at a person even when his name is not mentioned." *Flamand v. American Int'l Group, Inc.*, 876 F. Supp. 356 (D. Puerto Rico 1994). This "of and concerning" requirement can be met if the subject "is pointed to by description or circumstances tending to identify her." *Weinstein v. Bullick*, 827 F. Supp. 1193 (E.D. Pa. 1993). In such a case, the plaintiff has to allege and prove, by way of colloquium that the defamatory charge refers to him." *Flamand*, 876 F. Supp. at 372.

Here, all eight or so employees at the May 9 meeting understood exactly who Mr. Morgan was referring to when he said particular employees were not working 9:00 a.m. to 5:00 p.m. because they knew Murphy did not work those hours. Murphy Countercl. ¶ 133. Accordingly, Mr. Morgan's statement is "of and concerning" Murphy because it pointed to her by circumstances perfectly understood by all the listeners. There was nothing discreet about Mr. Morgan's statement.

### 3.    Murphy Has Properly Alleged Publication to a Third Party

Without question, Murphy has properly alleged Morgan's publication of the defamatory statement to a third party. In D.C., "to render slander actionable it is necessary that the defaming words be communicated to some person other than the one defamed." *Tocker v. Great Atlantic & Pacific Tea Co.*, 190 A.2d 822, 824 (D.C. 1963). Not only did Mr. Morgan communicate his defaming words to some person, but he made his defamatory pronouncement to every one of Murphy's coworkers. Murphy's Countercl. ¶ 123.

Morgan attempts to avoid the obvious by citing to foreign precedent. Specifically, Morgan refers to an opinion rendered by the Court of Appeals of Tennessee for the proposition that "[w]hen employees communicate a statement among themselves within the scope of employment or relative to duties performed for the corporation, this communication is internal and thus not 'published' to

8

a 'third party.'"  Mem. at 9 (citing *Woods v. Helmi*, 758 S.W.2d 219, 224 (Tenn. App. 1988)).

Analogizing to this case, Morgan argues that Mr. Morgan's statements to his employees are insulated

from liability.

However, Morgan's argument must fail because the Tennessee precedent referenced in its

Motion has never been accepted in D.C.  Indeed, it is contrary to the law of this jurisdiction.  In

*Crowley*, the D. C. Court of Appeals held that it was improper to dismiss a defamatory statement

about a person which was published to the person's former co-workers.  691 A.2d at 1171, 1172-73.

Similarly, in *Wallace*, the D. C. Court of Appeals noted that partners in a single law firm were not

absolutely privileged to defame their employees even amongst themselves.  715 A.2d at 879 ("If we

were to accept defendants' legal theory, [t]he defendants would thus escape liability even if, *e.g.*,

they falsely and maliciously represented to interested third parties, or to each other, that the plaintiff

had embezzled client funds") (emphasis added).  *See also Atkins v. Industrial Tele. Ass'n*, 660 A.2d

885 (D.C. 1995) (applying Virginia law for the proposition that employer's statements to employees

are not absolutely privileged).  Accordingly, D.C. law clearly allows former employees like Murphy

to sue their former employer for defamatory statements published to former coworkers.

Morgan also cannot obtain a dismissal by relying upon the "intercorporate immunity"

doctrine, also known as the *Copperweld* doctrine.  Mem. at 9.  "Under that doctrine, an entity, its

officers and agents are presumed to act as a single enterprise and may not be found to have conspired

with one another."  Since Murphy has not alleged any conspiracy in this case, and could not purport

to do so when there is only one counterclaim defendant, the *Copperweld* doctrine is obviously

inapplicable to this case.  Morgan's inclusion of this argument exemplifies just how weak its motion

to dismiss is.

9

### B.    Murphy's Emotional Distress Claim Is Properly Alleged

Morgan contends that it is proper for a District of Columbia employer to accomplish its human resources objectives (whatever they may be) by intentionally and ruthlessly exploiting the intimate personal and private vulnerabilities of a hard-working employee and dedicated wife, daughter and friend, through, *inter alia,* intentionally threatening her personal relationships, making liberal and regular use of obscenity, as well as attacking Murphy's and/or other employees' sexual preference, age, race, national origin, personal appearance, medical conditions and sensitivities. Murphy's Countercl. ¶¶ 124-27, 130-31. Morgan would have the Court hold that it is mere triviality attendant to the employer-employee relationship to target Murphy with a web of intimidation, abuse and degrading conduct (Murphy's Countercl. ¶¶ 124-138) as a <u>tactic</u> to force Murphy to submit to Morgan's unbridled will (at the expense of her family and personal well being) and either resign or become an involuntary accomplice in forcing her friends' resignations, all so Morgan could save a few dollars on its bottom line.[2] Morgan's strategy included referring to employees in a derogatory manner, as well as attacks on their sexual preference, age, race, and national origin. *Id.* ¶¶ 124-131. Indeed, Mr. Morgan and Ms. Wingate employed a pattern of relentlessly diminishing, humiliating and picking on employees they wished to be rid of - including Murphy – solely in order to avoid higher unemployment insurance costs. *Id.* ¶ 128.

Morgan asserts that dismissal under Rule 12(b)(6) is appropriate on Count II for intentional

---

[2]While seemingly incredulous that Morgan would go to such cruel and calculating extremes to avoid higher unemployment insurance premiums, if even half of the thirty or so employees that it turned over in the last six years had filed claims, Morgan's insurance premiums would be off the charts compared to a typical small office employer. Thus, destroying employees' psyches and making them want to leave was a profitable, albeit unscrupulous, strategy.

or reckless infliction of emotional distress because Morgan alleges that "[t]he alleged conduct does not go 'beyond all possible bounds of decency.'" Mem. at 12.  Of course, the corollary that logically flows from Morgan's argument requires one to conclude that the District of Columbia community standards actually condone an employer purporting to discipline an employee by inducing vomiting, diarrhea, constant nausea, loss of appetite, depression and uncontrollable fits of crying.  Murphy Countercl. ¶ 136.  This was but a precursor to the May 25, 2005 meeting with Ms. Wingate when Murphy realized that if Morgan's conduct was not designed to force her resignation, Morgan was using her in its scheme to force Liebold and Wiswell's resignations.[3]  Murphy Countercl. ¶ 138. Finally, Murphy's employment relationship ended with Morgan's abusive berating of and screaming at Murphy, followed by *persona non grata* treatment.  Murphy Countercl. ¶ 142-45.

Morgan's arguments are  singularly unpersuasive and should be rejected by this Court.   As is more specifically set forth below, where, as here, an employer knows that an employee is susceptible to particular emotional distress, and sadistically exploits that knowledge in order to inflict such distress (and indirectly accomplish purported business ends that are at best highly questionable and immoral), the Court should conclude that an average member of this community could find that Morgan's conduct was extreme and outrageous – particularly at this preliminary procedural juncture, before witnesses have been sworn and cross-examined.

### 1.    Overview of Applicable Law

The tort of intentional infliction of emotional distress ("Intentional Infliction") consists of three elements: "(1) 'extreme and outrageous conduct' on the part of the [counterclaim] defendant

---

[3]Indeed, Liebold had already resigned due to the change in hours, and Wiswell was extremely distressed by Morgan's actions.

which (2) intentionally or recklessly (3) causes the [counterclaim] plaintiff 'severe emotional distress.'" *American Continental Insurance Co. v. Manoochehr,* 666 A.2d 1193, 1199 (D.C. 1995). "Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the [counterclaim] plaintiff." *Carey v. Piphus,* 435 U.S. 247, 263-64 & n. 20 (1978). "For a *prima facie* case to be made out, the tortfeasor's conduct must be 'wanton, outrageous in the extreme, or especially calculated to cause serious mental distress.'" *Rogers v. L'enfant Plaza Hotel*, 526 F. Supp. 523, 530 (D.D.C. 1981) (citation omitted).

### 2.    Murphy Has Alleged Outrageous Conduct

Contrary to District of Columbia case law, Morgan wholly ignores the factors that guide the requisite analysis before it can categorically remove its conduct from the realm of outrageousness. This omission is glaring. In the District of Columbia, evidence of the actual "applicable community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place" is essential to any conclusion that there is **no** possibility that Morgan's conduct was legally outrageous. *Duncan v. Children's National Medical Center,* 702 A.2d 207, 211 (D.C. 1997).[4] *See also Stanford v. Potomac Electric Power Company*, ___ F. Supp. 2d ___, 2005 WL 2401804 (D.D.C. Sept. 30, 2005), citing *Duncan*, 702 A.2d at 211 ( "[i]n determining whether the conduct in question is extreme and outrageous as a matter of law, this [C]ourt [is instructed to] consider[ ] applicable community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct

---

[4]Unlike the situation in *Duncan*, where the D.C. Court of Appeals affirmed the dismissal of a pregnant employee's emotional distress claim arising out of her exposure to radiation, Morgan does not contend that the damages suffered by Ms. Murphy were not the result of any "intentional" conduct on the part of Morgan. Instead, Morgan contends that it is his prerogative as employer to treat women this way.

took place.").

Morgan fails to provide even a scintilla of analysis or argument consistent with the required factors identified by *Duncan*. Consequently, Morgan's conclusory assertions that its conduct was some measure short of outrageous must be disregarded and the motion denied as to this counterclaim. Moreover, any attempts to sandbag Murphy with the analysis Morgan elected to withhold from its motion and memorandum in support thereof should be stricken and/or disregarded.

### 3. Morgan's Alleged Conduct Is, As a Matter of Law, Sufficiently Outrageous to Survive Rule 12(b)(6)'s Liberal Pleading Standards

Morgan's self-serving spin on what in its memorandum purport to be Murphy's relevant allegations is not entitled to credit or deference. Because Morgan chose to file a Rule 12(b)(6) motion, the Court must treat Murphy's factual allegations as true and draw all reasonable inferences therefrom in Murphy's favor. *See Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003). Thus, Murphy has clearly pled (for purposes of federal notice pleading), that Morgan *knew* (or assumed because of sexist bigotry) that Murphy was susceptible to the specific emotional distress Morgan sought to inflict, and Morgan exploited and abused her vulnerability. Moreover, Morgan did so in order to accomplish ends that are contrary to public policy (interference with family leave, denial of unemployment benefits and intentional harm of another for personal gain). The Court cannot then fairly conclude that where, as here, an employer knows that an employee is susceptible to emotional distress, that an average member of this community would not consider the employer's conduct extreme and outrageous under all of the circumstances of the case.

Conduct similar – if not identical to that of Morgan here – has repeatedly been held to be sufficiently outrageous to survive summary dismissal. For example, in *Davis v. Russel*, 452 S.E.2d

194 (Ga. App. 1994), an employer's systematic and purposefully abusive questioning of an employee as a precursor to employee termination were held to be so extreme and outrageous as to authorize a finding of intentional infliction of emotional distress. *Id.* at 203. Much like the circumstances present in this case, in *Davis*, there was evidence of an orchestrated practice whereby the employer would separately and unexpectedly pull the plaintiff employees aside for intimidating, abusive and well-planned disciplinary meetings. *Id.*

Morgan would have this Court believe that its conduct in connection with this counterclaim is at worst nothing more than bad manners or a question of management style. Morgan seems to contend that intimidation, abuse and degrading conduct meted out by an employer to an employee is somehow proper and beyond justice. While *laissez-faire* economic values that cast the employment relationship as an arm's-length adult relationship may provide the public policy rationale for viewing intentional infliction of emotional distress claims in the employment context with greater scrutiny, there is no policy or principle of law that supports the *de facto* privilege Morgan applies to itself. This is particularly true where, as here, the employee is subjected to severe mental and emotional distress, not as an incidental effect of an unpleasant managerial practice, but as an intentional, cold-blooded tactic to achieve a desired result.

This is not a case where Morgan insisted "on his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." RESTATEMENT (SECOND) TORTS § 46, comment g. Morgan had no right to target Murphy with a web of intimidation, abuse and degrading conduct (Murphy's Countercl. ¶¶ 123-147) in the hope that such drastic action might force either her or her coworkers or all to resign under circumstances where Morgan could save money on unemployment insurance and otherwise fatten its bottom line by

avoiding unemployment compensation claims.[5]

Here, the facts reveal a clear inference that Morgan engaged in a deliberate tactical scheme to frighten and coerce Murphy – a material aspect of the instant case that distinguishes the cases cited by Morgan. The emotional distress is not a side effect – it was and is Morgan's human resources management tool. As noted by the Oregon Supreme Court, "an additional element appears when an employee is subjected to severe mental and emotional distress, not as an incidental effect of an unpleasant confrontation, but intentionally as a cold-blooded tactic of interrogation upon scanty evidence." *Hall v. The May Department Stores Co.*, 637 P.2d 126, 141-42 (Or. 1981). Morgan implies that Murphy alleges nothing more than a run of the mill employee-employer conflict regarding a "mere change in business policy" (Mem. at 14-15); however, the totality of allegations at issue support the inference that Morgan's actions constituted a deliberate and systematic tactic to take advantage of the inherent dependency of the employer-employee relationship by threatening and browbeating Murphy in order to force her to confer some benefit upon the employer. Indeed, it is precisely the foregoing inference that takes Morgan's conduct outside the sphere of reasonable business judgment into the realm where a reasonable person could very well conclude that Morgan acted in an extreme and outrageous manner.

Other employment related cases where the courts have held that the requisite outrageousness

---

[5]Morgan's gratuitous smearing of Murphy (Mem. at 13), though intended to imply that Morgan believes she deserved the abuse it dished out, arguably operates to create a fact dispute precluding dismissal at this stage. As further noted by the Restatement, "there may perhaps be situations in which the actor is privileged to resort to extreme and outrageous words, or even acts, in self-defense against the other, or under circumstances of extreme provocation which minimize or remove the element of outrage." *Id.* As such, the parties must be afforded the opportunity to take discovery and allow a finder of fact to decide whether this is one of those situations.

existed include those involving unconscionable conduct in connection with employee entitlements, such as the withholding of benefits due an employee. *Holmes v Oxford Chemicals, Inc.*, 510 F. Supp. 915 (M.D. Ala. 1981), *affd*, 672 F.2d 854 (11th Cir. 1982) (employer's deliberate reduction of disability plan benefits to a permanently disabled employee held to constitute the tort of outrage, where before it reduced the employee's benefits the employer knew the employee was distraught over his medical condition and permanent disability); *Harrison v Loyal Protective Life Ins. Co.*, 379 Mass. 212 (1979)  (cause of action for intentional infliction of emotional distress was stated by complaint alleging that one of employer's officers was aware that plaintiff's decedent had terminal cancer and was therefore unable to continue working for employer, but such officer nevertheless threatened plaintiff's decedent that if he filed for physical disability benefits he would not be allowed to return to work should he regain his health); *Smith v Montgomery Ward & Co.*, 567 F. Supp. 1331 (D. Colo. 1983) (cause of action for intentional infliction of emotional distress was stated by complaint alleging that defendants wrongfully discharged plaintiff from employment; caused plaintiff's job performance rating to be lowered, thereby disqualifying him from certain benefits; withheld information regarding plaintiff's benefits; and failed to make timely payments to plaintiff under retirement plan; court held that while conduct alleged barely rose to level of outrageous conduct, issue was for jury).

### C.    Murphy Has Properly Alleged a Claim Under the Fair Labor Standards Act

Murphy has alleged a claim against Morgan under the Fair Labor Standards Act ("FLSA") for pay due to her.  The FLSA provides that an employer may not require an employee to work more than forty hours in a seven day workweek unless the employee receives compensation for the excess hours at a rate not less than one and one-half times the employee's regular pay.  29 U.S.C. §

207(a)(1).  In addition to authorizing the Secretary of Labor to pursue employer violations, the FLSA creates a private cause of action for aggrieved employees.  It provides that the employer shall be liable to the "employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be."  29 U.S.C. § 216(b).  It also requires the employer to pay reasonable attorney's fees and the costs of the action where the court awards any judgment to the employee.  *Id.*

Murphy has alleged facts that clearly and sufficiently state a cause of action under the FLSA.  Murphy has alleged:  that Morgan was obligated to pay her at least time and one-half of her regular rate for all hours she worked over forty in any given work week, Murphy Countercl. ¶ 161; that despite the fact that Murphy often worked more than forty hours a week, Morgan did not pay her for the extra time at time and one-half, Murphy Countercl. ¶ 162; that she did not receive pay, including overtime pay, to which she was entitled, Murphy Countercl. ¶ 163; and that Murphy was not exempt from the payment of overtime wages, Murphy Countercl. ¶ 132.  Murphy also includes her written consent to be a plaintiff to this action as required by the FLSA.

Consistent with the standard for reviewing motions to dismiss, "[t]he explicit language of Fed. R. Civ. P. 8 (a)(2) provides that the Complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief . . .' " *Banks v. District of Columbia*, 377 F. Supp. 2d 85 (D.D.C. 2005) (quoting Fed. R. Civ. P. 8(a)(2)).  Murphy's allegations constitute a short and plain statement of the claim showing that she is entitled to relief.  With all inferences required to be drawn in Murphy's favor, it is indisputable that Murphy has alleged facts, which if proven, will entitle her to relief under the FLSA.

The only objection Morgan raises with respect to Murphy's claims under both the FLSA and

the District of Columbia's minimum wage and overtime law is an affirmative defense. Specifically, Morgan contends that Murphy is exempt from the overtime provisions of the FLSA because she qualifies as an exempt administrative employee. The FLSA contains more than two dozen exemptions from its overtime pay requirement, including the exemption cited by Morgan making the overtime provision inapplicable to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . . " 29 U.S.C. § 213(a)(1). The remaining exemptions are contained in § 213(a) and (b) and their multiple subparts.

Well established case law holds that an employer's assertion of exemption from overtime requirements is an affirmative defense to a suit under the FLSA. *Danesh v. Rite Aid Corporation*, 39 F. Supp. 2d 7, 10 (D.D.C. 1999) (holding employer's assertion that employee was an exempt professional was an affirmative defense to be proven by employer). As such, the employer, Morgan has the burden of proving the exemption. *Id. Accord Corning Glass Works v. Brennan*, 417 U.S. 188 (1974). "Moreover, exemptions from the Act [FLSA] are narrowly construed against the employer 'in order to further Congress's goal of affording broad federal government protection.'" *Danesh*, 39 F. Supp. 2d  7, 10 (quoting *D'Camera v. District of Columbia*, 693 F. Supp. 1208, 1210 (D.D.C. 1988)); *Accord McCloskey & Co. v. Dickinson*, 56 A.2d 442 (D.C. App. 1947) (stating, where employer claimed plaintiff was exempt administrative employee, the FLSA and its regulations must be liberally construed and claims of exemption must be strictly construed).

Morgan cannot raise its affirmative defense by pre-answer motion under Fed Rule Civ. P. 12(b) when the facts giving rise to the defense are not clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998). In *Smith-Haynie,* a case of first

18

impression on this issue, the D.C. Circuit Court of Appeals held that an affirmative defense may be raised by pre-answer motion under Rule 12(b) if the facts giving rise to it are clear from the face of the complaint.  The facts of *Smith-Haynie* were perfectly suited for this holding.  The plaintiff pled that she received her right-to-sue letter from the EEOC 92 days before she filed suit, thereby revealing from the face of her complaint that she failed to meet the 90 day statute of limitations.

The instant case is not one where Murphy has pled herself out of court by admitting the ingredients of a defense.  The facts pertinent to Morgan's exempt employee defense are as unclear as the facts in *Smith-Haynie* were clear.  Murphy did not, nor is she required to, plead the responsibilities of her job or Morgan's timekeeping and wage payment procedures with particularity. Because Murphy and Morgan have yet to develop and argue these facts, this Court cannot rule on the pleadings that Murphy is exempt "as a matter of law."

Moreover, Murphy is not required to anticipate and attempt to defuse Morgan's potential affirmative defenses.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *United States Gypsum Company v. Indiana Gas Co., Inc.,* 350 F.3d 623 (7th Cir. 2003) (holding that on a Fed. R. Civ. P. 12(b)(6) motion, statute of limitations and issue preclusion were affirmative defenses that plaintiff was not required to overcome as it was possible to imagine proof of the critical facts consistent with the allegations in the complaint).  In *Gomez v. Toledo,* the U.S. Supreme Court held that to state a claim for relief in a §1983 action, plaintiff need not allege defendant acted in bad faith in order to overcome defendant's qualified immunity defense.  Plaintiff stated a claim for relief by alleging that some person deprived him of a federal right while acting under color of state or territorial law. Qualified immunity, the Court explained, is a defense available to the defendant and as such, the burden of pleading it rests with the defendant.  "We see no basis for imposing on the plaintiff an

obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." *Gomez,* 446 U.S. at 640. Similarly, Murphy has no obligation to anticipate Morgan's exempt employee defense or plead any additional facts to allege her entitlement to overtime pay. Not surprisingly, Morgan fails to cite a single case in which the court rules on an exempt employee defense in the context of a 12(b)(b) motion.

Procedural posture of the case aside, a brief examination of the complex factors for determining exempt administrative employee status further reveals why this Court cannot possibly rule on Morgan's defense at this time. The definition of exempt administrative employee involves a two-pronged analysis: (1) the employee must be paid on a "salary basis;" and (2) the employee must satisfy a duties test. 29 C.F.R. § 541.600 *et seq.;* 29 C.F.R. § 541.200 *et seq. Accord Danesh v. Rite Aid Corporation*, 39 F. Supp. 2d 7 (D.D.C. 1999); *Kinney v. District of Columbia,* 994 F.2d 6 (D.C. Cir 1993); *D'Camera v. District of Columbia*, 693 F. Supp. 1208 (D.D.C. 1988); *Harrison v. Washington Hospital Center*, 1979 U.S. Dist. LEXIS 10063, 86 Lab. Cas. (CCH) 33,825 (D.D.C. 1979). If the employer cannot show that the employees were paid on a "salary basis," as that term is defined by the Department of Labor's ("DOL") implementing regulations, then an analysis of the duties test is unnecessary. *Bongat v. Nursing Care Center, Inc.,* 341 F. Supp. 2d 181, 186 (E.D.N.Y. 2004).

In relevant part, the salary basis test provides:

**§ 541.602 Salary basis.**

(a) *General rule.* An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, **which amount is not subject to reduction because of variations in the quality or quantity of the work performed.** Subject to the exceptions provided in paragraph (b) of this section, an

exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. . . .

29 C.F.R. § 541.602 (a) (emphasis added).

The general rule defining administrative employees states:

§ **541.200 General rule for administrative employees.**
(a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
(1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.
(b) The term "salary basis" is defined at § 541.602; "fee basis" is defined at § 541.605; "board, lodging or other facilities" is defined at § 541.606; and "primary duty" is defined at § 541.700.

29 C.F.R. § 541.200.

Determining whether an employee is exempt is intensely fact-bound and case specific, *Roberts v. Nat'l Autotech, Inc.,* 192 F. Supp. 2d 672 (N.D. Tex. 2002), an observation that is readily apparent from the myriad factual patterns reported in the case law.  The revised regulations in 29 C.F.R. Part 541–Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Computer and Outside Sales Employees spanned fifteen pages of the Federal Register when they were published last year which, amazingly enough, was a streamlining of the twenty-seven pages they supplanted.  The regulations contain detailed guidelines as well as examples of circumstances where the various tests are met or not met.  One such guideline provides that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources,"

21

describing the work of a bookkeeper to a tee. In fact, under the old regulations, bookkeepers were specifically excluded from the administrative exemption. 29 C.F.R. § 541.205(c)(1) (2003) ("[I]t is clear that bookkeepers . . . hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management policies or general business operations.") *E.g., Gagnon v. Resource Technology, Inc.,* 2001 U.S. App. LEXIS 18290 at 8 (10th Cir. 2001) (cited by Morgan in its Motion to Dismiss, p. 19).[6] While this Court has frequently granted plaintiffs' summary judgment motions in overtime pay cases, even at this later stage of litigation, factual intricacies have prevented courts from making dispositive rulings on summary judgment.

Morgan will not be able to prove that Murphy was paid on a salary basis or that she satisfied the duties test of an administrative employee. Indeed, Morgan proffers no analysis on salary basis, a crucial element of its defense. Its omission is due partly because it cannot prove from the pleadings that Murphy was paid on a salary basis and partly because Murphy's pay was subject to reductions due to variations in the quantity or quality of her work. When the time is appropriate, Murphy will readily respond to Morgan's defenses with relevant facts and legal analysis. Simply put, that time is not now. A ruling on Morgan's affirmative defense to Murphy's FLSA and District of Columbia minimum wage and overtime claims in the context of a motion to dismiss would be premature and erroneous.

--------------------------------------------------------------------------------

[6] Murphy submits that the omission of a specific exclusion of bookkeepers in the new regulations merely reflects the DOL's recognition that some bookkeepers may be pulling double duty. Especially in small companies, an employee may be a bookkeeper by title but in practice, that employee may run the business. Traditional bookkeeping duties would still fail to satisfy the parameters of an administrative employee.

**D.**    **Murphy Has Properly Alleged a Claim Under D.C. Code Ann. §32-1308 and §32-1012**

Morgan accurately states in its Motion to Dismiss that the District of Columbia's minimum wage and overtime provisions do not apply to an employee employed in a *bona fide* executive, administrative or professional capacity, or in the capacity of an outside salesman, as these terms are defined by the Secretary of Labor under the Fair Labor Standards Act.[7]  D. C. Code Ann. § 32-1004.

Murphy expressly incorporates the arguments set forth above as to Morgan's affirmative defenses under the FLSA.  Murphy has alleged facts that clearly and sufficiently state a cause of action under the District of Columbia's minimum wage and overtime law.  Murphy has alleged:  that Morgan was obligated to pay her at least time and one-half of her regular rate for all hours she worked over forty in a given work week, Murphy Countercl. ¶ 167; but despite the fact the Murphy often worked more than forty hours a week, Morgan did not pay her for the extra time at time and one-half, Murphy Countercl. ¶ 168; and that she did not receive pay, including overtime pay to which she was entitled, Murphy Countercl. ¶ 169; and that Murphy was not exempt from the payment of overtime wages; Murphy Countercl. ¶ 132.  Murphy also includes her written consent to be a Plaintiff to this action as required by the District of Columbia's minimum wage and overtime law.

Morgan cannot seek this Court's ruling on its affirmative defenses to Murphy's District of Columbia minimum wage and overtime claims for the same reasons that it cannot seek a ruling on its affirmative defenses to Murphy's FSLA claim.  As articulated in the FLSA discussion, a ruling

---

[7]Morgan actually states that the "District of Columbia Wage and Hour Law, D.C. Code Ann. § 32-1001 *et seq.* does not apply" to these exempt employees.  Mem. at 22.  This statement is too sweeping, however, as D.C. Code Ann. § 32-1004 says only "[t]he minimum wage and overtime provisions of § 32-1003 shall not apply with respect to" exempt executive, administrative or professional employees.

on Morgan's defense in the context of a Motion to Dismiss would be premature and erroneous. Murphy has properly stated her D. C. minimum wage, overtime and wage payment and collection claims under the Federal Rules of Civil Procedure.[8]

## III.    Conclusion

For the foregoing reasons, Counterclaim Plaintiff, Angela Murphy has properly stated claims upon which relief may be granted with respect to each of her claims alleged in the Counterclaim and therefore, respectfully requests that this Court deny Counterclaim Defendant, William A. Morgan, Jr., P.C.'s motion to dismiss Murphy's counterclaims.

## <u>REQUEST FOR HEARING</u>

Counterclaim Plaintiff Angela Murphy requests a hearing on Morgan's motion to dismiss

Respectfully Submitted


/s/ _____
Janice B. Rockwell, Esquire
U.S. District Court  for the District of Columbia
Bar No. MD04814
121-A North Court Street
Frederick, MD 21705
Phone: (301) 631-0900
Fax: (301) 631-0997

Attorney for Defendant/Counterclaim Plaintiff,
Angela Murphy

---

[8]Without specifically discussing D.C. Code Ann. § 32-1308 Morgan states in conclusory fashion that Murphy has no right to bring an action to recover wages under ¶ 32-1308 and § 32-1012.  Section 32-1308 is part of the District of Columbia's wage payment and collection law which, unlike the minimum wage and overtime law (§ 32-1012), does not contain nay exemptions for employees employed in a *bona fide* executive, administrative or professional capacity.

## CERTIFICATE OF SERVICE

I HEREBY certify that on October 11, 2005, the following persons were served by the CM/ECF software:   John F. Hornick, Esquire and Timothy A. Lemper, Esquire, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., 901 New York Avenue, N.W., Washington D.C. 20001-4413, attorneys for Plaintiff; Manesh K. Rath, Esquire, Keller and Heckman, LLP, 1001 G Street, N.W., Suite 500 West, Washington, D.C. 20001, attorney for Plaintiff; and Roger C. Simmons, Esquire and Victor E. Cretella, III, Esquire, 603B West Patrick Street, Frederick, MD 21705, attorneys for Defendant/Counterclaim Plaintiff, Susan Wiswell.


/s/_____

Janice B. Rockwell, Esquire

C:\Documents\word perfect\Server\WPDOCS\CLIENTS\MURPHY\DC District Court\Opposition to Motion to Dismiss - Angela Murphy 10-11-05.wpd