IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM A. MORGAN, JR., P.C., )<br>)<br>       Plaintiff, )<br>)<br>     v. )<br>)<br>SUSAN WISWELL, )<br>ANGELA MURPHY, )<br>JOHN DOE(S) 1-10, )<br>)<br>       Defendants. )<br>_____) | Case No.: 1:05cv-1561 |

**PLAINTIFF WILLIAM A. MORGAN, JR., P.C.'S
REPLY MEMORANDUM TO DEFENDANT WISWELL'S OPPOSITION TO
MOTION TO DISMISS**

Plaintiff, William A. Morgan, Jr., P.C. ("Morgan, PC"), by and through undersigned counsel, submits the following Reply Memorandum to Defendant Susan Wiswell's ("Counterclaimant Wiswell") Opposition to Plaintiff's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The assertions in Counterclaimant Wiswell's Opposition notwithstanding, the Amended Answer and Counterclaim fails to state a single cause of action that can withstand scrutiny and none of the facts alleged are sufficient to support any cause of action set forth in Counterclaimant Wiswell's Counterclaim.

**ARGUMENT**

Counterclaimant fails to allege facts sufficient to support any cause of action set forth in the Counterclaim. As such, all five counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

I.  **The Counts Contained in the Amended Answer and Counterclaim Should Be Dismissed.**

   A.  **Count I: Counterclaimant Wiswell relies on several cases that are inapposite, and misrepresents the defamation standard in the District of Columbia.**

Counterclaimant contends she was defamed by a single sentence uttered by a company President to his employees at a business meeting. This alleged defamatory statement by Morgan, PC was nothing more than a benign expression of business policy. Such statements fall squarely within an employer's privilege against defamation claims. All of the cases cited by Counterclaimant Wiswell are inapposite to this case because they involved (1) statements that did not serve a legitimate business purpose, and (2) statements that implied unethical or unlawful conduct. Accordingly, none is availing.

   1.  **The defamatory conduct in *Crowley* did not serve a legitimate business purpose.**

Counterclaimant incorrectly places great reliance on *Crowley v. North American Telecomm. Ass'n*, 691 A.2d 1169 (D.C. App. 1997). *Crowley* involved statements that (1) did not serve a legitimate business purpose; and (2) were made *after* the employee was terminated. *Id.* at 1171. In *Crowley*, the employee was terminated in September, 1994. *Id.* In March, 1995, the employer told other employees and former co-workers that an empty bullet casing had been found in the hallway which was probably left by plaintiff. *Id.* Because the statement about the bullet had no relation to any legitimate business purpose, it fell outside the scope of the qualified privilege that employers enjoy. The qualified privilege that applies to Morgan, PC in this case was not at issue in *Crowley*.[1]

---

[1] Morgan, PC also notes that Mr. Crowley was not employed at the time the comments about the bullet were made. Therefore, it is even less likely that the comments in *Crowley* served a legitimate employment purpose because Mr. Crowley was no longer employed by North American Telecommunications Association when the comments were made. Once the employment relationship ends, the legitimate employment interest becomes more tenuous.

Here, Morgan, PC had every right to convey corporate policy to *current* employees about current employees. When statements involve a human resources policy and are designed to inform current employees about that policy, such statements are not defamatory because they involve a legitimate employment interest.

### 2. The defamatory conduct in *Wallace* implied unethical or unlawful conduct.

Counterclaimant Wiswell also relies on *Wallace v. Skadden, Arps, Slate, Meagher, and Flom,* 715 A.2d 873, 877 (D.C. App. 1998), to support her position that comments made by Morgan, PC were defamatory and not protected by privilege. She also suggests that Morgan's reliance on this case in its Motion to Dismiss was misplaced. Counterclaimant is mistaken.

In the *Wallace* case, the alleged defamatory conduct included the deactivation of an employee's access key *after* she was fired from the firm – treatment allegedly reserved for individuals accused of crimes. *Id.* at 877. Also, the plaintiff in *Wallace* alleged that *after* her dismissal, Skadden Arps attorneys were directed to respond to any inquiries by potential employers as to the plaintiff's qualifications by providing only the dates of employment, which was allegedly a "well known code in the legal community for 'do not hire.'" *Id.* at 877.[2] Thus, the conduct in the *Skadden* case alleged that the employer had implied that the plaintiff had committed illegal or unethical conduct.

The alleged defamatory statement by Morgan, PC involved a general human resources statements applicable to all about the employer's office hours policy. In no way do those alleged statements imply that Counterclaimant had committed unlawful or unethical acts.

---

[2] Again, Morgan, PC notes that the alleged defamatory conduct occurred *after* the employment relationship ended, making it less likely that the conduct involving the references involved a legitimate employment purpose.

### 3. Morgan, PC's statements fall within a well-established immunity or privilege from defamation claims, and were not malicious.

In an unsuccessful attempt to argue that Morgan, PC is not protected by the well-established employer privilege from defamation claims, Counterclaimant relies on decisions that do not address the employer-employee relationship. It is critical for this Court to note that the statement that Counterclaimant Wiswell claims to be defamatory directly related to employment matters and took place while Counterclaimant Wiswell was employed by Morgan, PC. Taking all of the alleged statements as true, Counterclaimant has not alleged a single defamatory statement that took place outside of the employment setting. Counterclaimant attempts to argue that the employer privilege should not apply, yet only provides the Court with cases that involve malicious comments made *outside* of the employment relationship.

As noted above, the *Crowley* court did not address the qualified privilege because the statements made in the case did not serve a legitimate employment purpose. *Crowley*, 691 A.2d at 1173. Similarly, the *Wallace* court did not apply the qualified privilege because the conduct, in part, involved unethical, immoral or illegal conduct. *Wallace*, 715 A.2d at 877. Counterclaimant mistakenly relies on these cases to support her claim that Morgan, PC's statement was malicious, it was clearly a general statement of human resource policy. (Memorandum in Opposition at 6.)

### 4. Counterclaimant has not demonstrated that Morgan, PC's conduct was malicious.

Counterclaimant relies on *Altamont v. Chatelain, Samperton & Nolan* 374 A.2d 284, 290 (D.C. 1977) in an attempt to argue that Morgan, PC's statements were malicious. (Memorandum in Opposition at 5.) *Altamont* did not involve the employment privilege, and the court held that defendant's alleged actions were insufficient to demonstrate malice or to establish abuse of a qualified privilege. *Altamont*, 374 A.2d at 292. The *Altamont* court held that an architecture

firm did not act with malice in communicating construction delays on a construction project, even though the communication in question could have been construed to blame the general contractor for the delays. *Id.* at 287. Even where the architecture firm declared that the general contractor was "extremely negligent in its duties," the court held that these communications did not rise to the level of malice necessary to overcome a qualified privilege in a business context. *Id.* at 287, 292. Unlike *Altamont*, Morgan, PC never accused Counterclaimant of negligence or any other unlawful conduct, and it is unclear how Counterclaimant relies on this case to demonstrate that Morgan, PC acted with malice.

### 5. Counterclaimant still has not sufficiently alleged that Morgan, PC's statements were false or defamatory.

Finally, Counterclaimant Wiswell completely fails to address whether the statements made by William Morgan were false. Counterclaimant still relies on the allegation that William Morgan "said it had come to his attention that people were not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m." (Amended Counterclaim at ¶ 126; Memorandum in Opposition at 5.) Counterclaimant Wiswell has not cited to any cases in D.C. or other jurisdictions to suggest that true statements can support a claim of defamation. This is because the truth is an absolute defense to defamation. *Benic v. Reuters American, Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004) ("Truth is an absolute defense to defamation claims. This defense may be established by demonstrating that the statements are 'substantially true.'" 'Substantially true' means that the 'gist' of the statement is true, or that the statement is substantially true as understood by its intended audience.") (citations omitted).

In *Benic*, the D.C. District Court dismissed a defamation claim, with prejudice, where an employer published an announcement stating that the employer was restructuring its news division and that an employee had left the company as part of the restructuring process. *Benic*,

357 F. Supp. 2d at 219.  Similar to Counterclaimant Wiswell, the plaintiff in *Benic* claimed that the statement *implied* that he had been terminated for criminal or unethical behavior because the notice was shorter and more terse than previous employee departure notices.  *Id.* at 219, 220.  The court dismissed the defamation claim because the departure notice was not so different from prior notices so as to imply criminal or unethical conduct.  *Id.* at 222.

Counterclaimant Wiswell argues that Morgan, PC's comments were defamatory because they *implied* that Counterclaimant Wiswell violated office policy.  (Amended Counterclaim at ¶ 126.)  However, the statements made by Morgan, PC were not false, and were not of such a nature that they could have implied wrongdoing that would rise to unethical or criminal conduct.

    **B.**    **Count II:  Counterclaimant Misstates the Elements for the Intentional Infliction of Emotional Distress and Misconstrues the Evidentiary Standard.**

        **1.**    **Counterclaimant Wiswell's representation of the evidentiary standard for intentional infliction of emotional distress is misleading and inaccurate.**

Counterclaimant Wiswell relies on, but misconstrues the evidentiary standard in *Duncan v. Children's Nat'l Med. Ctr.* 702 A.2d 207, 211, (D.C. 1997).  Counterclaimant cites to *Duncan* for the position that courts are required to consider evidence of "applicable community standards" when evaluating an intentional infliction of emotional distress cause of action.  It is not "essential" as claimed; rather, the court merely "considers" such standards when evaluating this tort.  In fact, the *Duncan* recites the exact same standard that Morgan, PC set forth in its Memorandum in Support:  "[to] succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Id.* at 211.  (Memorandum in Support at 11, *citing Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 38 (D.D.C. 2001)).  Notably, the *Duncan* court held that an employee failed to state an intentional infliction

of emotional distress claim when she alleged that her employer forced her to be exposed to radiation while she was pregnant. *Id.* at 211. Perhaps more important, the *Duncan* court held that "[t]he facts alleged in the complaint [were] insufficient to impute recklessness or outrageousness to [defendant] in implementing its internal staffing changes." *Id.* at 212. Internal staffing changes are, in essence, business policy decisions that are almost identical to those in the present action. Based on the holding in *Duncan*, Counterclaimant Wiswell's reliance on it is misplaced and her claim for intentional infliction of emotional distress should be dismissed.

The burden is on the Counterclaimant to meet the factors listed above. *Id* at 212. Accordingly, and in contrast to what Counterclaimant Wiswell asserts in her opposition, Morgan, PC is not required to demonstrate any applicable community standard; instead, this burden falls squarely on Counterclaimant. However, no such standard has been pleaded by Counterclaimant Wiswell, and as such, only the factors set forth in the counterclaim should be considered by the Court.

Nevertheless, Morgan, PC notes that *Duncan* described the applicable "community standard" in an employment case as the actual "employment relationship." *Id.* (stating that "nor can [defendant's] actions be said to go well beyond the bounds of established community standards in the employment relationship"). If one were to apply a community standard in the present action, the employment relationship would properly be construed as that standard. The *Duncan* case also recites the well-established principle that "employer-employee conflicts do not rise to the level of outrageous conduct." *Id.* at 211-212; *see also District of Columbia v. Thompson,* 570 A.2d 277, 290 (D.C. 1990) (holding that a pattern of criticism and misrepresentation coupled with an alleged assault of employee and subsequent termination does not constitute outrageous conduct); *Howard Univ. v. Best,* 484 A.2d 958, 986 (D.C. 1984)

(stating that interference with professional responsibilities does not constitute intentional infliction of emotional distress); *see also Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 340 S.E.2d 116, 123 (1986) (finding that a refusal to grant pregnancy leave or permission to go to hospital and cursing at the pregnant employee, while improper, did not constitute outrageous conduct as a matter of law).

*Duncan* establishes that employee-employer conflicts -- conflicts that are much more troublesome than the facts Counterclaimant Wiswell alleges here -- do not meet the requirements of this particular tort. Counterclaimant Wiswell's claim for emotional distress must be dismissed based on the preceding discussion.

### 2. Counterclaimant Wiswell has not pleaded facts sufficient to withstand a Motion to Dismiss.

As noted in Morgan, PC's Memorandum in Support, the evidence required to support a claim for intentional infliction of emotional distress in an employment context is particularly demanding. *Lockamy v. Truesdale,* 182 F. Supp. 2d 26, 38 (D.D.C 2001), *citing Kerrigan v. Britches of Georgetown, Inc.,* 705 A.2d 624, 628 (D.C. 1997). Counterclaimant Wiswell again relies on inapposite cases that do not reach the facts set forth in the counterclaim.

For example, Counterclaimant Wiswell relies on *Davis v. Russel,* which involved threats of violence and intimidation in the workplace. 452 S.E. 2d 194 (Ga. App. 1994).[3] Threats of violence are not analogous to the facts alleged by Counterclaimant Wiswell. Clearly, no threat of violence or intimidation was ever used, nor were any alleged in Counterclaimant Wiswell's counterclaim.

---

[3] The *Davis* court found that "the evidence shows that [the defendant] allowed an armed law enforcement officer to attend the meetings; that she permitted the officer to dominate the meetings and that she acquiesced in the officer's intimidating, overbearing and abusive conduct." *Davis*, 452 S.E. 2d at 203.

Similarly, Counterclaimant Wiswell cites to *Hall v. The May Dep't Stores Co.*, 637 P.2d 126, 141-42 (Or. 1981) (intentional infliction of emotional distress claim upheld where an employee was questioned by employer in an abusive and confrontational manner regarding possible theft. It should be noted that the validity of the *Hall* decision is questionable as it was overturned (albeit on other grounds) by *McGanty v. Staudenraus,* 321 Or. 532, 547-550 (Or. 1995) (noting that the *Hall* court misinterpreted the "intent" requirement for this tort). Nevertheless, and even if *Hall* were still valid, the behavior there (abusive questioning of an employee) and the sexual harassment *McGanty* case are not at issue here. Counterclaimant Wiswell has alleged no such similar physical, threatening conduct.[4] Accordingly, that case is inapposite.

Counterclaimant cites to *Harrison v. Loyal Protective Life Ins. Co*., 379 Mass 212 (1979). That case is neither analogous nor persuasive. In *Harrison*, the issue centered on whether a claim of intentional infliction of emotional distress survives the death of the person to whom the alleged conduct was directed.[5] Ultimately, the *Harrison* court allowed the claim to proceed only because "it [was] clear" that the defendant had "made actual threats" against the plaintiff. The merits of the claim, however, were not discussed by the court. *Harrison,* 379 Mass. at 219-220.

Counterclaimant Wiswell's reliance on *Smith v. Montgomery* is also unavailing. 567 F. Supp. 1331, 1335 (D. Colo. 1983) (holding that the withholding of benefits, failure to make

---

[4] While Counterclaimant Wiswell discredits Morgan, PC's Memorandum in Support (Memorandum in Opposition at 7, 8) for citing to authorities outside the District of Columbia, the Counterclaimant cites to decisions in Alabama, Massachusetts, and Colorado in an attempt to support her claim. In *Holmes v. Oxford Chem., Inc.*, the tort in question was "outrage," not intentional infliction of emotional distress. 510 F. Supp. 915 (M.D. Ala. 1981), *aff'd* 672 F.2d 854 (11th Cir. 1982). In *Holmes*, the court held that an employer who reduced employee's monthly check from $500 to $49.10 constituted the tort of "outrage" when the defendant was not authorized to reduce payment under plaintiff's disability plan. 510 F. Supp. at 916. This tort does not appear to relate to intentional infliction of emotional distress, and it can hardly stand as precedent in the District of Columbia for a different cause of action.

[5] The court held that a claim of intentional infliction of emotional distress survives the death of plaintiff's husband when husband's employer threatened that he would not be able to return to work if he filed for disability benefits. *Harrison*, 379 Mass. at 219-220.

retirement payments, and wrongful discharge are a jury issue).  Under the standards discussed in *Smith v. Montgomery*, a claim for intentional infliction of emotional distress "would be cognizable only where the defendant has engaged in a *pattern of conduct* that either has intended to cause or recklessly did cause severe emotional distress." *Id.* at 1335 (emphasis in original).  Even though Counterclaimant Wiswell uses this case to front the proposition that the string of offenses cited in her Opposition Motion (Memorandum in Opposition at 14) are sufficient to go to the jury, the *Smith* court noted that "[I]n the present case, it is questionable whether plaintiff has alleged a sufficient pattern of conduct on the part of defendants to state a claim for outrageous conduct." *Smith*, 567 F. Supp. at 1335.

Finally, this Court should note that *Crowley v. North American Telecomm.,* 691 A.2d 1169 (D.C. 1997), which is relied upon by Counterclaimant Wiswell and is discussed at length above, also contains an intentional infliction of emotional distress analysis.  There, the District of Columbia Court of Appeals held that "[e]ssentially, [plaintiff] alleges only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge. While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory." *Crowley*, 691 A.2d at 1172.  *Crowley*, which contains allegations that are far more egregious than any of those asserted by Counterclaimant in this case, again demonstrates that her claim is completely without merit or justification, and Counterclaimant provides no authority or argument that would allow this Court to find otherwise.

      **3.**    **Counterclaimant Wiswell's claim does not meet the applicable D.C. standard.**

Counterclaimant Wiswell's claim is set forth in her Opposition:  "Morgan's actions constituted a deliberate and systematic tactic to take advantage of the inherent dependency of the employer-employee relationship by threatening and browbeating Wiswell in order to force her to

confer some benefit upon the employer." (Memorandum in Opposition at 13.) First, this is not an issue that was raised in the pleading. Second, the only claim made by Wiswell is that Morgan, PC inflicted emotional distress by forcing her to change her work hours and intimating to others that she had violated company policy. (Counterclaimant Wiswell's Answer and Counterclaim at ¶ 154.) Even if these allegations are taken to be true for the purposes of a Motion to Dismiss, it must be dismissed as a matter of law in the District of Columbia.

Counterclaimant Wiswell's claim simply does not come anywhere close to the level of "outrageousness" required. (*See* Memorandum in Support at 12, *citing Lockamy v. Truesdale,* 182 F. Supp. 2d 26, 38 (D.D.C 2001) (dismissed even though the employer had denied the plaintiff the opportunity to work overtime, instructed the plaintiff that he could not address white employees by their first names, told him that he could not speak to certain African-American employees, cursed at him, and told him that he could not use a typewriter even though others in his department were allowed to).

Counterclaimant Wiswell's own cases are at best irrelevant and, in many cases, support Morgan, PC's own arguments. Counterclaimant's claim for intentional infliction of emotional distress should be dismissed.

C. **Count III: Counterclaimant failed to state a claim under the Equal Pay Act.**

To establish a *prima facie* case under the Equal Pay Act, a plaintiff must show (1) wage disparity and (2) job equality. *Stevens v. District of Columbia*, 1994 WL 377271, at *2 (D.D.C. 1994) (not reported in F. Supp.), *citing Goodrich v. Int'l Bd. of Elec. Workers,* 815 F.2d 1519, 1523 (D.C. Cir. 1983) ("*Goodrich I*"). "[E]qual work" under the Equal Pay Act does not require that the jobs being compared must be "identical," they must be something more than merely "comparable," *i.e.*, capable of being compared. *Goodrich I* at 1524. The prevailing standard is one of "substantial equality." *Id., citing Goodrich v. Int'l Bd. of Elec. Workers*, 712 F.2d 1488,

1492 (D.C. Cir. 1983) ("*Goodrich II*"); *Thompson v. Sawyer*, 678 F.2d 257, 274 (D.C. Cir. 1982).

In her Opposition Motion, Counterclaimant Wiswell relies on *Robinson v. Davis Mem'l Goodwill Indus.*, 790 F. Supp. 333, 333 (D.D.C. 1992) to support her argument that she is not held to a "higher pleading" standard under the Act, and that, as such, her claim should survive the Motion to Dismiss.  However, the *Robinson* court found that Federal Rule of Civil Procedure 8(a) "requires Plaintiff make "a short plain statement of the claim." *Robinson,* 790 F. Supp. at 334, *citing* Fed. R. Civ. P. 8(a).  Morgan, PC has not claimed that Counterclaimant Wiswell is subject to a higher pleading standard.  Rather, Morgan, PC alleges that Counterclaimant Wiswell has failed to make or allege *any* enforceable claim at all.  In her Answer and Counterclaim, Counterclaimant Wiswell stated only that she *expected* to be paid on the same level as her male counterparts ("Ms. Wiswell had expected to be paid a comparable salary to male employees with similar responsibility, but her raise was significantly lower than the salary paid to males."). (Amended Answer and Counterclaim at ¶ 124.)  Nowhere does Counterclaimant Wiswell allege facts that work she performed was *comparable* to her counterparts.  *See Goodrich I* at 1524 (enquiry should focus on duties of each job and not on employees expectations).  Second, she only alleges her *raise* was significantly lower; this does not state a claim for lower pay.  As such, Counterclaimant Wiswell has made no claim on which relief can be granted under the Act.

Counterclaimant Wiswell also cites *Downes v. JP Morgan Chase & Co.*, 2004 WL 1277991 (S.D.N.Y 2004) to advance the argument that Counterclaimant Wiswell put Morgan, PC on notice of her unequal treatment through her pleadings. (Memorandum in Opposition at 15, 16.)  The *Downes* court did not reject defendant's motion to dismiss out of hand, as suggested by Wiswell.  Rather, the court noted that it "declines to dismiss [plaintiff's] Equal Pay

Act claim at this juncture, particularly as the parties have already engaged in considerable discovery; should [plaintiff] fail to adduce evidence supporting her Equal Pay Act allegation, [defendant] can shortly move for summary judgment on this claim." *Id.* at 7.  The court based its decision on the amount of discovery undertaken in the case and not on the actual facts of the claim.  As such, *Downes* was decided in large part on the procedural posture of the case and is not relevant.

Finally, Morgan, PC has not attempted to have Counterclaimant Wiswell "plead around" any affirmative defenses available to Morgan, PC.  Counterclaimant Wiswell cites *US Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) as evidence that "it is black letter law that a plaintiff has no duty to 'plead around' Morgan's affirmative defenses in the Complaint. (Memorandum in Opposition at 16.)  *US Gypsum*, however, was based on federal Antitrust issues and has nothing to do whatsoever with the Equal Pay Act.  Although not germane to the Equal Pay Act issues in this case, the *Gypsum* court held that "[a] complaint states a claim on which relief may be granted when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *US Gypsum*, 350 F.3d at 626.  Counterclaimant Wiswell must at the least make the required showing needed for "legal entitlement" under the Equal Pay Act.  She does not.  She only specifically alleges that her raise was lower and that she had expectations of more pay.

Counterclaimant Wiswell has failed to make the required showing that she was similarly situated to any other male employees in her office.  Such a fundamental flaw merits dismissal as a matter of law.

**D.     Count IV:  The Counterclaimant has failed to allege any facts that support a claim under the federal Fair Labor Standards Act.**

Count IV of the Counterclaim contains a count under the federal Fair Labor Standards Act ("FLSA").  The overtime provisions of Section 207 of the FLSA, 29 U.S.C. § 207, clearly exempt from coverage any employee in "a bona fide executive, administrative, or *professional* capacity."  29 U.S.C. § 213(a)(1) (emphasis added).  Counterclaimant is not entitled to overtime pay under the FLSA because she is clearly an "exempt" employee as a matter of law.  As such, Count IV fails to state a claim upon which relief can be granted.

**1.     Counterclaimant offers no precedent to suggest that a CPA is not exempt under the FLSA.**

Counterclaimant Wiswell has failed to cite to a single case holding that CPAs are not exempt under the FLSA.  Counterclaimant would have the court make the parties go through a costly discovery process only to determine that CPAs are, indeed, exempt employees under the Department of Labor's professional exemption.  29 C.F.R. § 541.301(a).  While Counterclaimant argues that she need not plead around every affirmative defense, Counterclaimant also cites to cases that hold that a litigant may plead itself out of court by alleging, and thus admitting, the *ingredients* of a defense.  *US Gypsum*, 350 F. 3d 623, 626 (emphasis added).

In this case, Counterclaimant has pled herself out of court by admitting in her own pleading that she was a CPA.  (Amended Counterclaim at ¶¶ 119, 120.)  CPAs are exactly the type of employees who were intended to be exempt under the FLSA, and courts have recognized CPAs as exempt under the learned professional exemption.  While Counterclaimant states that the regulations imply that Morgan, PC's motion is premature, Morgan, PC has cited to clear language in regulations and relevant case law to

establish that CPAs are exempt employees.[6] Counterclaimant can point to no holding to the contrary. Surely, if an exception existed, Counterclaimant Wiswell would have brought it to the Court's attention.

### 2. Counterclaimant's incomplete and vague pleadings cannot save the claim from dismissal.

Counterclaimant Wiswell attempts to argue that because she failed to plead that she was paid a predetermined amount each week, it is unclear from her pleadings whether her pay is within the definition of salary contained in the regulations. (Memorandum in Opposition at 19.) Counterclaimant's deliberately incomplete pleadings can not save the count from dismissal. Nor should this court afford Counterclaimant an opportunity to supplement the original counterclaim with additional facts. Counterclaimant Wiswell introduces new facts that Wiswell's pay was subject to reductions due to variations in quantity or quality of work. (Memorandum in Opposition at 19, n. 6.) Such facts do not appear in her pleading, and they should not be considered by the Court.

### 3. Counterclaimant is exempt under the professional exemption.

Counterclaimant argues that Morgan, PC will not be able to prove that Counterclaimant Wiswell has satisfied the duties test of an *administrative* exempt employee. (Memorandum in Opposition at 21.) Counterclaimant also details the regulations for the administrative exemption. However, Morgan, PC's Motion to Dismiss claims that Counterclaimant Wiswell is exempt under the *professional* exemption. Counterclaimant Wiswell has not addressed the professional

---

[6] *See Galso v. Eisman, Zucker, Klein, and Ruttenberg*, 310 F. Supp 2d. 569, 575 (S.D.N.Y. 2004) ("[t]he undisputed evidence reveals that plaintiff is a certified public accountant. . . . He falls squarely within the "learned professional" exemption of the FLSA."); *Rausch v. Wolf*, 72 F. Supp. 658, 663 (N.D. Ill. 1947) (holding that Certified Public Accountant was exempt from overtime pay under the FLSA as a bona fide professional employee.); *Owsley v. San Antonio Indep. School Dist.*, 187 F.3d 521, 525 (5th Cir. 1999) ("[e]ven though the pilots did not obtain a college degree, their 'extensive knowledge of aerodynamics, airplane regulations, airplane operations, [and] instrument procedures' convinced us that that their training was as complex as that of 'nurses, accountants, and actuarial computants' who are regarded as employees in learned professions.").

exemption in her response, and has not offered any defense as to why the claim should not be dismissed despite the *professional* exemption. It appears that the Counterclaimant is under the mistaken belief that Morgan, PC argued that the claim should be dismissed under the *administrative* exemption (as was the case for Counterclaimant Murphy).

Counts IV and V should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff Morgan, PC respectfully requests that the Court dismiss Counterclaimant's counterclaims with prejudice for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

## REQUEST FOR HEARING

Morgan, PC requests a hearing on the its Motion to Dismiss.

Respectfully submitted,

\_\_/s/_____
Manesh K. Rath
D.C. Bar No. 457835
George Brent Mickum, IV
D.C. Bar No. 396142
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel: (202) 434-4182
Fax: (202) 434-4646
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I HEREBY certify that on October 20, 2005, a copy of the foregoing was served by CM/ECF software to:

Roger C. Simmons, Esq.
Victor E. Cretella, III, Esq.
Gordon and Simmons, LLC
603-B West Patrick Street
Frederick, MD 21705-0430

Counsel for Defendant
Susan Wiswell

Janice Rockwell, Esq.
121-A North Court Street
Frederick, MD 21701-5415

Counsel for Defendant
Angela Murphy

John F. Hornick, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Counsel for Plaintiff
William A. Morgan, Jr., P.C.

                                          _____/s/_____
                                              Manesh K. Rath, Esq.