IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM A. MORGAN, JR., P.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:05cv-1561 |
| ) | |
| SUSAN WISWELL, ) | |
| ANGELA MURPHY, ) | |
| JOHN DOE(S) 1-10, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**PLAINTIFF WILLIAM A. MORGAN, JR., P.C.'S
REPLY MEMORANDUM TO DEFENDANT MURPHY'S OPPOSITION TO
MOTION TO DISMISS**

Plaintiff, William A. Morgan, Jr., P.C. ("Morgan, PC"), by and through undersigned counsel, submits the following Reply Memorandum to Defendant Angela Murphy's ("Counterclaimant Murphy") Opposition to Plaintiff's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The assertions in Counterclaimant Murphy's Opposition notwithstanding, her Answer and Counterclaim fails to state a single cause of action that can withstand scrutiny and none of the facts alleged are sufficient to support any cause of action set forth in Counterclaimant Murphy's Counterclaim.

**ARGUMENT**

Counterclaimant fails to allege facts sufficient to support any cause of action set forth in the Counterclaim. As such, all four counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

I.  **The Counts Contained in the Answer and Counterclaim Should Be Dismissed.**

    A.  **Count I: Counterclaimant Murphy relies on several cases that are inapposite, and misrepresents the defamation standard in the District of Columbia.**

Counterclaimant contends she was defamed by a single sentence uttered by a company President to his employees at a business meeting. This alleged defamatory statement by Morgan, PC was nothing more than a benign expression of business policy. Such statements fall squarely within an employer's privilege against defamation claims. All of the cases cited by Counterclaimant Murphy are inapposite to this case because they involved (1) statements that did not serve a legitimate business purpose, and (2) statements that implied unethical or unlawful conduct. Accordingly, none is availing.

        1.  **The defamatory conduct in *Crowley* did not serve a legitimate business purpose.**

Counterclaimant incorrectly places great reliance on *Crowley v. North American Telecomm. Ass'n*. 691 A.2d 1169 (D.C. App. 1997). *Crowley* involved statements that (1) did not serve a legitimate business purpose; and (2) were made *after* the employee was terminated. *Id.* at 1171. In *Crowley*, the employee was terminated in September, 1994. *Id.* In March, 1995, the employer told other employees and former co-workers that an empty bullet casing had been found in the hallway which was probably left by plaintiff. *Id.* Because the statement about the bullet had no relation to any legitimate business purpose, it fell outside the scope of the qualified privilege that employers enjoy. The qualified privilege that applies to Morgan, PC in this case was not at issue in *Crowley*.[1]

---

[1] Morgan, PC also notes that Mr. Crowley was not employed at the time the comments about the bullet were made. Therefore, it is even less likely that the comments in *Crowley* served a legitimate employment purpose because Mr. Crowley was no longer employed by North American Telecommunications Association when the comments were made. Once the employment relationship ends, the legitimate employment interest becomes more tenuous.

Here, Morgan, PC had every right to convey corporate policy to *current* employees about current employees. When statements involve a human resources policy and are designed to inform current employees about that policy, such statements are not defamatory because they involve a legitimate employment interest.

### 2. The defamatory conduct in *Wallace* implied unethical or unlawful conduct.

Counterclaimant Murphy also relies on *Wallace v. Skadden, Arps, Slate, Meagher, and Flom,* 715 A.2d 873, 877 (D.C. App. 1998), to support her position that comments made by Morgan, PC were defamatory and not protected by privilege. She also suggests that Morgan's reliance on this case in its Motion to Dismiss was misplaced. Counterclaimant is mistaken.

In the *Wallace* case, the alleged defamatory conduct included the deactivation of an employee's access key *after* she was fired from the firm – treatment allegedly reserved for individuals accused of crimes. *Id.* at 877. Also, the plaintiff in *Wallace* alleged that *after* her dismissal, Skadden Arps attorneys were directed to respond to any inquiries by potential employers as to the plaintiff's qualifications by providing only the dates of employment, which was allegedly a "well known code in the legal community for 'do not hire.'" *Id.* at 877.[2] Thus, the conduct in the *Skadden* case alleged that the employer had implied that the plaintiff had committed illegal or unethical conduct.

The alleged defamatory statement by Morgan, PC involved a general human resources statement applicable to all about the employer's office hours policy. In no way do those alleged statements imply that Counterclaimant had committed unlawful or unethical acts.

---

[2] Again, Morgan, PC notes that the alleged defamatory conduct occurred *after* the employment relationship ended, making it less likely that the conduct involving the references involved a legitimate employment purpose.

### 3. Morgan, PC's statements fall within a well-established immunity or privilege from defamation claims, and were not malicious.

In an unsuccessful attempt to argue that Morgan, PC is not protected by the well-established employer privilege from defamation claims, Counterclaimant relies on decisions that do not address the employer-employee relationship. It is critical for this Court to note that the specific statement that Counterclaimant Murphy claims to be defamatory directly related to employment matters and took place while Counterclaimant Murphy was employed by Morgan, PC. (Answer and Counterclaim at ¶ 149.) Taking all of the alleged statements as true, Counterclaimant has not alleged a single defamatory statement that took place outside of the employment setting. Counterclaimant attempts to argue that the employer privilege should not apply, yet only provides the Court with cases that involve malicious comments made *outside* of the employment relationship.

As noted above, the *Crowley* court did not address the qualified privilege because the statements made in the case did not serve a legitimate employment purpose. *Crowley*, 691 A.2d at 1173. Similarly, the *Wallace* court did not apply the qualified privilege because the conduct, in part, involved unethical, immoral or illegal conduct. *Wallace*, 715 A.2d at 877. Counterclaimant mistakenly relies on these cases to support her claim that Morgan, PC's statement was malicious, as it was clearly a general statement of human resource policy. (Memorandum in Opposition at 5.)

### 4. Counterclaimant has not demonstrated that Morgan, PC's conduct was malicious.

Counterclaimant relies on *Altamont v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977) in an attempt to argue that Morgan, PC's statements were malicious. (Memorandum in Opposition at 6, 7.) *Altamont* did not involve the employment privilege, and the court held that defendant's alleged actions were insufficient to demonstrate malice or to establish abuse of a

qualified privilege.  *Altamont*, 374 A.2d at 292.  The *Altamont* court held that an architecture firm did not act with malice in communicating construction delays on a construction project, even though the communication in question could have been construed to blame the general contractor for the delays.  *Id.* at 287.  Even where the architecture firm declared that the general contractor was "extremely negligent in its duties," the court held that these communications did not rise to the level of malice necessary to overcome a qualified privilege in a business context.  *Id.* at 287, 292.  Unlike *Altamont*, Morgan, PC never accused Counterclaimant of negligence or any other unlawful conduct, and it is unclear how Counterclaimant relies on this case to demonstrate that Morgan, PC acted with malice.

### 5. Counterclaimant still has not sufficiently alleged that Morgan, PC's statements were false or defamatory.

Finally, Counterclaimant Murphy completely fails to address whether the statements made by William Morgan were false.  Counterclaimant still relies on the allegation that William Morgan "said it had come to his attention that people were not adhering to the office's business hours of 9:00 a.m. to 5:00 p.m."  (Counterclaim at ¶ 133; Memorandum in Opposition at 6.)  Counterclaimant Murphy has not cited to any cases in D.C. or other jurisdictions to suggest that true statements can support a claim of defamation.  This is because the truth is an absolute defense to defamation.  *Benic v. Reuters American, Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004) ("Truth is an absolute defense to defamation claims.  This defense may be established by demonstrating that the statements are 'substantially true.'"  'Substantially true' means that the 'gist' of the statement is true, or that the statement is substantially true as understood by its intended audience.") (citations omitted).

In *Benic*, the D.C. District Court dismissed a defamation claim, with prejudice, where an employer published an announcement stating that the employer was restructuring its news

division and that an employee had left the company as part of the restructuring process. *Benic*, 357 F. Supp. 2d at 219. Similar to Counterclaimant Murphy, the plaintiff in *Benic* claimed that the statement *implied* that he had been terminated for criminal or unethical behavior because the notice was shorter and more terse than previous employee departure notices. *Id.* at 219, 220. The court dismissed the defamation claim because the departure notice was not so different from prior notices so as to imply criminal or unethical conduct. *Id.* at 222.

Counterclaimant Murphy argues that Morgan, PC's comments were defamatory because they *implied* that Counterclaimant Murphy violated office policy. (Counterclaim at ¶ 133.) However, the statements made by Morgan, PC were not false, and were not of such a nature that they could have implied wrongdoing that would rise to unethical or criminal conduct.

    **B.**    **Count II: Counterclaimant Misstates the Elements for the Intentional Infliction of Emotional Distress and Misconstrues the Evidentiary Standard.**

        **1.**    **Counterclaimant Murphy's representation of the evidentiary standard for intentional infliction of emotional distress is misleading and inaccurate.**

Counterclaimant Murphy relies on, but misconstrues the evidentiary standard in *Duncan v. Children's Nat'l Med. Ctr.* 702 A.2d 207, 211 (D.C. 1997). Counterclaimant cites to *Duncan* for the position that courts are required to consider evidence of "applicable community standards" when evaluating an intentional infliction of emotional distress cause of action. It is not "essential" as claimed; rather, the court merely "considers" such standards when evaluating this tort. In fact, *Duncan* recites the exact same standard that Morgan, PC set forth in its Memorandum in Support: "[to] succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Id.* at 211. (Memorandum in Support at 11, *citing Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 38 (D.D.C.

2001)).  Notably, the *Duncan* court held that an employee failed to state an intentional infliction of emotional distress claim when she alleged that her employer forced her to be exposed to radiation while she was pregnant.  *Id.* at 211.  Perhaps more important, the *Duncan* court held that "[t]he facts alleged in the complaint [were] insufficient to impute recklessness or outrageousness to [defendant] in implementing its internal staffing changes."  *Id.* at 212.  Internal staffing changes are, in essence, business policy decisions that are almost identical to those in the present action.  Based on the holding in *Duncan*, Counterclaimant Murphy's reliance on it is misplaced and her claim for intentional infliction of emotional distress should be dismissed.

The burden is on the Counterclaimant to meet the factors listed above.  *Id* at 212.  Accordingly, and in contrast to what Counterclaimant Murphy asserts in her opposition, Morgan, PC is not required to demonstrate any applicable community standard; instead, this burden falls squarely on Counterclaimant.  However, no such standard has been pleaded by Counterclaimant Murphy, and as such, only the factors set forth in the counterclaim should be considered by the Court.

Nevertheless, Morgan, PC notes that *Duncan* described the applicable "community standard" in an employment case as the actual "employment relationship."  *Id.* (stating that "nor can [defendant's] actions be said to go well beyond the bounds of established community standards in the employment relationship").  If one were to apply a community standard in the present action, the employment relationship would properly be construed as that standard.  The *Duncan* case also recites the well-established principle that "employer-employee conflicts do not rise to the level of outrageous conduct."  *Id.* at 211-212;  *see also District of Columbia v. Thompson,* 570 A.2d 277, 290 (D.C. 1990) (holding that a pattern of criticism and misrepresentation coupled with an alleged assault of employee and subsequent termination does

not constitute outrageous conduct); *Howard Univ. v. Best,* 484 A.2d 958, 986 (D.C. 1984) (stating that interference with professional responsibilities does not constitute intentional infliction of emotional distress); *see also Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E.2d 116, 123 (1986) (finding that a refusal to grant pregnancy leave or permission to go to hospital and cursing at the pregnant employee, while improper, did not constitute outrageous conduct as a matter of law).

*Duncan* establishes that employee-employer conflicts -- conflicts that are much more troublesome than the facts Counterclaimant Murphy alleges here -- do not meet the requirements of this particular tort. Counterclaimant Murphy's claim for emotional distress must be dismissed based on the preceding discussion.

### 2. Counterclaimant Murphy has not pleaded facts sufficient to withstand a Motion to Dismiss.

As noted in Morgan, PC's Memorandum in Support, the evidence required to support a claim for intentional infliction of emotional distress in an employment context is particularly demanding. *Lockamy v. Truesdale,* 182 F. Supp. 2d 26, 38 (D.D.C 2001), *citing Kerrigan v. Britches of Georgetown, Inc.,* 705 A.2d 624, 628 (D.C. 1997). Counterclaimant Murphy again relies on inapposite cases that do not reach the facts set forth in the counterclaim.

For example, Counterclaimant Murphy relies on *Davis v. Russel,* which involved threats of violence and intimidation in the workplace. 452 S.E. 2d 194 (Ga. App. 1994).[3] Threats of violence are not analogous to the facts alleged by Counterclaimant Murphy. Clearly, no threat of violence or intimidation was ever used, nor were any alleged in Counterclaimant Murphy's counterclaim.

---

[3] The *Davis* court found that "the evidence shows that [the defendant] allowed an armed law enforcement officer to attend the meetings; that she permitted the officer to dominate the meetings and that she acquiesced in the officer's intimidating, overbearing and abusive conduct." *Davis*, 452 S.E. 2d at 203.

Similarly, Counterclaimant Murphy cites to *Hall v. The May Dep't Stores Co.*, 637 P.2d 126, 141-42 (Or. 1981) (intentional infliction of emotional distress claim upheld where an employee was questioned by employer in an abusive and confrontational manner regarding possible theft. It should be noted that the validity of the *Hall* decision is questionable as it was overturned (albeit on other grounds) by *McGanty v. Staudenraus,* 321 Or. 532, 547-550 (Or. 1995) (noting that the *Hall* court misinterpreted the "intent" requirement for this tort). Nevertheless, and even if *Hall* were still valid, the behavior there (abusive questioning of an employee) and the sexual harassment *McGanty* case are not at issue here. Counterclaimant Murphy has alleged no such similar physical, threatening conduct.[4] Accordingly, that case is inapposite.

Counterclaimant cites to *Harrison v. Loyal Protective Life Ins. Co*., 379 Mass 212 (1979). That case is neither analogous nor persuasive. In *Harrison*, the issue centered on whether a claim of intentional infliction of emotional distress survives the death of the person to whom the alleged conduct was directed.[5] Ultimately, the *Harrison* court allowed the claim to proceed only because "it [was] clear" that the defendant had "made actual threats" against the plaintiff. The merits of the claim, however, were not discussed by the court. *Harrison,* 379 Mass. at 219-220.

Counterclaimant Murphy's reliance on *Smith v. Montgomery,* also is unavailing. 567 F. Supp. 1331, 1335 (D. Colo. 1983) (holding that the withholding of benefits, failure to make

---

[4] While Counterclaimant Murphy discredits Morgan, PC's Memorandum in Support (Memorandum in Opposition at 8, 9) for citing to authorities outside the District of Columbia, the Counterclaimant cites to decisions in Alabama, Massachusetts, and Colorado in an attempt to support her claim. In *Holmes v. Oxford Chemicals, Inc.*, the tort in question was "outrage," not intentional infliction of emotional distress. 510 F. Supp. 915 (M.D. Ala. 1981), *aff'd* 672 F.2d 854 (11th Cir. 1982). In *Holmes*, the court held that an employer who reduced employee's monthly check from $500 to $49.10 constituted the tort of "outrage" when the defendant was not authorized to reduce payment under plaintiff's disability plan. 510 F. Supp. at 916. This tort does not appear to relate to intentional infliction of emotional distress, and it can hardly stand as precedent in the District of Columbia for a different cause of action.

[5] The court held that a claim of intentional infliction of emotional distress survives the death of plaintiff's husband when husband's employer threatened that he would not be able to return to work if he filed for disability benefits. *Harrison*, 379 Mass. at 219-220.

retirement payments, and wrongful discharge are a jury issue).  Under the standards discussed in *Smith v. Montgomery*, a claim for intentional infliction of emotional distress "would be cognizable only where the defendant has engaged in a *pattern of conduct* that either has intended to cause or recklessly did cause severe emotional distress." *Id.* at 1335 (emphasis in original). Even though Counterclaimant Murphy uses this case to front the proposition that the string of offenses cited in her Opposition Motion (Memorandum in Opposition at 16) are sufficient to go to the jury, the *Smith* court noted that "[I]n the present case, it is questionable whether plaintiff has alleged a sufficient pattern of conduct on the part of defendants to state a claim for outrageous conduct." *Smith*, 567 F. Supp. at 1335.

Finally, this Court should note that *Crowley v. North American Telecomm.,* 691 A.2d 1169 (D.C. 1997), which is relied upon by Counterclaimant Murphy and is discussed at length above, also contains an intentional infliction of emotional distress analysis.  There, the District of Columbia Court of Appeals held that "[e]ssentially, [plaintiff] alleges only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge.  While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory." *Crowley*, 691 A.2d at 1172.  *Crowley*, which contains allegations that are far more egregious than any of those asserted by Counterclaimant in this case, again demonstrates that her claim is completely without merit or justification, and Counterclaimant provides no authority or argument that would allow this Court to find otherwise.

### 3.   Counterclaimant Murphy's claim does not meet the applicable D.C. standard.

Counterclaimant Murphy's claim is set forth in her Opposition:  "Morgan's actions constituted a deliberate and systematic tactic to take advantage of the inherent dependency of the employer-employee relationship by threatening and browbeating Murphy in order to force her to

confer some benefit upon the employer." (Memorandum in Opposition at 15.) First, this is not an issue that was raised in the pleading. Second, the only claim made by Counterclaimant Murphy is that Morgan, PC inflicted emotional distress by forcing her to change her work hours and intimating to others that she had violated company policy, and then telling her that she could possibly have her old hours back. (Counterclaimant Murphy's Answer and Counterclaim at ¶¶ 154, 155.) Even if these allegations are taken to be true for the purposes of a Motion to Dismiss, it must be dismissed as a matter of law in the District of Columbia.

Counterclaimant Murphy's claim simply does not come anywhere close to the level of "outrageousness" required. (*See* Memorandum in Support at 12, *citing Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 38 (D.D.C 2001) (dismissed even though the employer had denied the plaintiff the opportunity to work overtime, instructed the plaintiff that he could not address white employees by their first names, told him that he could not speak to certain African-American employees, cursed at him, and told him that he could not use a typewriter even though others in his department were allowed to).

Counterclaimant Murphy's own cases are at best irrelevant and, in many cases, support Morgan, PC's own arguments. Counterclaimant's claim for intentional infliction of emotional distress should be dismissed.

      **C.**      **Counts III and IV: The Counterclaimant has failed to allege any facts that support a claim under the federal Fair Labor Standards Act.**

Count III of the Counterclaim contains a count under the federal Fair Labor Standards Act ("FLSA"). The overtime provisions of Section 207 of the FLSA, 29 U.S.C. § 207, clearly exempt from coverage any employee in "a bona fide executive, *administrative*, or professional capacity." 29 U.S.C. § 213(a)(1) (emphasis added). Counterclaimant is not entitled to overtime

pay under the FLSA because she is an "exempt" employee as a matter of law. As such, Count III fails to state a claim upon which relief can be granted.

### 1. Counterclaimant's incomplete and vague pleadings cannot save the claim from dismissal.

Counterclaimant Murphy attempts to argue that because she failed to plead that she was paid a predetermined amount each week, it is unclear from her pleadings whether her pay is within the definition of salary contained in the regulations. (Memorandum in Opposition at 22.) Counterclaimant Murphy must allege facts sufficient to state a claim in her pleading, and not when she feels the "time is appropriate," whenever that may be. (Memorandum in Opposition at 22.) Counterclaimant's deliberately incomplete pleadings can not save the count from dismissal. Nor should this court afford Counterclaimant an opportunity to supplement the original counterclaim with additional facts. Facts relating to Counterclaimant Murphy's salary basis do not appear in her pleading, and they should not be considered by the Court.

### 2. The facts alleged in Counterclaimant's claim make clear that Counterclaimant is exempt under the administrative exemption.

Counterclaimant Murphy correctly states that an affirmative defense may be raised in a pre-answer motion under Rule 12(b) if the facts giving rise to it are clear from the face of the complaint. (Memorandum in Opposition at 19.) Counterclaimant Murphy alleges that she was hired as a receptionist in 1998, was promoted to office manager after one year, and was promoted again to the position of bookkeeper in June, 2002. (Counterclaimant Murphy's Answer and Counterclaim at ¶¶ 119, 120.) Counterclaimant Murphy is exempt from overtime pay as an office manager and bookkeeper. Counterclaimant admits that while she was the Office Manager, she was responsible for interviewing and making hiring recommendations. (Counterclaimant Murphy's Answer and Counterclaim at ¶ 140.)

Morgan, PC notes with some chagrin that Counterclaimant Murphy relies on language from regulations from old regulations to make her case that a "bookkeeper" is not exempt. (Memorandum in Opposition at 22.)  The language from these old regulations were specifically removed by the Department of Labor from the regulations' present iteration.  Morgan, PC has cited to several cases in its Motion stating that individuals performing tasks similar to those alleged by Counterclaimant Murphy are exempt under the Dept. of Labor regulations.[6]

Counterclaimant Murphy again tries to rely on her deficient pleadings to save her claim in stating that she did not plead her job responsibilities with particularity.  (Memorandum in Opposition at 19.)  Counterclaimant argues that she has yet to develop and argue the facts of her case.  (Memorandum in Opposition at 19.)  The facts should have been in the pleading.  The fact that they are not is fatal to her claim.  The precedent cited by Morgan, PC illustrates that Counterclaimant has alleged facts which, taken as true, show that she is not entitled to overtime as a matter of law.

As Morgan, PC, stated in its Motion, the same standard is applied to claims under D.C. Code. Ann. § 32-1308 and § 32-1012.  (Memorandum in Support at 21, 22.)  Thus, Counts III and IV should be dismissed for failure to state a claim.

---

[6] Courts have applied the administrative exemption even where a significant portion of a plaintiff's job duties were bookkeeping functions. *Gagnon v. Resource Tech., Inc.*, 2001 WL 909028, at *3 (10th Cir. 2001), citing *Lott v. Howard Wilson Chrysler Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (exempt administrative office manager's primary duty was "office work directly related to the general business operations"); *see also Cowan v. Tricolor, Inc.*, 869 F. Supp. 262, 264-265 (D. Del. 1994), *aff'd without op.* 60 F.3d 814 (3rd Cir. 1995) (employee exempt under administrative exemption where work involved office work 100% of time, and employee regularly and directly assisted her supervisor, the owner of the business, in his supervisory capacity, and the employee regularly exercised discretion in the performance of all her duties); *Hills v. Western Paper Co.*, 825 F. Supp 936, 938-939 (D. Kan. 1993) (employer's accounting and credit manager was exempt administrative employee even though she spent more than 50% of her time in bookkeeping and clerical activities). *See also Stricker v. Eastern Off Road Equip., Inc.*, 935 F. Supp. 650, 659 (D. Md. 1996), *citing to Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir.) (convenience store managers), *cert. denied,* 516 U.S. 863 (1995); *Donovan v. Burger King Corp.*, 675 F.2d 516, 520-22 (2nd Cir. 1982) (fast food restaurant assistant manager); *Meyer v. Worsely Cos.*, 881 F. Supp. 1014, 1017-21 (E.D.N.C. 1994). Other courts have also held that an office secretary was not entitled to overtime under the FLSA for the time in which she exercised significant discretion and independent judgment. *Syzmula v. Ash Grove Cement Co.*, 941 F. Supp. 1032, 1038 (D.C. Kan. 1996).

## CONCLUSION

For the foregoing reasons, Plaintiff Morgan, PC respectfully requests that the Court dismiss Counterclaimant's counterclaims with prejudice for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

## REQUEST FOR HEARING

Morgan, PC requests a hearing on the its Motion to Dismiss.

Respectfully submitted,

\_\_/s/_____
Manesh K. Rath
D.C. Bar No. 457835
George Brent Mickum, IV
D.C. Bar No. 396142
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel: (202) 434-4182
Fax: (202) 434-4646
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY certify that on October 20, 2005, a copy of the foregoing was served by CM/ECF software to:

Roger C. Simmons, Esq.
Victor E. Cretella, III, Esq.
Gordon and Simmons, LLC
603-B West Patrick Street
Frederick, MD 21705-0430

Counsel for Defendant
Susan Wiswell

Janice Rockwell, Esq.
121-A North Court Street
Frederick, MD 21701-5415

Counsel for Defendant
Angela Murphy

John F. Hornick, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Counsel for Plaintiff
William A. Morgan, Jr., P.C.

_____/s/_____
Manesh K. Rath, Esq.