**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM A. MORGAN, JR., P.C.,  )
            )
    Plaintiff,    )  CIVIL ACTION NO. 1:05CV01561
            )
    v.      )
            )  JUDGE ROBERTSON
SUSAN WISWELL, et al.,    )
            )
    Defendants.  )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY AND AWARDING SANCTIONS

For two months, Plaintiff William A. Morgan, Jr., P.C. ("Morgan") has sought to inspect and copy the hard drives of the computers that Defendants Susan Wiswell ("Wiswell") and Angela Murphy ("Murphy") used to commit the acts giving rise to this lawsuit. Defendants did not comply with those requests when this Court encouraged them to do so by August 17 or when it ordered them to do so by September 12. Instead, Murphy and Wiswell delayed such discovery as long as they could, and raised an ever-changing array of objections when forced to respond to Plaintiff's entreaties that they comply with the Court's order. Finally, when Morgan proposed a compromise in a final attempt to resolve the dispute, they demanded that they be allowed to inspect and copy <u>Morgan's</u> computer hard drives as part of that compromise. Murphy and Wiswell thus withheld discovery as leverage to obtain discovery to which this Court has previously indicated they are not entitled (and for which Murphy has never even served a discovery request), or raised the issue simply for purposes of delay.

Morgan needs discovery of Murphy's and Wiswell's computer hard drives to support its claims in this case, and to round out the early motion for summary judgment Morgan expects to file. Defendants are accused of conspiring to commit a number of unlawful and unauthorized acts involving the use of their computers. The best evidence of these acts is likely to be found on

the hard drives of those computers, and is recoverable only by inspecting and imaging that

equipment. Because Wiswell and Murphy have not voluntarily produced hard drive images, their

claims to have already produced all relevant evidence on those computers are utterly without

foundation. To the contrary, the documents produced by Murphy and Wiswell suggest that

relevant evidence does still exist on those computers, and may only be accessible by inspecting

and copying the computers' hard drives, then recovering deleted information therefrom.

Morgan therefore seeks another Order from this Court compelling Murphy and Wiswell

to make their computer hard drives available for inspection and copying. Given Wiswell's and

Murphy's refusal to comply with discovery, Morgan also seeks an order awarding the costs it was

forced to incur in filing this motion, to be borne equally by Wiswell and Murphy.

## I.    RELEVANT FACTUAL BACKGROUND

### A.    Morgan's Motion for Expedited Discovery and Non-Spoliation Order

On August 3, 2005, Morgan filed this lawsuit and sought expedited discovery of the

computer hard drives of Murphy, Wiswell, and Wiswell's husband Donald. (See Morgan's

Memorandum in Support of Motion for Expedited Discovery, at pp. 3-4.) Morgan also asked for

a non-spoliation order to preserve electronic information contained on their computers. This

Court granted Morgan's request for a non-spoliation order and set a status conference for August

17, 2005. It did not rule on Morgan's motion for expedited discovery in order to allow Murphy

and Wiswell "an opportunity to respond to" that motion, but the Court indicated that it expected

"that the parties would engage in some fairly high speed discovery" and "expect[ed] cooperation

in very speedy discovery." (See Ex. 1, Transcript of August 3 hearing, at pp. 15, 18-19, 21.)

In the two weeks leading up to the August 17, 2005 status conference, Murphy and

Wiswell did not oppose Morgan's motion for expedited discovery and did not produce any

discovery. Their attorneys ignored Morgan's attempts to arrange a time to inspect their computers and to negotiate a protective order. Instead, Wiswell and Murphy offered to consent to a preliminary injunction, arguing that by doing so Morgan's request for expedited discovery would be moot. At the same time, Wiswell served two sets of discovery requests of her own.

At the August 17 status conference, Morgan informed the Court that Murphy and Wiswell had produced no discovery. The Court granted Morgan's motion for expedited discovery in part and ordered Murphy and Wiswell to respond to Morgan's discovery requests by September 12 or object in the ordinary course. (See Ex. 2, Transcript of August 17 hearing, at 19-20).

In the days leading up to September 12, Morgan's attorneys continued to contact the attorneys for Murphy and Wiswell to arrange for inspection and imaging of their clients' hard drives, but received no response. Copies of correspondence between Morgan's attorneys and the attorneys for Murphy and Wiswell related to Morgan's discovery requests are attached as Exhibit 3. On September 12, Murphy and Wiswell objected to Morgan's requests and refused to produce their computers. Instead, they produced documents that they claimed contained all of the relevant evidence on those computers.

**B.    Wiswell Claimed She Did Not Have Possession, Custody, or Control of the Computer She Used In The Commission of Her Unlawful Acts**

Wiswell refused to produce her computer hard drive because she claimed she did not have a computer, and did not have possession, custody, or control of her husband Donald's computer. (See Ex. 4, Wiswell's Responses to Morgan's Discovery Requests, pp. 2-3, Response to Request Nos. 1 and 3.) But Wiswell produced documents that were located on that computer,

3

and claimed that the computer contained no other relevant evidence. Copies of selected

documents produced by Wiswell are being provided *in camera* to the Court as Exhibit 5.[1]

On September 15, Morgan's attorneys sent a letter to Wiswell's attorney challenging the

claim that she did not have possession, custody, or control of a personal computer. (Ex. 3.) The

letter pointed out that the Wiswells are married and lived in the same house, where the computer

at issue is apparently located. Moreover, it noted that Wiswell had sufficient possession,

custody, or control of the computer to be able to produce documents located on the computer,

and that the production of those documents showed Wiswell had access and permission to use

the computer, and had done so routinely. Based on these facts, Morgan asked that Wiswell

correct her discovery responses and make her computer available for inspection and imaging by

September 20. (Id.) In an abundance of caution, however, Morgan also served a subpoena on

Wiswell's husband the following day, requesting that he make the computer available for

inspection and copying. (Ex. 6.) To date, Donald Wiswell, who is represented by counsel

separate from his wife's counsel, has refused to comply with Morgan's subpoena, yet has not

filed a motion for protective order.

**C.    Wiswell's Continued Refusal to Comply and Her
        Untimely Objections to Morgan's Discovery Requests**

Wiswell did not produce her computer by the September 20 deadline and did not respond

to the points raised in Morgan's letter. Instead, on September 21, Wiswell's attorneys sent a

letter asserting that Morgan's request was moot because Morgan had served a subpoena on

Wiswell's husband. (See Ex. 3.) But Wiswell's attorneys knew full well that her husband would

not comply with that subpoena because they are co-counsel for Wiswell's husband.

---

[1] Until a protective order is entered, the parties have agreed to treat confidential documents

On September 29, Morgan's counsel sent a letter to Wiswell's counsel informing him that Morgan's request was not moot and would not be moot until Morgan obtained the discovery to which it was entitled. (See Ex. 3.) Wiswell's attorneys did not respond to the points raised in that letter. Instead, they once again raised new and untimely objections, this time based on relevance, privacy, confidentiality, and privilege.

Rather than continuing to write letters to Wiswell's counsel responding to an ever-changing array of unfounded, untimely, and stalling objections, Morgan's attorneys asked to meet and confer with Wiswell's attorneys in a final attempt to resolve the discovery dispute between the parties.

### D.    Murphy's Refusal to Produce Her Computer Hard Drive

Murphy responded to Morgan's requests on September 12 by claiming that Morgan's request to inspect and image Murphy's computer, although allegedly overbroad and irrelevant, was "a subject of pending negotiations between counsel for the parties." (Ex. 7, Murphy's Response to Morgan's Discovery Requests, p. 2, Response to Request No. 2.) Murphy refused to produce her computer, but—like Wiswell—she produced documents from that computer that she claimed contained all of the relevant evidence on the computer.[2] Copies of selected documents produced by Murphy are being provided *in camera* to the Court as Exhibit 8.

Contrary to Murphy's assertions, there were no pending negotiations over Morgan's request to inspect and image Murphy's hard drive. Indeed, Morgan's attorneys had sent letters to Murphy's attorney on September 6 and 9, trying to make arrangements for the inspection and imaging, but Murphy's attorney did not respond. (See Ex. 3.) On September 14, Morgan's

---

produced in discovery as attorneys eyes only.

[2]  Murphy's documents were produced without Bates numbers.

attorneys sent a letter to Murphy's attorney pointing out these facts, and asking Murphy to correct and supplement her discovery responses by September 16.  (See Ex. 3.)

### E.    Murphy's Continued Refusal to Comply and Her Untimely Objections to Morgan's Discovery

Murphy did not produce her computer on September 16.  Instead, she served amended responses that continued to assert, without explanation, that Morgan's request to inspect and image Murphy's computer was "a subject of pending negotiations between counsel for the parties." (Ex. 9, Murphy's First Supplemental Response to Morgan's Discovery Requests, Response to Request No. 2, at p. 2.)

In response, Morgan's attorneys sent a second letter to Murphy's attorney on September 22, pointing out her failure to respond to the points raised in its prior letter or to correct her response to Morgan's discovery request.  (See Ex. 3.)  The letter asked Murphy to produce her computer for inspection and copying immediately.  (Id.)  Murphy's attorney did not respond until a week later.  On September 29, Murphy again served amended discovery responses, this time purporting to assert 10 new and untimely objections to Morgan's request.  (Ex. 10, Murphy's Second Supplemental Response to Morgan's Discovery Requests, Response to Request No. 2, at pp. 2-3.)  Once again, Murphy refused to produce her computer.

Rather than delay any further, Morgan's attorneys asked to meet and confer with Murphy's attorney in a final attempt to resolve the discovery dispute between the parties.

### F.    Morgan's Failed Attempt to Meet, Confer, and Reach A Compromise

On October 4, Morgan's attorneys spoke by conference call with the attorneys for Murphy, Wiswell, and Wiswell's husband.  Morgan's attorneys reiterated its position that Morgan was entitled to discovery of Murphy's and Wiswell's computer hard drives, and that the various objections raised by Murphy and Wiswell were insupportable and/or untimely.  As a final

attempt at compromise, Morgan proposed a stipulated protocol to govern the discovery of

Murphy's and Wiswell's hard drives, which would address Murphy's and Wiswell's concerns

about privacy, confidentiality, privilege, and overbreadth. A copy of Morgan's proposed

protocol is attached as Exhibit 11.

      The stipulation proposed to take discovery of Murphy's and Wiswell's computers using a

protocol developed in existing case law. Under the protocol, Morgan's expert would image the

hard drives, search them for evidence relevant to the parties' claims and defenses, and disclose

the results only to the attorneys for Murphy and Wiswell. Murphy's and Wiswell's attorneys

would then designate any irrelevant, privileged, or confidential materials. They would then

produce the relevant non-privileged materials to Morgan, and provide the Court *in camera* with

any materials withheld on the basis of privilege or irrelevance. (See Ex. 11.)

      Morgan submitted the draft stipulation to the attorneys for Murphy and Wiswell on

October 5 and asked them to indicate by the close of business on October 6 whether they would

agree to stipulate to the proposed order. Neither Murphy nor Wiswell agreed to the proposed

order because they refused to allow discovery of their computers unless Morgan agreed to

inspection and copying of its computers.[3] In response, Morgan's attorneys noted that discovery

---

[3]  The attorneys for Murphy and Wiswell also sought to negotiate the terms of the search (see Ex.
3), even though Morgan's proposed protocol adopted verbatim the definition of relevant
evidence in Fed. R. Civ. P. Rule 26, and allowed Murphy and Wiswell to withhold any
materials culled by the expert that they believe to be irrelevant. (See Ex. 11). Morgan
indicated that, after two months, it was unwilling to incur further expense and delay in the
guise of interminable negotiations over the terms on which Murphy and Wiswell would
comply with discovery, especially given their attempts to withhold discovery as leverage to
gain access to Morgan's computers.

of <u>Morgan's</u> computers was not at issue, and did not provide a basis for Murphy and Wiswell to refuse to comply with their discovery obligations.[4]

### G.    The Documents Produced by Murphy and Wiswell in Discovery

Murphy and Wiswell claimed that discovery of their computer hard drives was unnecessary because they had already produced all of the relevant documents located on those computers. These documents show that Murphy and Wiswell used their computers in furtherance of their conspiracy and in the commission of their unlawful acts. They show that Wiswell controls the notmuchman_01@yahoo.com email account (to which Defendants forwarded emails intercepted from Morgan), that she obtained emails forwarded from Morgan's accounts, that she was in possession of the resumes and email correspondence with Morgan from fictitious job applicants, and that she had access to Morgan's confidential and client information (including an old customer list with Murphy's employee identification number on it).

Those documents also show that Murphy acted in concert with Wiswell. Morgan previously presented evidence indicating that Murphy must have given Wiswell passwords to Morgan's email accounts. (<u>See</u> Complaint, Ex. B, at ¶ 7.) The documents produced further show that Murphy knew of the "surveillance" of Morgan's email accounts, and was in constant communication with Wiswell about the results of that surveillance. (<u>See</u> Exs. 5 and 8.) For example, the documents include an email from Murphy to Wiswell, shortly after she left Morgan's office without telling anyone on noon of her last day, asking if there was "anything

---

[4]  Murphy has never even served a request for discovery of Morgan's computers, and Wiswell has only raised the issue defensively as an excuse not to produce her own computer hard drive. In any event, this Court has previously rejected Defendants' argument that discovery of computer hard drives should be "a two-way thing," an argument this Court said "doesn't compute." (Ex. 2, Transcript of August 17, 2005 hearing, at p. 11.) The Court acknowledged

exciting," presumably from the surveillance of Morgan's email. (Id.) The documents even show that Wiswell forwarded emails intercepted from Morgan's email accounts to Murphy's personal email account. (Id.)

The documents also include an email forwarded from Morgan's email account to the notmuchman_01@yahoo.com email account, which Wiswell had subsequently forwarded to Murphy's personal email with the message: "Just found this. Don't know why it wasn't forwarded like all the others." (Ex. 5, email from the notmuchman_01@yahoo.com email account to AKSMurphy@adelphia.net on June 24, 2005 at 4:08 p.m.) The documents also show that Murphy and Wiswell exchanged information about Morgan's hiring efforts on Monster.com,[5] and about Morgan's clients and which of those clients each of them could "go after."[6] Those documents thus present compelling evidence that Murphy's and Wiswell's computers contain evidence relevant to Morgan's claims.

The documents produced by Murphy and Wiswell are also self-evidently incomplete and suggest the existence of other emails or documents that may have been deleted or not saved. For example, the emails about the "surveillance" of Morgan pick up in mid-correspondence. They do not contain emails related to the beginning of that surveillance, which would further support Morgan's conspiracy claim. Similarly, the documents produced by Wiswell contain emails to and from Murphy that are not included in the documents produced by Murphy, and vice versa. See, e.g., Ex. 8 at Bates Nos. 148-59; Ex. 5, emails exchanged between Wiswell and Murphy on

---

that the parties are not in the same position, and indicated that it "can't foresee a scenario under which [Morgan] would have to turn over an image of [its] hard drive." (Id. at 16-17.)

[5]  At the August 3 hearing, Morgan alerted the Court to its discovery that someone had accessed and tampered with Morgan's account on Monster.com. See Ex. 1, at pp. 5-6.

June 17, 2005, at 1:23 p.m. and on June 29, from 8:45 to 9:38 a.m., and email from the notmuchman_01@yahoo.com email account to AKSMurphy@adelphia.net on June 24, 2005 at 4:08 p.m.)  The documents produced by Wiswell contain printouts of the inbox of her email account and the notmuchman_01@yahoo.com email account (see Ex. 8 at Bates Nos. 170-76), but the documents do not appear to contain all of the emails shown in the inbox.

In addition, Wiswell has failed to produce complete paper copies of electronic documents accessed using her computer.  On September 15, Morgan's attorneys sent a letter to Wiswell's attorneys pointing out that nearly 50 of the 200 pages of documents Wiswell produced contained incomplete paper copies of electronic documents.  (See Ex. 3.)  For example, those documents contained paper printouts of emails with sentences and dates cut off.  (See Ex. 8 at Bates Nos. 113-177.)  Morgan requested that Wiswell produce complete copies of those electronic documents.  Instead, on September 21, Wiswell's attorneys responded by indicating that they had merely recopied and were re-serving the same incomplete paper copies.  (See Ex. 3.)  On September 29, Morgan's attorneys sent a letter to Wiswell's attorneys pointing out the deficiency and again requesting that Wiswell produce complete copies of those electronic documents.  The letter noted that those documents had been printed after the entry of the Court's August 3 non-spoliation order, so they should still be in Wiswell's possession.  (Id.)  Nonetheless, Wiswell has failed to produce those documents, either in electronic or complete paper format.  Her failure to do so suggests those emails may have been deleted, and may only be recovered in their entirety by searching Wiswell's hard drive.

---

[6]  Indeed, Murphy has even asked this Court to revise the preliminary injunction order for the express purpose of making it clear that she could solicit Morgan's clients.  (See Murphy's Motion to Revise Preliminary Injunction and Scheduling Order, at ¶¶ 4-6.)

Finally, some of the emails forwarded from Morgan's accounts had confidential business documents attached to them. (See, e.g., Ex. 8 at Bates Nos. 17, 52-56, 71-72, and 75-77.) The fact that Murphy and Wiswell did not produce copies of those attachments may indicate that they did not save them, but does not prove they did not open and read them. Evidence that they did download and open those documents would appear on their computer hard drives, unless such evidence has been overwritten from continued use. Similar evidence would exist for documents attached to emails not produced by Defendants that may have been deleted.

## II.    ARGUMENT

### A.    Wiswell Has Possession, Custody, and Control of the Computer She Used To Commit Her Unlawful Acts

The only timely objection Wiswell raised to producing the personal computer she used to commit her unlawful acts was that she did not have possession, custody, or control of the computer. Instead, Wiswell claimed the computer belonged to her husband Donald. The facts and law clearly demonstrate, however, that Wiswell's objection is unfounded.

Under Maryland law, household goods and furnishings acquired for the use of the family in contemplation of or after marriage are considered a gift to the marital unit, and are presumed to be jointly owned by the husband and wife. See Bender v. Bender, 282 Md. 525, 534; 386 A.2d 772, 778-79 (Md. 1978). Wiswell and her husband are married and reside together in their marital home, where the computer at issue is kept. It is clear that the computer is intended for use by both spouses. Not only did Wiswell have sufficient possession, custody, or control to be able to produce documents from that computer, but those documents show that Wiswell had access to and permission to use the computer, and made regular and extensive use of it to violate two federal laws and Morgan's rights. The documents indicate that the Wiswells even shared use

of the suzwizzy@yahoo.com email account, from which some emails were sent by Susan

Wiswell and others were sent by Donald Wiswell.  See Ex. 8.

Wiswell has never presented any evidence to rebut the presumption of joint ownership.

Nor did Wiswell respond to these arguments in Morgan's September 15 letter challenging

Wiswell's objection.  (See Ex. 3.)  Instead, Wiswell's counsel argued that the issue was moot

because Morgan had served a subpoena on Wiswell's husband, then later raised new and

untimely objections to Morgan's discovery requests.  (Id.)

In light of these facts, there can be no question that Wiswell has possession, custody, or

control of the personal computer she used to commit her unlawful acts.  Wiswell's refusal to

comply with Morgan's discovery requests, based on the specious claim that she did not, is

unsupportable under the facts and law.  Morgan's motion to compel should therefore be granted.

**B.      Murphy and Wiswell Should Be Compelled to Allow
          Inspection and Copying of Their Computer Hard Drives**

**1.      Case Law Supports the Discovery of Computer Hard Drives
          That Are Likely To Contain Relevant Evidence**

This Court has held that a party may compel inspection of computer hard drives where it

can show that the discovery it seeks exists and is wrongly being withheld.  Bethea v. Comcast,

218 F.R.D. 328, 329-30 (D.D.C. 2003).  In Bethea, the Court disapproved of electronic discovery

based on mere speculation that relevant evidence might exist.  Id. at 330.  However, where there

is evidence that relevant evidence is reasonably likely to exist on computer hard drives and has

not been produced, especially where such evidence is likely to be recoverable only through

electronic discovery, this Court and other courts have consistently approved of such discovery.

See Alexander v. FBI, 2000 U.S. Dist. LEXIS 9967(D.D.C. July 10, 2000); Experian Info.

Solutions, Inc. v. I-Centrix, LLC, No. 04C4437 (N.D. Ill. July 21, 2005) (Ex. 12); Antioch Co. v.

Scrapbook Borders, Inc., 210 F.R.D. 645 (D. Minn. 2002); Rowe Entm't v. William Morris

Agency, 205 F.R.D. 421 (S.D.N.Y. 2002); In re Triton Energy, 2002 U.S. Dist. LEXIS 4326

(E.D. Tex. Mar. 7, 2002); Simon Prop. Group LP v. mySimon, Inc., 194 F.R.D. 639 (S.D. Ind.

2000); GTFM, Inc. v. Wal-Mart Stores, Inc., 2000 U.S. Dist. LEXIS 3804 (S.D.N.Y. Mar. 28,

2000); Northwest Airlines, Inc. v. Int'l Bhd. of Teamsters, 2000 U.S. Dist. LEXIS 22638 (D.

Minn. Feb. 2, 2000); Playboy Enters. v. Welles, 60 F. Supp. 2d 1050 (S.D. Cal. 1999); Anti-

Monopoly, Inc. v. Hasbro, Inc., 1995 U.S. Dist. LEXIS 16355 (S.D.N.Y. Nov. 3, 1995).

     In Alexander, the plaintiffs claimed that their privacy interests were violated when the

FBI improperly handed over to the White House hundreds of FBI files of former political

appointees and government employees. 2000 U.S. Dist. LEXIS 9967, at *33-38. Among other

things, the plaintiffs sought to restore and search the computer hard drives of several former

White House employees. Id. at *34. This Court granted the plaintiffs' request with respect to the

hard drives of those employees who had a direct or supervisory role in the alleged acts of

wrongdoing, and indicated that it would consider granting the request with respect to the hard

drives of other employees, where the evidence indicated that such a search was "likely to produce

relevant information." Id. at *38.

     In Experian, the plaintiff claimed that the defendant, a former employee, had

misappropriated trade secrets and breached his duty of loyalty by using the plaintiff's propriety

information. Ex. 12, at 1. The plaintiffs sought to obtain mirror images of the defendant's

computer hard drive to obtain data and metadata related to the use of the computer to create

source code at issue in the case. Id. at 3. The court indicated that discovery of the defendant's

computer hard drive was appropriate where it was reasonably likely to contain relevant evidence.

Id. at 2 (quoting Simon, 194 F.R.D. at 641). The court therefore ordered the mirror imaging of defendant's computer.

In Antioch, the plaintiff claimed that the defendant had infringed its copyright. The plaintiff sought a non-spoliation order and expedited discovery of the defendant's hard drive based on concerns that the defendant may go out of business, may destroy evidence out of animosity toward the plaintiff, or may simply continue to operate the computer at issue. The plaintiff presented evidence that deleted data is retained on a hard drive, but is constantly overwritten by new data. 210 F.R.D. at 649-51. The court found that the defendants may have relevant information on their computer that had been deleted or could be lost through normal usage, and that the plaintiff should be allowed to attempt to recover that information. The court therefore granted the plaintiff's motion to compel. Id. at 652.[7]

In Rowe, the plaintiffs sought discovery of the defendants' hard drives to recover emails showing that the defendants had conspired to engage in discriminatory and anti-competitive acts against black concert promoters. 205 F.R.D. at 423-24. The court found that evidence presented by the plaintiffs supported their claims of collusion, that the requested electronic discovery was

---

[7] Defendants have committed a grave error by refusing to allow Morgan to image their hard drives. On August 3, 2005, this Court issued a nonspoliation order. At that time, Defendants' computer hard drives likely contained certain deleted information relevant to this case, which was recoverable at that time. Because Defendants have refused to allow the imaging of such computers' hard drives, some such deleted information probably has been overwritten in the normal course of using such computers since that date. Thus, Defendants are likely in violation of this Court's nonspoliation order by virtue of their delay in allowing Morgan to image their hard drives. The **ONLY** way Defendants' could have fully complied with such order would have been to allow Morgan to image their computers' hard drives at that time, to have done so themselves at that time, or to stop using the computers altogether so that no information could be overwritten by normal use. Assuming that Defendants did not do so, Plaintiff expects to seek sanctions for Defendants' violation of such order, including an adverse inference regarding the deleted data contained on such hard drives, after upcoming depositions of Defendants.

likely to yield relevant evidence, and that it was unlikely that all of the important emails already had been printed and produced. Id. at 428. The court thus granted the plaintiffs' motion to image and inspect the defendants' computer hard drives.

In Triton Energy, the plaintiffs accused the defendants of violating securities laws. To support their claim, the plaintiffs sought discovery of Triton's computer storage systems (including servers and hard drives) to determine what documents and emails, if any, were deleted and what, if any, information bore significantly on the lawsuit. 2002 U.S. Dist. LEXIS 4326, at *15-16. In support of its request, the plaintiffs presented evidence that Triton's former directors had not been asked to retain or to produce any documents, and that they had sent and received relevant emails that had not been produced. Id. at *9-10. Based on these facts, the court found that discovery of those hard drives was warranted, and granted the plaintiffs' motion to compel. Id. at *19-20.

In Simon, the defendant operated an e-commerce business on the Internet that the plaintiff claimed infringed its trademarks. The plaintiff moved for electronic discovery of the computer hard drives of the defendant's employees to recover deleted files and emails. 194 F.R.D. at 640. Based on its finding of "troubling discrepancies" in the defendants' document production, the court concluded that the plaintiff was entitled to attempt to recover deleted files and emails from those hard drives. Id. at 640-41. The court thus granted the plaintiff's motion to image and inspect the hard drives for files reasonably likely to contain relevant material. Id. at 641.

In Welles, defendant Welles operated an Internet website that the plaintiff claimed infringed its trademark. In the course of discovery, the plaintiff learned that Welles may have deleted relevant emails because a co-defendant produced two email messages between her and Welles that Welles herself had not produced. 60 F. Supp. 2d at 1051. The plaintiff consequently

moved for discovery of Welles' computer hard drive to recover any relevant emails that Welles may have deleted.  Based on that evidence, the court found that Welles' hard drive was discoverable and was likely to have relevant information stored on it, and therefore granted the plaintiff's request to image and inspect the hard drive.  Id. at 1054.

### 2. There Is Compelling Evidence That Murphy's and Wiswell's Hard Drives Contain Relevant Evidence That Has Not Been Produced

As in the cases discussed above, there is compelling evidence in this case that relevant evidence exists on Murphy's and Wiswell's computers that has not been produced, and that may only be obtained by inspecting and copying the hard drives of those computers, then recovering such information.

Discovery of Murphy's and Wiswell's hard drives is appropriate and necessary because of the nature of Morgan's claims.  Murphy and Wiswell are accused of, among other things, using their computers to access or attempt to access Morgan's computer system through the Internet.  By the very nature of those acts, limited evidence of such acts is directly available to Morgan, but resides on the hard drives of the computers used in the furtherance of such acts.  In support of its motion for a temporary restraining order, Morgan presented this Court with two kinds of indirect evidence of such acts, namely, evidence of login attempts from IP addresses linked to Wiswell and forwarded emails from accounts accessible to Murphy and/or Wiswell.

The best evidence of such acts, however, is likely to be found on Murphy's and Wiswell's computers.  When a computer is used to access Internet websites, to attempt to login, or to view, manipulate, or delete materials, information and data from those web pages and materials is temporarily stored on the computer's hard drive.  That information and data may remain in unassigned space on the hard drive even after the user leaves the website or deletes the materials.

See Antioch, 210 F.R.D. at 651 (noting testimony from a computer expert that "data which is deleted from a computer is retained on the hard drive" until it is overwritten by new data through use of the computer). Such evidence may only be available by searching a computer's hard drive, and the need to do so in this case is urgent because Defendants are currently in violation of this Court's nonspoliation order. (See footnote 8, supra.)

To the extent Murphy and/or Wiswell used their computers to access or attempt to access Morgan's computer systems, direct evidence of such acts would exist on their computer hard drives, unless such evidence has been destroyed or overwritten by continued use. In addition, even if that evidence no longer exists, the hard drives may provide proof that it was deliberately destroyed. See, e.g., RKI, Inc. v. Grimes, 200 F.Supp.2d 916, 921-22 (N.D. Ill. 2002) (finding evidence that the defendant had deleted large amounts of information and attempted to "clean" his hard drive by repeatedly defragmenting it). Since neither Murphy nor Wiswell has imaged or inspected her computer hard drives, or retained an expert to do so, they have no basis for their assertions that all relevant evidence on their computers has already been produced, or even that it is being preserved, as ordered by this Court on August 3, 2005. See Bethea v. Comcast, 218 F.R.D. 328, 330 (D.D.C. 2003) (indicating that discovery of computer hard drives is appropriate where a party fails to make an adequate search of its computer).

There is also clear evidence that Murphy and Wiswell have deleted email correspondence. See Bethea, 218 F.R.D. at 330 n.2 (indicating that discovery of computer hard drives is appropriate where there is evidence that a party has deleted relevant emails). As in Welles, the documents produced by Wiswell contain emails from Murphy that Murphy herself did not produce, and vice versa. In addition, the documents produced by Wiswell contain some of the emails forwarded from Morgan's email accounts, but not others. Finally, it is apparent that

17

the emails are not comprehensive, but rather are a segment of a larger correspondence that has not been produced. The documents produced by Murphy and Wiswell thus provide compelling evidence of the existence of other emails relevant to Morgan's claims. Regardless of whether those emails are being deliberately withheld or have simply been deleted, Morgan is entitled to attempt to recover those emails by imaging and inspecting Murphy's and Wiswell's hard drives. Such documents, data, and information are the best evidence of Murphy's and Wiswell's conspiracy and the scope of their acts of computer fraud and abuse and illegal email interception.[8] As such, they are vital to Morgan's case.

### C.   Murphy's and Wiswell's Concerns Do Not Justify Denying Morgan's Discovery of Their Computer Hard Drives

Contrary to their assertions, Murphy's and Wiswell's panoply of objections (i.e., that discovery of their hard drives will be overbroad, unduly burdensome, or invade confidential or privileged matters) does not justify denying Morgan's discovery requests.

Morgan's requested discovery will not be unduly burdensome to Murphy or Wiswell. The inspection and imaging of each hard drive can be completed in less than three hours, and can be completed at a time and place convenient to Murphy and Wiswell. Moreover, the cost of such discovery would be borne entirely by Morgan. The inconvenience and disruption to Murphy and Wiswell would be minimal.

In addition, Murphy's and Wiswell's concerns about the discovery of irrelevant, confidential, or privileged information are addressed by the protocol proposed by Morgan to

---

[8]   The attorneys for Murphy and Wiswell argue that Morgan can get the evidence it needs by deposing Murphy and Wiswell instead. But Morgan needs forensic evidence from Defendants' hard drives to be able to prepare for such a deposition. Moreover, there is no guarantee that Murphy and Wiswell will give truthful testimony (especially given that the claims against them involve acts of deception), or will not simply adopt the mantra of "I cannot recall."

govern the discovery of their hard drives.  Indeed, in the cases discussed above, the courts

consistently rejected the claim that such concerns should preclude a party from obtaining relevant

discovery.  Those courts have found that such concerns are sufficiently addressed by adopting

some variation of the protocol proposed by Morgan to govern the discovery of the computer

owner's hard drive.  See, e.g., Experian, Ex. 12 at 4-5; Antioch, 210 F.R.D. at 652-54; Rowe,

205 F.R.D. at 432-33; Simon, 194 F.R.D. at 641-42; Welles, 60 F. Supp. 2d at 1054-55.

     As the above cases make clear, even Murphy's and Wiswell's untimely last-ditch

objections to Morgan's requested discovery are satisfied by the protocol proposed by Morgan,

and do not justify denying Morgan the discovery to which it is clearly entitled.  Morgan's motion

to compel should therefore be granted.

### D.    Murphy and Wiswell Should Be Sanctioned for Refusing to Allow Inspection and Copying of Their Computer Hard Drives

     Where a party's failure to comply with discovery necessitates a motion to compel, the

Court may order the party, its attorneys, or both to pay the reasonable expenses incurred in

making the motion to compel, including the moving party's reasonable attorneys' fees.  See Fed.

R. Civ. P. 37(a)(4).  The award of sanctions serves the dual purposes of deterring such behavior

and ensuring that a party will not benefit from its failure to comply.  Update Art, Inc. v. Modiin

Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (noting that "compliance with discovery orders . . . is

necessary to the integrity of our judicial process.  A party who flouts such orders does so at his

own peril.").

     Here, the Court ordered Murphy and Wiswell to respond to Morgan's discovery requests

by September 12.  (See August 25, 2005 Order granting Plaintiff's proposed order submitted

August 22, 2005; Ex. 2, Transcript of August 17 Hearing, at 18, 19-20.)  Murphy and Wiswell

did not make their computers available for inspection by the deadline, and did not timely assert well-founded objections to those requests.

To the extent evidence has been lost or overwritten during the delay, either by the mere passage of time or by Murphy's and Wiswell's continued use of their computers, a sanction is appropriate to negate the benefit to Murphy and Wiswell from their refusal to comply. GTFM, 2000 U.S. Dist. LEXIS 3804, at *6. At this time, Morgan seeks a monetary sanction. In a later motion, Morgan expects to seek an evidentiary sanction in the form of an adverse inference.

## III.    CONCLUSION

Murphy and Wiswell claim that there is no remaining evidence on the computer that has not been produced, but they have no basis for making such a representation and the documents they have produced prove otherwise. Morgan seeks an order allowing its expert to inspect and copy all hard drives and other electronic memory devices used by Murphy and Wiswell from and including May 2005, so Morgan's expert can attempt to recover evidence that Murphy and Wiswell should have preserved, especially after the Court entered its August 3, 2005 nonspoliation order. Thus, Morgan respectfully urges the Court to grant its motion to compel, and requests a hearing on this motion.

Date:  October 28, 2005

Respectfully submitted,

_____
John F. Hornick, Esq. (D.C. Bar No. 384701)
Stacey H. King, Esq. (D.C. Bar No. 473007)
Timothy A. Lemper, Esq. (admission pending)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001-4413

*Attorneys for Plaintiff*
*William A. Morgan, Jr., P.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY AND AWARDING SANCTIONS was sent this 28th day of October 2005, by first class U.S. mail in envelopes addressed to the following persons:

Janice B. Rockwell, Esq.
JANICE B. ROCKWELL, LLC
121-A North Court Street
Frederick, Maryland 21701-5415

*Attorney for Defendant Angela Murphy*

Roger C. Simmons, Esq.
Victor E. Cretella, III, Esq.
GORDON & SIMMONS, LLC
603-B West Patrick Street
Frederick, Maryland  21705-0430

*Attorneys for Defendant Susan Wiswell*

22