**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM A. MORGAN, JR., P.C., | )  CIVIL ACTION NO. 1:05CV01561 |
| Plaintiff, | )<br>) |
| v. | )  JUDGE ROBERTSON<br>) |
| SUSAN WISWELL, et al., | )  **MEMORANDUM IN SUPPORT OF**<br>)  **PLAINTIFF'S MOTION FOR ORDER** |
| Defendants. | )  **COMPELLING DISCOVERY AND**<br>)  **AWARDING SANCTIONS** |
| | ) |

# EXHIBIT 1

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 3, 2005

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM A. MORGAN, JR., | : | Civil Action No. 05-1561 |
| | : | |
| Plaintiff | : | August 3, 2005 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| SUSAN WISWELL, ANGELA MURPHY, | : | 3:00 p.m. |
| JOHN DOES (1 - 10) | : | |
| Defendants | : | |
| | : | |

. . . . . . . . . . . . . . :    . . . . . . . . . . .

TRANSCRIPT OF TEMPORARY RESTRAINING ORDER HEARING
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          JOHN F. HORNICK, ESQUIRE
                            FINNEGAN, HENDERSON, FARABOW, GARRETT &
                                 DUNNER, LLP
                            901 New York Avenue, NW
                            Washington, D.C.  20001-4413
                            (202) 408-4000

For the Defendant           JANICE B. ROCKWELL, ESQUIRE
Angela Murphy:              ATTORNEY AT LAW
                            121-A North Court Street
                            Frederick, Maryland  21701
                            (301) 631-0900

                            SUSAN WISWELL, pro se
                            (APPEARING VIA TELEPHONE)

Court Reporter:             REBECCA KING, RPR, CRR
                            Official Court Reporter
                            Room 4802-B, U.S. Courthouse
                            Washington, D.C. 20001
                            (202) 898-9398

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

William A. Morgan, Jr. vs.                    CA 05-1561                              August 3, 2005
Susan Wiswell, et al.

Page 2

P R O C E E D I N G S

COURTROOM DEPUTY:  Civil action number 05-1561, William

A. Morgan, Junior versus Susan Wiswell, Angela Murphy, John Does

1 through 10.  John Hornick and Stacey King for the plaintiff;

Janice Rockwell for the defendant.

THE COURT:  Ms. Rockwell by telephone.  Right?

MS. ROCKWELL:  Yes, Your Honor.  This is Janice

Rockwell speaking now and I am present by telephone.  I barely

heard you say that.

THE COURT:  Well, I'll speak louder then.

MS. ROCKWELL:  Thank you.

THE COURT:  I have before me a very disturbing verified

complaint alleging that Susan Wiswell, a certified public

accountant, and Angela Murphy, a bookkeeper, resigned from the

plaintiff's office and then gained unauthorized access to the

e-mails of the plaintiff's president and vice president,

forwarded those e-mails to their own private accounts, sent fake

resume's to plaintiff, arranged fake interviews, deleted e-mails

from legitimate job candidates, made a false statement to one of

the clients of the plaintiff, and have subsequently essentially

hacked in to the plaintiff's e-mail system on numerous

occasions, most recently August 1st.

Now, this is not the occasion for responses or denials,

it's really an occasion to figure out whether a temporary

restraining order should issue.  A TRO under the federal rules

William A. Morgan, Jr. vs.                  CA 05-1561                        August 3, 2005
Susan Wiswell, et al.

is essentially an ex parte proposition, but under the local

rules, notice to the respondents or defendants is necessary.

Notice has been given.

I think the first question I'm going to ask is to

plaintiff's counsel, which is why this is such an emergency,

when apparently by the pleadings this problem was discovered

sometime in June, more than a month ago.

MR. HORNICK:  Well, Your Honor, I'm John Hornick for

the plaintiff.

THE COURT:  Okay.  Mr. Hornick, we never got to that

point.  Good afternoon.

MR. HORNICK:  I just wanted to thank you for seeing us

today on such short notice.

In terms of the issue of the need for immediate relief,

the plaintiff discovered the problem a few weeks ago.  It's been

about maybe two and a half weeks since we first spoke with the

plaintiff, and the way that the plaintiff found counsel - didn't

have counsel - was actually through the expert who has gone in

and done a lot this investigation.  That expert happened to

speak to me on another matter, and suggested that the plaintiff

might need counsel.

And we talked and then we met, and it's been this

amount of time, about two and a half weeks now, to put together

papers.

We also sent our expert in to the plaintiff's offices

William A. Morgan, Jr. vs.                    CA 05-1561                              August 3, 2005
Susan Wiswell, et al.

Page 4

to do some investigation.  They went through the hard drives of

the two former employees, they went through server logs, and we

really spent a good solid week and a half trying to put our

ducks in a row so that we would have solid evidence that we

could present to the Court.

        Now, in terms of irreparable injury that will come if

we don't have relief, I would say that the most significant

thing is that according to our expert, there appears to be

password-breaking software that's operating.  The attempts to

log in to the plaintiff's e-mail system are coming faster than a

human can make them when they're made, so in other words there

might be five -- there were five attempts within 26 seconds, and

according to our expert, that indicates that it's not a human

being who's doing it, it's software that's doing it.

        And if this software is randomly generating passwords

until it finds the right one, it's just a matter of time.  So

that is one of our main concerns about their ability to get in

to the system any time soon.

        The other risk really is that of the information that

they've already obtained, they could be using it for improper

purposes such as trying to steal a client or trying to hurt our

client's reputation in the eyes of their existing clients.

        So we're concerned that they may have -- we know that

they already obtained confidential information; we don't know

what they're doing with it, and we don't know the extent of the

United States District Court                    202-898-9398                    Rebecca King, RPR, CRR
For the District of Columbia                                                     Official Court Reporter

William A. Morgan, Jr. vs.                    CA 05-1561                              August 3, 2005
Susan Wiswell, et al.

Page 5

information that they've obtained, and therefore we don't know

what they're doing with that.

        Now, in addition to those reasons for the irreparable

injury that we have experienced and may still experience in the

future, the rule that was set up by the defendants in the

plaintiff's e-mail system violated the integrity of that system.

We only know what we've found so far.  There could be other

problems that we don't know about; for example, client

information that was deleted that we don't know about at this

time.

        And then just yesterday, I found out something very

interesting.  The plaintiff looks for new job applicants in a

variety of ways, and one of the ways that they do that now is

through a web site called Monster.com.  You sign up with

Monster.com, and then they send you resume's for potential

employees that match your profile.  You need a password to get

into Monster.com and to sign up and to be able to receive those

resume's.

        It was typical that the plaintiff would receive

resume's from Monster.com every day.  It was just something that

they got every day.  Well, just very recently they stopped

getting resume's, so they went into their Monster.com profile

and they noticed that basically they've been turned off.  Well,

they didn't turn themselves off, and you had to have a password

to turn them off, and the only people who had the passwords, who

William A. Morgan, Jr. vs.                    CA 05-1561                    August 3, 2005
Susan Wiswell, et al.

Page 6

it possibly could have been, were the defendants.

So we do know that through that, the plaintiff has already lost the ability to interview certain potential employees. We don't know where else they have used passwords to turn things off, and we won't know that unless we do some discovery.

And in addition to that, there have been e-mails that were deleted by the defendants that have prevented the plaintiff from interviewing legitimate candidates for jobs.

And finally there has been at least one false statement that's been made to one of the plaintiff's clients that we know of, which has damaged their relationship with that client.

So all of these things together certainly meet the requirements of irreparable injury, and in fact there's a case, the Equis case says that using Morgan's passwords to do these things in itself is irreparable injury.

THE COURT:  Maybe it's time for you to talk.

MS. ROCKWELL:  Your Honor, this is Janice Rockwell. I'm an attorney in Frederick, Maryland, and I thank you for allowing me to participate in this proceeding today.

I should clarify that I am representing one of the defendants, the defendant Angela Murphy, and I know you said this is not a time for denials, and I can appreciate that. Certainly Ms. Murphy, I will let you know, is denying the allegations, all of the allegations against her. But I agree

William A. Morgan, Jr. vs.          CA 05-1561          August 3, 2005
Susan Wiswell, et al.

Page 7

with your first question as to what is the urgency of the
temporary restraining order.

       And I should note that in the allegations of the
complaint, the plaintiff did indicate that there is no more
access to the e-mail system available to anyone.  And my client
certainly has not made, has not attempted to make any access, or
do any of the events or activities that plaintiff's counsel has
just referred to.

       Another part of, of course, the temporary restraining
order that the plaintiff must prove is the likelihood of success
on the merits, and frankly other than stating that these things
have happened, they have shown no connection to Angela Murphy to
these alleged activities, other than the fact that she used to
work there, as did many other people.  That combined with the
fact that she has no present access, cannot and has not been
doing anything, leads to the conclusion that a temporary
restraining order is not appropriate in this situation.

       And I guess I should back up a little, too.  I've
jumped into the merits of this action.  I became aware of this
action -- well, the notion of it sometime late last evening.  I
was involved in a prescheduled meeting all morning, did not get
a chance to review papers until about an hour ago.  I think they
were delivered to me sometime late morning while I was in my
meeting, so I'm still trying to get my hands around this and
understand the various claims being made.

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 3, 2005

Page 8

Preliminarily, I'm not even certain that venue is appropriate in this Court. Both of the defendants, and the defendants reside in Maryland; the alleged actions, assuming they occurred, according to plaintiff's allegations happened through computers located in Maryland. And again, I have not had a chance to look at the statutes, but I don't know that the jurisdiction and venue are appropriate in this Court.

THE COURT: Well, okay. Those are all interesting points. The likelihood of success on the merits is not generally something we worry about at the TRO stage, we worry about it more at the preliminary injunction stage. And in TROs we're more concerned about preserving the status quo.

Venue is an interesting subject. I mean, you may have more of a jurisdictional question than you do a venue question --

MS. ROCKWELL: That as well.

THE COURT: -- because they're both residents in Maryland. But we can -- I mean, I don't know where electrons live, I'm not sure anybody has decided that question.

MS. ROCKWELL: And I have not had time to delve into the issue, other than to note I'm not sure that this is an appropriate action in the United States District Court for the District of Columbia.

THE COURT: Mr. Hornick, I don't know if this is in your papers or not, and if it's not I'll take your

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 3, 2005

representation for the time being.  What is known to you or to

your client or to your affiant about the computer skills and

abilities of Ms. Wiswell and Ms. Murphy that leads you to

believe that they would be such sophisticated hackers?

    MR. HORNICK:  Well, Your Honor, with respect to Angela

Murphy, she was the office administrator at the plaintiff for a

period of time, and as such she had access to all of the

company's employee's passwords, and that would explain how

the -- whoever, and I'm assuming it's the defendants, but that

would explain how whoever is attempting to hack into the system

or got into this system.  They had to have both the user name

and the password of Mr. Morgan and Ms. Wingate, and one other

employee who was still with the company, and they also had to

have the user name and passwords of Wiswell and Murphy.

    So Ms. Murphy had all of that information.  Beyond

that, I don't know what computer expertise she has.

    With respect to Ms. Wiswell, I don't know what her

computer skills are, but I do know that the failed attempts to

hack into Morgan's computer system are coming from Ms. Wiswell's

current office computer, and from her home computer, according

to our expert.  And our expert has looked into this deeply,

deals with these issues all the time.  We can go into the

evidence in more detail, but according to our expert, he is

satisfied that that is coming from her office.

    Now, what that means is that either she's doing it,

William A. Morgan, Jr. vs.              CA 05-1561                        August 3, 2005
Susan Wiswell, et al.

Page 10

regardless of her level of expertise, or somebody in her office
is doing it.  Now, I have no reason right now whatsoever to
believe that anyone in her office is involved in this, so we're
not going to accuse them in any way.  In fact, we have not
notified them, we have not contacted them in any way.

          Now, it's also important to note that we believe that
there is this password-cracking software, but whether there is
or not, someone at Wiswell's office and at her home are in fact
making failed attempts to log in to this system.  We have server
logs that show their names and their passwords attempting to try
to get into the system over and over and over again over the
past several weeks.  There's no one else it can be.

          MS. ROCKWELL:  If I may comment on some of those
comments, Your Honor.  Angela Murphy was the office
administrator, but the complaint also indicates that she ceased
being the office administrator I think more than three years
ago.  It was sometime in 2002 that she no longer worked in that
role and became instead a bookkeeper.

          The other point that was not made was that many other
people within the company had access to the passwords.  I
believe the person who they indicate their e-mail was hacked
into, I'll use that term, gave their passwords out freely to
many people.

          MR. HORNICK:  Well, Your Honor, that's contrary to the
evidence that's in the papers.  The only people --

William A. Morgan, Jr. vs.
Susan Wiswell, et al.                    CA 05-1561                    August 3, 2005

Page 11

THE COURT:  Who gave the password out to many people?

MS. ROCKWELL:  I believe Ms. Meritt Wingate.  She is
the vice president at William A. Morgan, Junior, PC, and it's my
information that her password was well-known.  Plaintiff's
allegation is that Ms. Murphy knew her password because she was
the office administrator.  As I said, she ceased being the
office administrator three years ago.  In addition to that,
Ms. Wingate made her password known to several people.

MR. HORNICK:  Well, Your Honor, this sounds like it is
unsworn contrary testimony.  According to the testimony in the
papers that are before you, Ms. Wingate testified that only
certain people had her password.  The passwords were not changed
since Ms. Murphy ceased to be the office manager, so the fact
that she ceased to be office manager three years ago is
irrelevant.

THE COURT:  What is the connection now between
Ms. Wiswell and Ms. Murphy, as far as you know?

MR. HORNICK:  I don't know that they have a connection
at this time, Your Honor.  I don't believe they work in the same
company.

THE COURT:  They just left at the same time?

MR. HORNICK:  They left within a couple of weeks of
each other.

THE COURT:  And what basis, other than her asserted
familiarity or access to passwords, do you have for tying

William A. Morgan, Jr. vs.                    CA 05-1561                         August 3, 2005
Susan Wiswell, et al.

Page 12

Ms. Murphy into this as distinct from Ms. Wiswell?  You've got

her computer and her office and so forth.

MR. HORNICK:  Yes.  Ms. Murphy, with respect to

Ms. Murphy, the first e-mail that was forwarded under the

illegal rule was at 8:37 on her last day at the office.  She had

given notice the prior day for two weeks.  The plaintiff asked

if she could stay on until August 15th so they could replace

her, and she refused, but she had given two weeks notice.

The next day, which was June 17th, she came to the

office in the morning, and the first e-mail was forwarded at

8:37 that morning, and then she left for good, never saw her

again.

THE COURT:  Forwarded from whom to whom?

MR. HORNICK:  Forwarded from Ms. Wingate's e-mail

account to the Not Much Man Yahoo account.

THE COURT:  But was Ms. Wingate still there?

MR. HORNICK:  Ms. Wingate was there, still works there.

In fact, she's in the courtroom today.

THE COURT:  No, no, I'm sorry.  I'm getting Wingate and

Wiswell mixed up here.

MR. HORNICK:  No, Ms. Wiswell had already resigned.

She resigned on June 2nd, and it was on June 16th that

Ms. Murphy gave notice.  It was the next day that the first

e-mail was forwarded.

THE COURT:  The first e-mail of Ms. Wingate's?

William A. Morgan, Jr. vs.                    CA 05-1561                    August 3, 2005
Susan Wiswell, et al.

MR. HORNICK:  That's right.  And that happened to be the very last morning that Ms. Murphy came to the office.

In addition to that, after Ms. Murphy terminated her employment, there are numerous attempts to log into the Morgan's e-mail system under Murphy's name and password.  And that's in Exhibit C-1 on page six of the papers that you have before you.

So if you can look at that, you can see that her name, her user name and her password were being used to attempt to log in to the system after she terminated her employment.

In addition to that, we know that she made a false statement to one of Morgan's clients.

MS. ROCKWELL:  Well, and we're getting into substantive matters there.  I am aware of that particular issue, and Ms. Murphy vehemently denies that.  I understand you're not taking testimony now, Your Honor, but that was a statement that was allegedly made or not made in the past, and there's no reason for urgency over something that may or may not have been said on her last day of employment.

MR. HORNICK:  Ms. Rockwell, I thank you for mentioning that.  One important point about that statement was that was also made on the last day of her employment.

MS. ROCKWELL:  I think if you note on the time, again I have not had much time to look at this, but you had mentioned an e-mail forwarded on 8/27 --

THE COURT:  We're getting too far into the weeds here

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 3, 2005

Page 14

for me on a TRO motion.

       MS. ROCKWELL:  Okay.

       THE COURT:  The proposed temporary restraining order
has a number of provisions that I cannot include in a TRO, but I
do think that the plaintiff has brought forth enough evidence
that justify a temporary restraining order running against both
Ms. Wiswell and Ms. Murphy.

       I'm not going to issue a TRO against John Doe because I
have no idea how to serve it.  I'm not prepared to make a
finding of likelihood of success on the merits, but I don't
think I have to find that in order to find that a temporary
restraining order is necessary to preserve the status quo.

       The temporary restraining order will provide -- and I
may have to tinker with this a little bit, but it will enjoin
the defendants Wiswell and Murphy from intercepting or otherwise
accessing communications or correspondence to or from Morgan
and/or its employees.  That's paragraph B of the proposed order.
Accessing or attempting to access Morgan's computer network,
e-mail system, correspondence, or other business or client
information.  That's part of sub-paragraph C.

       Trespassing on Morgan's personal property, which is
sub-paragraph F, which will be construed as being its computer
accounts, whether they're physical -- whether their bodies are
physically trespassing or not.

       I think that will do for purposes of a TRO.  However,

United States District Court
For the District of Columbia

202-898-9398

Rebecca King, RPR, CRR
Official Court Reporter

William A. Morgan, Jr. vs.                    CA 05-1561                                    August 3, 2005
Susan Wiswell, et al.

Page 15

the motion suggests, and the proposed order says, that plaintiff
will not be required to post a bond.  This is a serious matter,
this case, and this lawsuit places the defendants in a position
in which they have to go out and get lawyers and defend
themselves, and at least one defendant, by counsel, is already
completely denying any complicity in any of this.

        I will require that a bond be posted, and the bond will
be in the amount of $25,000 to secure the defendants.  As
provided in Rule 65(C), security for the payment of such costs
and damages may be incurred or suffered by any party who is
found to have been wrongfully enjoined or restrained.

        The temporary restraining order will issue as soon as I
can get it rewritten to comply with what I've said.  It will be
good only for 10 days, as the rules require.  It will be good
only for 10 days.

        The plaintiff will be required to make appropriate
service of the restraining order upon the defendants, although
the order essentially reads -- doesn't require hand notice to
people.  It's people having actual notice, and Ms. Rockwell,
you're hearing what I'm saying so you will presumably pass this
on at least to your own client.

        MS. ROCKWELL:  Yes, Your Honor.

        THE COURT:  I would expect that the parties would
engage in some fairly high speed discovery here in order to find
out what's going on, and I guess I should set this down for

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 3, 2005

Page 16

another hearing.

     MS. ROCKWELL:  Your Honor, this is Janice Rockwell
speaking.  The questions I raised about jurisdiction and venue,
frankly I guess I'm asking you a question.  I've raised them,
but again I haven't had a chance to research them.  They're not
necessarily decided upon at this point, are they?

     THE COURT:  Oh, no.  Oh, no.

     MS. ROCKWELL:  Okay.

     THE COURT:  If you have viable venue or jurisdiction
motions, I would expect them to be made and filed as soon as
possible.

     MS. ROCKWELL:  Okay.  Thank you.

     THE COURT:  I'm just trying to figure out where we
should go from here.

     I think what I'm going to do is to set down another --
is to set a status hearing down on this matter in 10 days.  The
10 days will be 10 Federal Rules of Civil Procedure days, which
exclude Saturdays and Sundays, which means in effect two weeks
from today, which would be Wednesday the what?

     MS. ROCKWELL:  17th.

     COURTROOM DEPUTY:  That's what I have, Your Honor,
August the 17th.

     THE COURT:  Wednesday the 17th.  The TRO will be
effective until Wednesday the 17th.  It may be extended on the
17th, it may not.

William A. Morgan, Jr. vs.                    CA 05-1561                                    August 3, 2005
Susan Wiswell, et al.

     The motion for preliminary injunction has been filed.
I will set this matter down for another status conference
two weeks from today, Wednesday the 17th at 4:30 p.m.

     MS. ROCKWELL:  And Your Honor, this was Ms. Rockwell
again.  At that point it's just a status conference, not a
hearing on the preliminary injunction?

     THE COURT:  I don't know what's going to happen then.
It depends on how far along you are in your discovery, whether
you have motions to file, Ms. Rockwell, whether you've responded
to the motion for preliminary injunction.  It could
theoretically be a hearing on a motion for preliminary
injunction, although I frankly doubt that either side will be
ready for that in two weeks.

     MS. ROCKWELL:  Okay.

     THE COURT:  But since the --

     MS. ROCKWELL:  And I apologize, I did not hear the time
that you stated.

     THE COURT:  I said 4:30.  But since the TRO only lasts
for two weeks, I think we better get everybody in here at that
time.  And I encourage all parties to develop the case as much
as they can in the next two weeks.  TRO running against
individuals is a serious matter, and I'm not going to keep it in
effect any longer than is justified by the record.

     I don't know, but suggest to all parties, that the
kinds of activities that are alleged in this complaint may

William A. Morgan, Jr. vs.
Susan Wiswell, et al.

CA 05-1561

August 3, 2005

Page 18

indeed have criminal overtones that I think all parties would do
well to consider.

Now, Mr. Hornick, are you signed up and plugged in to
our electronic case filing system?

MR. HORNICK:  Yes, we are, Your Honor.

THE COURT:  Well, the order that I'm going to issue
will only be issued on the electronic case filing system, so
it's going to be up to you to get it into the hands of the
people who need to receive it.

MR. HORNICK:  Yes, Your Honor.

THE COURT:  Anything further today?

MR. HORNICK:  Your Honor, on the issue of the expedited
discovery --

THE COURT:  Excuse me.  There is one other matter
before me, which is plaintiff's motion to preserve evidence and
for expedited discovery, and I'm not quite sure -- have you
presented an order -- yes, you have presented an order on that.

MR. HORNICK:  Your Honor, yes, you do have those papers
before you.

MS. ROCKWELL:  And Your Honor, I am unable to find
those right now.  I do know it was filed, and I was unable to
read it before the call today, so I would respectfully request
for an opportunity to review that and respond to that before any
such motion is granted.

THE COURT:  Well, I'll tell you, I'm going to grant one

William A. Morgan, Jr. vs.                    CA 05-1561                          August 3, 2005
Susan Wiswell, et al.

Page 19

part of it right now.  The part that demands discovery and

copies of documents and deposition dates and inspection of hard

drives and all that, I will give you an opportunity to respond

to, but the part that says that hard drives and electronic

memory devices in defendant's possession, custody, or control,

and electronic information stored on such devices is to be

preserved, that will be granted.

     MS. ROCKWELL:  Okay.

     THE COURT:  In other words, it's a nonspoliation order.

Don't erase -- or tell your clients -- your client, and I know

you're only representing one client --

     MS. ROCKWELL:  Correct.

     THE COURT:  -- she's not to destroy, erase, hide, or

anything else anything that is a hard drive or electronic

information that relates to her employment or to the charges

made in this complaint.

     MR. HORNICK:  Your Honor, it's my understanding that

the other defendant is on the line.

     MS. WISWELL:  Yes, this is Susan Wiswell.  I am here.

     THE COURT:  Have you been on the line the whole time,

Ms. Wiswell?

     MS. WISWELL:  I have been.

     THE COURT:  Then you've heard the order, and it applies

to you.

     MS. WISWELL:  Yes, I did, Your Honor, and I understand

William A. Morgan, Jr. vs.                    CA 05-1561                        August 3, 2005
Susan Wiswell, et al.

Page 20

it applies.

THE COURT:  Okay.  I think that's all we can do on a

short notice/no notice TRO.  We'll see you, all of you and/or

your representatives, here at 4:30 two weeks from today.

MS. ROCKWELL:  One question on that count, Your Honor,

I am not admitted to practice before the District Court in the

District of Columbia, and I understand you granted me permission

to participate today.  Two weeks from now, should I have DC

counsel involved, or at least present to sponsor my admission on

a pro hac vice basis?

THE COURT:  If you can do that, that's fine.  I don't

think, frankly, for a status conference in a fast-moving matter

like this we're going to get too persnickety about local

counsel.  You're here by telephone; if you're here in person,

we'll grant your motion for leave to appear pro hac right on the

spot.

MS. ROCKWELL:  Thank you very much.

MR. HORNICK:  Your Honor, may I ask if you are going to

issue a written order on the expedited discovery?

THE COURT:  I'm going to issue one order that will

cover what I've just said about expedited --

MR. HORNICK:  And in terms of when --

THE COURT:  Well, 10 days is not enough.  It's

summertime.  Who knows where people are going, what their plans

are.

William A. Morgan, Jr. vs.                     CA 05-1561                                    August 3, 2005
Susan Wiswell, et al.

Page 21

Ms. Wiswell, I'm going to ask you, and Ms. Rockwell for your client, I'm going to ask you, it is certainly in your interests to cooperate with plaintiff's counsel in getting discovery very quickly. I mean, if you want to come in here and blow this whole case out of the water in 10 days, then it's in your interests to cooperate with discovery.

If you can't blow it out of the water in 10 days, then you may want to slow things down. I'm expecting cooperation in very speedy discovery, but I'm not going to put deadlines and timetables on it at this hearing. I can't do that without everybody having calendars, and it's just too complicated.

I'm going to require you-all to work together and try to get discovery done on a very expedited basis. All right?

MS. ROCKWELL: Yes, sir, Your Honor. Thank you.

MR. HORNICK: Yes, Your Honor.

THE COURT: Thank you, counsel. We're adjourned.

(Proceedings adjourned at 3:50 p.m.)

        CERTIFICATE OF OFFICIAL COURT REPORTER


I, Rebecca King, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____          _____
SIGNATURE OF COURT REPORTER                    DATE