IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM A. MORGAN, JR., P.C., ) | CIVIL ACTION NO. 1:05CV01561 |
| Plaintiff, ) ) | |
| ) | JUDGE ROBERTSON |
| v. ) | |
| ) | **MEMORANDUM IN SUPPORT OF** |
| SUSAN WISWELL, et al., ) | **PLAINTIFF'S MOTION FOR ORDER** |
| ) | **COMPELLING DISCOVERY AND** |
| Defendants. ) | **AWARDING SANCTIONS** |
| ) | |

# EXHIBIT 12

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXPERIAN INFORMATION SOLUTIONS, INC. and EXPERIAN MARKETING SOLUTIONS, INC., | |
| Plaintiffs, | No. 04 C 4437<br>Judge James B. Zagel |
| v. | |
| I-CENTRIX, L.L.C. and ROBERT G. GAITO, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Experian Information Solutions, Inc. and Experian Marketing Solutions, Inc. (collectively "Experian") are data management services companies. In July 2004, they filed suit against former employee Robert Gaito, and I-Centrix, L.L.C. ("I-Centrix"), the company Gaito founded after leaving Experian, raising claims of breach of contract and misappropriation of trade secrets. During discovery, Plaintiffs propounded requests seeking information about the formation of I-Centrix, its recruitment of former Experian employees and clients, and the development of I-Centrix's database management products. What is slightly unusual about the request is the means by which Plaintiffs seek to capture this information: through the creation of a bitstream copy, or mirror image, of Gaito's personal computer and an I-Centrix computer known as "Aries." Defendants (not surprisingly) object to the scope of Plaintiffs' request as well as the means suggested, fearing that Plaintiffs will capture confidential, proprietary and privileged information while simultaneously bringing Defendants' business to a grinding halt at a critical moment in their business cycle.

This is not the first time a federal court has faced this type of discovery dispute. In *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000), an Indiana district court established a procedure under which an independent expert created a mirror image of the hard drive of the defendants' computer.[1] After examining the hard drive copy, the expert compiled all documents, electronic-mail messages, presentations, spreadsheets and other files found on the computer that were "reasonably likely to contain material potentially relevant to [the] case" and provided those documents to the defendants' counsel. *Id.* Recovering relevant information previously deleted from the computer was a central component of the expert's task. Therefore, the expert was permitted to search for previously deleted files falling within the scope of discovery, as well as information about the timing and nature of the deletions and the contents of those files. *Id.* However, the expert was prohibited from copying files of operating systems. *Id.* Upon reviewing documents identified and recovered by the expert, the defendants supplemented their responses to previous discovery requests with those records. *Id.* at 642. *See also Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1052-55 (S.D. Cal. 1999) (permitting expert

---

[1] As that Court observed:
> The central principles governing this motion are the following. First, computer records, including records that have been 'deleted,' are documents discoverable under Fed. R. Civ. P. 34. (citations omitted). Second, the court has the power and duty under Fed. R. Civ. P. 26(c) to protect the targets of discovery from annoyance, embarrassment, oppression, or undue burden or expense. Third, although the scope of discovery is generally broad, the court may limit discovery where the burden or expense of the proposed discovery outweighs its likely benefits. See Fed. R. Civ. P. 26(b)(2)(iii). If such limits are imposed, the court should consider the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Id.* at 640.

to make a mirror image of defendant's computer after plaintiff learned that defendant may have deleted electronic mail communications requested during discovery).

Defendants, who are reluctant to submit to any copying of their computers for the reasons mentioned above, ask that any copying ordered by the court adhere to the *mySimon* procedure. For their part, Plaintiffs contend that the *mySimon* procedure is too narrow to yield the information they seek. The thrust of the *mySimon* procedure was directed toward the recovery of documents, whereas in this case Plaintiffs seek not only documents stored on Defendants' computers but information including the "*volume* and *types* of data or documents contained on the [relevant] hard drives." (Pl. Mem. at 3) (emphasis added) Plaintiffs want to create a bitstream copy of Defendants' computers in order to evaluate "relevant contextual data" and "metadata" found within the copy, which will reveal information such as "the historical use of computers used to develop source code."[2] (Pl. Mem. at 4)

The *mySimon* case sets forth a process for managing the discovery of information stored on computers. It does not inherently limit the kind of data that might be recovered under the process it proposes. I believe Plaintiffs' discovery requests can be accommodated within the general framework of the *mySimon* procedure, with appropriate modification. However, to facilitate the recovery of metadata – an issue not explicitly dealt with under *mySimon* – Plaintiffs must provide additional information about the metadata they seek: to wit, and with as much

---

[2]Pressed to be more specific about the scope of the contextual and metadata they expect to find on the bitstream copy, Plaintiffs point to testimony from Defendant's *Rule 30(b)(6)* expert. That expert revealed that Defendant Gaito wrote I-Centrix code in Fortran. Plaintiffs therefore wish to discover information about the use of Fortran files on Gaito's personal computer, including the number of Fortran files that exist, or once existed, on Gaito's computer and the frequency with which those files were edited, printed and copied. (Pl. Rep. Mem. at 5.)

specificity as possible, a list of the nature and scope of the metadata they expect might be found on both Gaito's and the Aries computer.[3] Following the procedure outlined below, an independent expert will review the bitstream copy for contextual information and metadata that falls within the scope of this list, as well as for documents relevant to Plaintiffs' discovery requests.

The parties will adhere to the following process in developing and analyzing a bitstream copy of the relevant computers and thereafter delivering relevant information to Plaintiffs' counsel:[4]

***Independent Expert***
- No later than July 25, 2005, Plaintiffs will identify an independent expert to prepare a "bitstream" of Defendants' computers. Defendants will have an opportunity to object to Plaintiffs' recommended expert before I appoint the expert. If the parties cannot agree on an expert, I will designate an expert based on short lists provided by the parties.
- Pursuant to the procedure outlined in *mySimon*, the independent expert will serve as an officer of the court. To the extent that this expert has access to information protected by the attorney-client privilege, disclosure of information to the expert will not result in a waiver of that privilege.
- The costs of the independent expert will be borne by Plaintiffs.

---

[3]Based on Plaintiffs' Motion to Compel, that list will include the following types of information: whether the hard drives on either computer have been erased or reformatted; whether any tools designed to "manipulate data" (Plaintiffs must provide examples) have been installed on the hard drives; information about the number and type of files stored on the hard drives in the past; the origin of files, and the manner in which files were deleted and removed from the computers if the files no longer exist.

[4]For the time being, this procedure applies only to the copying of Defendant Gaito's computer. Based on Defendants' contention that the creation of a bitstream copy of Aries will require at least 48 hours, during which time I-Centrix will have to suspend all business operations, I asked the parties to determine whether it would be possible to copy the Aries computer with less disruption to Defendants' business. Once this issue is resolved, creation and review of a bitstream copy of Aries will proceed under substantially the same process.

***Scope of the Bitstreaming Process***
- The independent expert will produce a bitstream copy of Defendant Gaito's personal computer at a day and time agreed to by the parties, deferring to Defendants' business schedule but selecting a date as soon as is reasonably possible. Plaintiffs may not participate in, observe, or attend the making of the bitstream copy.
- After reviewing the bitstream copy, the expert will, as Plaintiffs requested, identify the types and volume of data contained on the computer and prepare a report summarizing this information. To the extent that Plaintiffs have identified other "metadata" they wish to discover, the expert will also identify and summarize this information. Finally, the expert will identify documents found on Gaito's hard drive that are "reasonably likely" to be or to contain material "potentially relevant to this case" without describing the content of those documents. *See Simon*, 194 F.R.D. at 641.
- The expert will provide the report to Defendants' counsel and the court. Defense counsel will review the report and determine whether any of the documents, data or metadata are subject to claims of privilege.
- Defendants will then provide the report to Plaintiffs, redacting any information falling within an applicable privilege.[5] Defendants will also supplement their responses to Plaintiffs' discovery requests by turning over all documents or data identified in the report that is responsive to Plaintiffs' discovery requests and not subject to privilege.
- Defendants will submit to the court a list of all documents and data and metadata identified in the report but not provided to Plaintiffs, whether on the basis of privilege or because Defendants consider the information non-responsive or beyond the scope of Plaintiffs' request or otherwise irrelevant. I will then determine whether any additional data must be given to Plaintiffs.

***Additional Provisions***
- The expert will sign the protective order in this case and will retain the bitstream copy of all files provided to Defendants' counsel until the end of this litigation. At the end of the litigation, the expert will destroy the records and confirm such destruction to the satisfaction of Defendants. The expert will not disclose the contents of any files, documents or data to Plaintiffs or their counsel or other persons.
- The expert may designate assistants to help in this project. Each assistant will sign the protective order and will be subject to all provisions applicable to the expert.
- Because the expert will serve as an officer of the court, disclosure of a communication to the expert will not be deemed a waiver of the attorney-client privilege or any other privilege.

---

[5] I expect redactions to the report to be limited, as it should be the information identified by the report, rather than the report itself, that contains any privileged information. However, in light of the broad focus of Plaintiffs' request, I recognize that this might not be the case.

5

This process differs significantly from the one proposed by Plaintiffs, in which the expert's report would be provided simultaneously to Plaintiffs and Defendants, and in which the expert would provide data directly to Plaintiffs subject only to Defendants' review for privilege. However, I must balance Plaintiffs' right to discovery and Defendants' right to be free of otherwise excessive or disruptive discovery requests. *See Fed. R. Civ. P. 26.* Given the breadth of Plaintiffs' request, and their pursuit of metadata that might otherwise be related to information beyond the scope of this suit, I believe this process is reasonable. That said, I will closely scrutinize Defendants' refusal to provide data identified within the expert's report and not subject to privilege.

The Motion to Adopt Discovery Procedures is GRANTED.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: July 21, 2005