**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM A. MORGAN, JR., P.C.,                )
                                             )
                        Plaintiff,           )        CIVIL ACTION NO. 05-1561
                                             )
        v.                                   )
                                             )
SUSAN WISWELL,                               )
ANGELA MURPHY,                               )
JOHN DOE(S) 1-10,                            )
                                             )
                        Defendants.          )
                                             )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE**
**TO AMEND COMPLAINT AND JOIN DEFENDANT**

# EXHIBIT 1

# [PROPOSED] FIRST AMENDED COMPLAINT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WILLIAM A. MORGAN, JR., P.C.,   )
          )
     Plaintiff,   )  CIVIL ACTION NO. 05-1561
          )
     v.     )
          )  JURY TRIAL DEMANDED
SUSAN WISWELL,     )
ANGELA MURPHY,     )
DONALD WISWELL,    )
          )
     Defendants.  )
          )

## FIRST AMENDED COMPLAINT

Plaintiff William A. Morgan, Jr., P.C. ("Morgan"), by its undersigned attorneys, makes the following allegations upon information and belief against Defendants Angela Murphy ("Murphy"), Susan Wiswell, and Donald Wiswell (collectively "Defendants"):

## NATURE OF THE ACTION

1. Morgan is a professional accounting firm that provides tax, accounting, and related consulting services to individuals and businesses.

2. Murphy and Susan Wiswell are former employees of Morgan. Donald Wiswell is Susan Wiswell's husband.

3. Prior to and after Angela Murphy and Susan Wiswell resigned their positions with Morgan, Defendants repeatedly and continually attempted to gain and did gain unauthorized access to the electronic mail ("email") accounts of Morgan's President (Mr. William Morgan) and Vice President (Ms. Merritt Wingate). Defendants accessed, intercepted, and otherwise misappropriated Morgan's stored email messages, forwarded copies of Morgan's email messages to their own private email accounts, read those email messages, and otherwise accessed, used, copied, transmitted, and misappropriated other valuable information on Morgan's computer

system concerning Morgan and its clients. In addition, after Murphy and Susan Wiswell terminated their employment on short notice, Defendants sent Morgan fictitious resumes, arranged bogus interviews with Morgan for which no one would appear, tampered with Morgan's online account with the Monster.com employment service, obtained unauthorized access to Morgan's email system, and deleted emails from legitimate job candidates—all in order to interfere with Morgan's efforts to hire personnel to replace Murphy and Susan Wiswell, to damage Morgan's ability to operate, and to steal Morgan's clients. Murphy also made false statements to one of Morgan's clients in an apparent attempt to interfere with Morgan's business relationship with that client. Defendants also may have engaged in other unlawful acts, and harmed Morgan in other ways, which Morgan has not yet discovered.

4.    Defendants' acts constitute computer fraud and abuse, intentional interception of electronic communications, unauthorized access to stored communications, unfair competition, misappropriation of trade secrets, trespass to personal property, breach of fiduciary duty, and conspiracy under federal and local law.

5.    Defendants' acts have interrupted Morgan's business activities and have caused damages and irreparable injury to its reputation and goodwill.

## JURISDICTION AND VENUE

6.    This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367; 18 U.S.C. §1030; and 18 U.S.C. § 2707.

7.    Venue in this judicial district is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to Morgan's claims occurred in this district.

## THE PARTIES

8.    Plaintiff William A. Morgan, Jr., P.C. ("Morgan") is a professional corporation duly organized and existing under the laws of the District of Columbia with a principal place of

business located at 4910 Massachusetts Ave, NW, #110, Washington, D.C. 20016.

9.    Defendant Angela Murphy resides at 4028 Manheim Court, Jefferson, Maryland 21755, and was formerly employed by Morgan as a receptionist, promoted to office manager, and later promoted again to a bookkeeper.

10.    Defendant Susan Wiswell resides at 4295 Hollow Court, Middletown, Maryland 21769, and was formerly employed by Morgan as a licensed Certified Public Accountant.

11.    Defendant Donald Wiswell also resides at 4295 Hollow Court, Middletown, Maryland 21769, and is the husband of Susan Wiswell.

## MORGAN'S BUSINESS OPERATIONS

12.    William A. Morgan, Jr., P.C. is a CPA firm providing accounting and tax services to various high net worth individuals and businesses in the metropolitan D.C. area.  Mr. William Morgan is President of Morgan, and Ms. Merritt Wingate is Vice President of Morgan.  Ms. Wingate's primary responsibilities include scheduling the accounting and tax work done for clients, supervising the accounting staff, preparing the tax returns for a number of large clients, and reviewing most of the accounting and tax work done by the rest of the accounting staff.

13.    Morgan uses the GroupWise® email system.  Once logged into a GroupWise® email account, a user can read, copy, alter, print, or delete any message in that user's folders. (Ex. A. Rosenbaum Declaration, ¶ 9.)[1]  If the user is also logged into Morgan's computer network, the user can access and transmit documents to other accounts outside of Morgan's offices by attaching the document to an email message.  A user with administrative rights, such as an office manager, would have access to all documents in Morgan's computer system.  (Id., ¶ 11; Ex. B, Wingate Declaration, ¶ 5.)  Morgan instituted an email policy on or about June 2,

---

[1]  Citations to Exhibits containing Declarations refer to the Declarations attached to Morgan's Verified Complaint filed August 2, 2005.  Morgan incorporates those declarations by reference in this First Amended Complaint.

2002. (Ex. B, Wingate Declaration, ¶ 4.)  A copy of that policy is attached as Exhibit 1 to the Declaration of Merritt Wingate.  The policy states that Morgan's computers and email system, and any communications prepared using the firm's computers and email system, are Morgan's property and are to be used only for Morgan's business purposes.

14.     As pertinent here, Morgan uses passwords to protect its computer network and email system.  Each Morgan employee has a NetWare password to Morgan's computer network and a GroupWise® password to Morgan's email system.  Employees can access their own email account in one of two ways: (1) they can access it locally in Morgan's offices; or (2) they can access it remotely through the Internet.  In addition, Mr. Morgan, Ms. Wingate, and the office manager have "administrative rights" to access the email accounts of other employees.  (Id., ¶ 5.)

15.     Much of the information contained in Morgan's computer system is highly confidential to Morgan and/or to its clients.  (Id., ¶ 6.)

16.     The GroupWise® software allows users to create a setting in the email system, known as a "rule," that acts upon email messages.  Only people with password access to an email account can create a rule for the account.  Thus, to create a rule in a Morgan email account, a person must sign on using a GroupWise® password (his/her own or someone else's) specific to that email account.  (Ex. A, Rosenbaum Declaration, ¶ 12.)  As will become relevant later, both Murphy and Susan Wiswell knew Ms. Wingate's email password.  Moreover, as Morgan's former office manager, Murphy had access to the passwords of every Morgan employee.  (Ex. B, Wingate Declaration, ¶ 7.)  The only other people who knew Ms. Wingate's GroupWise® password were Mr. Morgan and Ms. Natalia Lamb, who is Morgan's current office manager and discovered the creation of the email rule that is, in part, the basis for this lawsuit.  (Id.)  The only other person who knew Mr. Morgan's GroupWise® password was Angela Murphy.

4

## MORGAN'S EMPLOYMENT OF MURPHY AND SUSAN WISWELL

17.    Morgan hired Angela Murphy as a receptionist in September 1998.  Murphy was promoted to office manager in September 1999, and later was promoted to bookkeeper in June 2002.  (Ex B, Wingate Declaration, ¶ 8.)

18.    Morgan hired Susan Wiswell in April 2001 to work as a Certified Public Accountant to prepare and review tax returns.  (Id., ¶ 9.)

19.    On the night of June 2, 2005, after Morgan's office had closed for the day, Susan Wiswell returned to the office, cleaned out her belongings, and left a resignation letter on Mr. Morgan's chair.  Mr. Morgan discovered her resignation letter the next morning.  She did not give any advance notice that she would be terminating her employment; her resignation was effective immediately.  (Id., ¶ 10.)

20.    On June 16, 2005, Murphy verbally informed Mr. Morgan and Ms. Wingate that she would be terminating her employment with Morgan in two weeks.  Mr. Morgan asked Murphy if she would continue her employment with Morgan through August 15, 2005 to allow Morgan time to find a replacement, as she was the only bookkeeper at the time, but Murphy refused, stating that her last day would be June 30, 2005.  (Id., ¶ 11.)

21.    The next day, June 17, 2005, Murphy arrived for work at Morgan's offices. Despite having given Morgan two weeks notice, Murphy permanently departed Morgan's premises by approximately 11:30 a.m., without telling anyone she was leaving.  (Id., ¶ 12.)

## DEFENDANTS' WRONGFUL ACTS

22.    After terminating her employment with Morgan, Susan Wiswell was employed by Hildebrand, Limparis & Associates, CPAs, P.C., 117 W. Patrick Street in Frederick, Maryland.

23.    Morgan later discovered that before terminating their employment, Defendants obtained access to Morgan's computer system in excess of any authorization that either Murphy

or Susan Wiswell had to access Morgan's email server. Specifically, Defendants signed onto Morgan's email server using the username and password of Mr. Morgan and Ms. Wingate and created a "rule" in each email account intended to cause copies of all incoming and outgoing email to be forwarded to one of Defendants' two Yahoo! email accounts, namely, notmuchman_0l@yahoo.com and johnjohnson_1974@yahoo.com. Murphy disclosed Mr. Morgan's confidential GroupWise password® to Susan Wiswell.

24.    As a result of these forwarding rules, email correspondence to and from Ms. Wingate and Mr. Morgan, including business-related correspondence with employees and clients as well as personal correspondence with family and friends, was forwarded by blind copy to one of these two Yahoo! accounts. The forwarding rule in Mr. Morgan's email account was inactive at the time it was discovered.

25.    The first email forwarded by blind copy to the Yahoo! accounts was sent at approximately 8:37 a.m. on June 17, 2005. (Ex. B, Wingate Declaration, ¶ 13.) As explained above, this was the same day that Murphy arrived for work in the morning and left by noon without telling anyone—Murphy's last day at Morgan's office.

26.    Because the email messages were forwarded by blind copy and the forwarding rule was located in a seldom-accessed part of her email account, Ms. Wingate did not know that copies of her email correspondence were being forwarded to these Yahoo! email accounts. Neither she nor Mr. Morgan had any reason to believe that their email accounts had been tampered with in any way.

27.    On or about June 27, 2005, while looking through the "Sent" email folder in her email account, Ms. Wingate discovered that several hundred of her email messages had been forwarded by blind copy to the email account notmuchman_0 l@yahoo.com, among them

messages containing confidential information (e.g., salary and financial information). (Ex. B, Wingate Declaration, ¶ 13; Ex. A, Rosenbaum Declaration, ¶ 24.) Ms. Wingate informed Ms. Lamb. (Ex. B, Wingate Declaration, ¶ 13.) Upon further investigation, Ms. Lamb discovered that forwarding rules for the two Yahoo! email accounts had been created in the email accounts of Ms. Wingate and Mr. Morgan. At the time it was discovered, the forwarding rule in Mr. Morgan's account was inactive. (Ex. C, Lamb Declaration, ¶ 6.)

28.    Morgan deactivated the forwarding rule in Ms. Wingate's account, but did not delete the forwarding rule in either account. (Id., ¶ 6.) It kept the now-inactive rules in its system while it investigated the situation. Suspecting that Murphy and/or Susan Wiswell had created the forwarding rules, Morgan disabled the NetWare® passwords used by Murphy and Susan Wiswell to access Morgan's computer network, but inadvertently failed to disable the GroupWise® passwords that Defendants had used to gain remote access to Morgan's email system through the Internet. (Id., ¶ 8.)

29.    Unbeknownst to Morgan, Defendants were able to access Morgan's email system remotely through the Internet using GroupWise® passwords, even after Morgan had disabled the NetWare® passwords used by Murphy and Susan Wiswell to access Morgan's computer network. (Ex. A, Rosenbaum Declaration, ¶ 8.) Shortly after the forwarding rules had been discovered and deactivated, Defendants obtained remote access to the email accounts of both Ms. Wingate and Mr. Morgan through the Internet, without authorization, and deleted the forwarding rules. (Ex. C, Lamb Declaration, ¶ 7.)

30.    Defendants also continued to use Susan Wiswell's and/or Murphy's username and password to log into Morgan's email system from outside Morgan's offices, through remote Internet access, even after Murphy and Susan Wiswell had terminated their employment. For

example, Defendants remotely accessed Susan Wiswell's old email account at Morgan on the evening of July 7, 2005, more than a month after Susan Wiswell resigned, and read a confidential email that one of Morgan's clients had sent to Mr. Morgan and Susan Wiswell that same day.  Defendants forwarded the email from Susan Wiswell's email account at Morgan to the notmuchman_0l@yahoo.com email account.  Ms. Wingate later discovered the forwarded email when checking for client-related email in Susan Wiswell's employee email account.  This is done routinely when an employee leaves to ensure that all client matters are attended to.  (Ex. B, Wingate Declaration, ¶ 14.)  Defendants were not authorized to access Susan Wiswell's or Murphy's email accounts on Morgan's email system after Susan Wiswell and Murphy terminated their employment with Morgan.

31.     After Susan Wiswell and Murphy terminated their employment, Defendants also appear to have signed on to Ms. Wingate's email account and deleted emails from job applicants who might have replaced Susan Wiswell and/or Murphy.  Copies of email messages sent to Ms. Wingate's email account at Morgan are automatically forwarded to Ms. Wingate's Blackberry wireless email device.  After receiving forwarded email messages from job candidates on her Blackberry, however, Ms. Wingate discovered that the original emails had been deleted from her email account at Morgan.  (Id., ¶ 15.)  Murphy and Susan Wiswell were never authorized to sign on to Ms. Wingate's email account and read or delete her emails.

32.     By signing on to Morgan's email server, accessing confidential client-related email messages, and forwarding such messages to the Yahoo! email accounts, Defendants obtained unauthorized access to Morgan's computer system, its email server, and the electronic messages and documents stored in Morgan's system.  By creating the rule in Mr. Morgan and Ms. Wingate's email accounts and by accessing, reading, and deleting emails in Ms. Wingate's

account, Defendants exceeded any authorization that Susan Wiswell or Murphy had to access Morgan's email system, either before or after they terminated their employment with Morgan.

33.    On or about July 14, 2005, Morgan disabled the GroupWise® passwords that Defendants had used to access Morgan's email system, and instructed all of its employees to change their email passwords as well. (Id., ¶ 16.) Defendants were thus prevented from accessing Morgan's email system, even remotely through the Internet.

34.    After Morgan disabled Murphy and Susan Wiswell's GroupWise® passwords, Defendants made more than 110 attempts to hack into Morgan's email system. (Ex. C, Lamb Declaration, ¶ 4.) An investigation of Morgan's server access logs revealed that, after Morgan's employees changed their passwords, Defendants made repeated attempts to access Morgan's email system by using the usernames and invalid passwords for Murphy, Susan Wiswell, Ms. Wingate, Mr. Morgan, Ms. Lamb, and Ms. Marci Vergillo (Morgan's receptionist). (Id.; Ex. A, Rosenbaum Declaration, ¶ 14, 16.) Copies of these server access logs are attached as Exhibit 1 to the Declaration of Natalia Lamb and as Exhibits 2, 6, and 7 to the Declaration of Alex Rosenbaum. These failed attempts were not made by Morgan's employees; none of those employees made unsuccessful attempts to log into Morgan's email system at those times. (Ex. B, Wingate Declaration. ¶ 3; Ex. C, Lamb Declaration, ¶ 3; Ex. D, Morgan Declaration; Ex. E, Vergillo Declaration.) It is likely that these attempts to hack into Morgan's email system were made using a password cracker program because there are multiple login attempts made in very short intervals (i.e., five attempts per username within a period of approximately 26 seconds). (Ex. A, Rosenbaum Declaration, ¶¶ 14, 16.) Server access logs showing these multiple attempts within very short time intervals are attached as Exhibit 6 to the Declaration of Alex Rosenbaum.

35.    As a result of its investigation, Morgan discovered that Defendants had been

accessing or attempting to access Morgan's email system.  (Ex. C, Lamb Declaration, ¶ 9; Ex. A, Rosenbaum Declaration, ¶ 21.)  During all or part of that time, Defendants could have accessed, read, deleted, copied, altered, or transmitted virtually any document in Morgan's computer system, especially since Murphy had the ability (but not the authorization) to access all of Morgan's email accounts and documents because of her former position as office manager.  Any such access by Defendants would be unauthorized.

36.     Because Morgan performs accounting work for some clients only periodically, such as quarterly or annually, it may not discover on its own if Murphy and Susan Wiswell have stolen or deleted client information until the next time Morgan performs work for such clients, if at all.  Under the circumstances, it would be extremely expensive and time consuming for Morgan to attempt to make such a determination now, on its own, and there is no guarantee that Morgan would discover all of the information that Defendants may have stolen or deleted.  (Ex. B, Wingate Declaration, ¶ 17.)

37.     Murphy has also caused problems with one of Morgan's clients, for whom Murphy was the primary bookkeeper, by making false statements to the client via email.  On June 17, 2005, Murphy sent the client an email falsely stating that Mr. Morgan had demanded Murphy's resignation.  In truth, Mr. Morgan made no such demand; Murphy tendered her resignation voluntarily without being asked to do so.  (Id., ¶ 18.)

38.     Defendants also sent fictitious resumes and scheduled interviews with Morgan by email.  An individual using the name "Tara Benedict" sent a resume by email to Ms. Wingate.  According to the resume, "Tara Benedict" was purportedly employed by Watkins, Meegan, Drury & Company, L.L.C., and lived at 425 Kentlands Boulevard in Gaithersburg, Maryland.  Ms. Wingate also received a resume by email from an individual using the name "David

Waskiewicz." According to his resume, Waskiewicz was employed by Aronson & Company and had attended Indiana University. Copies of those emails (showing the IP Addresses) and resumes are attached as Exhibits 10-13 to the Declaration of Alex Rosenbaum. Ms. Wingate arranged interviews with both individuals by email, but neither of them showed up. (Ex. B, Wingate Declaration, ¶ 19.)

39.    Wingate later learned that no one named "Tara Benedict" was employed at Watkins, Meegan, Drury & Company, L.L.C., and that no one named "David Waskiewicz" was employed by Aronson & Company. She also learned that the home addresses given for both individuals were fictitious addresses. (Id., ¶ 20.) She noted similarities between "Tara Benedict" and Susan Wiswell and between "David Waskiewicz" and Murphy, such as the fact that Susan Wiswell had previously been employed by Watkins, Meegan, Drury & Company, L.L.C. and previously lived in the Kentlands community in Gaithersburg, Maryland, and that Murphy attended college in Indiana. (Id.)

40.    Upon investigation, Morgan discovered that the emails from "Tara Benedict" and "David Waskiewicz," and the numerous attempts to hack into Morgan's email system through the Internet, had all come from the same two Internet Protocol (IP) addresses (i.e., 67.20.56.211 and 209.166.2.130). (Ex. A, Rosenbaum Declaration, ¶ 20.) Morgan discovered that one of those IP addresses (i.e., 209.166.2.130) belongs to Susan Wiswell's current employer and that the other IP Address (i.e., 67.20.56.211) is linked to Donald Wiswell's computer in the Wiswells' home in Middletown, Maryland. (Id., ¶¶ 14, 16-20.) Copies of documents showing the same two IP addresses for those emails and the repeated attempts to access Morgan's email system through the Internet are attached as Exhibits 6-13 to the Declaration of Alex Rosenbaum. A chart outlining the connection between these emails and failed attempts to log into Morgan's

11

email system is attached as Exhibit 14 to the Declaration of Alex Rosenbaum.

41.    At least some of Defendants' unauthorized access and attempts to access Morgan's computers remotely through the Internet were made by Defendants using a computer owned by Donald Wiswell and used with his knowledge and permission.

42.    Defendants also used Morgan's password to access its online account with the Monster.com employment service and alter Morgan's search criteria.  As a result, Morgan stopped receiving resumes from job candidates, which further impeded Morgan's hiring efforts.

43.    Defendants acted in concert and shared information about their activities, including, for example, exchanging emails among Angela Murphy, Susan Wiswell, and Donald Wiswell about the termination of Murphy's employment with Morgan and the results of Defendants' surveillance of Morgan's email correspondence, among other things.  To the extent Susan Wiswell performed the wrongful acts described in this First Amended Complaint, Angela Murphy and Donald Wiswell aided and abetted such acts and conspired to commit them.

44.    As reflected by their conduct in terminating their employment with Morgan on short or false notice, sending fictitious resumes to Morgan, scheduling bogus interviews, deleting emails to Ms. Wingate from legitimate job candidates, tampering with Morgan's Monster.com account, and relentlessly accessing and attempting to access Morgan's email system without authorization, and surreptitiously forwarding Morgan's confidential business information and client communications, Defendants' clear motive and purpose was to leave Morgan understaffed, to interfere with its ability to hire employees to replace Defendants, to steal or destroy Morgan's proprietary business information, to steal Morgan's clients, to damage Morgan's reputation, and ultimately to damage Morgan's ability to operate its business and serve its clients.

## FIRST CLAIM FOR RELIEF
### Violation of the Computer Fraud and Abuse Act
### (18 U.S.C. § 1030)

45.     Morgan repeats and realleges each and every allegation set forth herein.

46.     Morgan owns and maintains one or more "protected computers," as that term is defined in 18 U.S.C. § 1030 (e)(2)(b), through which email transmissions are sent, received, stored, transmitted and/or disseminated in interstate commerce.

47.     Without authorization, Defendants intentionally accessed and attempted to access Morgan's protected computers by accessing and attempting to access, using, copying, transmitting, deleting, and otherwise tampering with Morgan's email messages and email accounts, and as a result of such conduct and other conduct set forth in this First Amended Complaint have caused "damage," as that term is defined in 18 U.S.C. §1030 (e)(8).

48.     Without authorization, Defendants knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct and other conduct set forth in this First Amended Complaint, intentionally caused "damage," as that term is defined in 18 U.S.C. §1030 (e)(8), to a protected computer, as that term is defined in 18 U.S.C. §1030 (e)(2)(b).

49.     As a result of Defendants' conduct set forth in this First Amended Complaint, Morgan has suffered "loss," as that term is defined in 18 U.S.C. §1030 (e)(11), of at least the jurisdictional amount of $5,000 during the one-year period preceding the filing of this First Amended Complaint.

50.     Defendants' acts set forth in this First Amended Complaint constitute a violation of Section 1030(a)(5) of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5).

51.     As a result of Defendants' acts set forth in this First Amended Complaint, Morgan has been irreparably injured.

52.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

## SECOND CLAIM FOR RELIEF
### Interception of Electronic Communications
### in Violation of the Electronic Communications Privacy Act
### (18 U.S.C. §§ 2510 et seq.)

53.    Morgan repeats and realleges each and every allegation set forth herein.

54.    Through the use of an electronic device, Defendants engaged in the unlawful conduct set forth in this First Amended Complaint, including intentionally and without authorization intercepting and accessing the content of electronic communications intended for and/or sent by Morgan's employees, and thus are in violation of the Electronic Communications Privacy Act, 18 U.S.C. §2511(l)(a).

55.    Defendants' acts set forth in this First Amended Complaint were willful and knowing, and were committed for the purpose of conducting a tortious act.

56.    As a result of Defendants' acts set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

57.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

## THIRD CLAIM FOR RELIEF
### Unlawful Access to Stored Communications
### in Violation of the Electronic Communications Privacy Act
### (18 U.S.C. §§ 2101 et seq.)

58.    Morgan repeats and realleges each and every allegation set forth herein.

59.    Morgan's place of business and computer system constitute "a facility through which an electronic communication service is provided," as used in 18 U.S.C. § 2701.

60.    As set forth in this First Amended Complaint, Defendants accessed without

authorization, or exceeded their authorized access to, Morgan's computer system, which is involved in interstate commerce and communication, and thereby obtained access to electronic communications stored on Morgan's computer system.

61.    Defendants' acts set forth in this First Amended Complaint constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701.

62.    Defendants' acts set forth in this First Amended Complaint were done knowingly and intentionally and caused damage and loss to Morgan.

63.    As a result of Defendants' acts, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

64.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

## FOURTH CLAIM FOR RELIEF
### Unfair Competition
### (15 U.S.C. §1125(a))

65.    Morgan repeats and realleges each and every allegation set forth herein.

66.    Defendants' acts set forth in this First Amended Complaint constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.    Defendants' acts set forth in this First Amended Complaint were done willfully and maliciously with the intent to injure Morgan.

68.    As a result of Defendants' acts of unfair competition set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

69.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

## FIFTH CLAIM FOR RELIEF
### Civil Conspiracy
### (D.C. Common Law)

70.    Morgan repeats and realleges each and every allegation set forth herein.

71.    Defendants agreed with each other to participate in the unlawful acts set forth in this First Amended Complaint, or in lawful acts in an unlawful manner, as part of a common scheme.

72.    The Defendants' overt acts, as set forth in this First Amended Complaint, undertaken pursuant to and in furtherance of their common scheme, caused injury to Morgan.

73.    Defendants' acts set forth in this First Amended Complaint constitute a civil conspiracy under the common law of the District of Columbia.

74.    As a result of Defendants' acts set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

75.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

## SIXTH CLAIM FOR RELIEF
### Trespass To Personal Property
### (D.C. Common Law)

76.    Morgan repeats and realleges each and every allegation set forth herein.

77.    The computers and computer network (collectively "computer system") that Morgan uses to operate it business and to communicate with its customers are the personal property of Morgan.

78.    Without authorization from Morgan, Defendants have engaged in the acts set forth in this First Amended Complaint, including accessing, using, and tampering with Morgan's computer system.

16

79.    Defendants' acts set forth in this First Amended Complaint constitute trespass to Morgan's personal property in violation of the common law of the District of Columbia.

80.    As a result of Defendants' acts set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

81.    Unless enjoined, Defendants' act will continue to cause irreparable injury and damage to Morgan.

## SEVENTH CLAIM FOR RELIEF
### Violation of the Uniform Trade Secrets Act
### (D.C. Code §§ 36-401 et seq.)

82.    Morgan repeats and realleges each and every allegation set forth herein.

83.    Morgan's email account passwords, access information, business records, and electronics communications between and among its employees and its clients constitute trade secrets as defined by D.C. Code § 36-401, and provide an economic benefit to Morgan by virtue of their trade secret status.

84.    Defendants knew or should have known that Morgan considered such information to be trade secrets.

85.    Morgan took steps to restrict access to, and to maintain the secrecy and security of, its business records, email system, email passwords, and internal and client email correspondence.  Such information was not easily acquired or duplicated by others, apart from those obtaining access to such confidential and highly sensitive information in the course of their employment with Morgan, and subject to restrictions imposed by Morgan to maintain the secrecy and security of such information.

86.    Morgan has expended significant time and money to develop its email communication system and security procedures, and to protect its email passwords, email

17

correspondence, and business records. Such information and procedures are valuable to Morgan.

87.    Defendants' acts set forth in this First Amended Complaint constitute misappropriation of Morgan's trade secrets in violation of the Uniform Trade Secrets Act, D.C. Code §§ 36-401 et seq.

88.    Defendants' acts set forth in this First Amended Complaint are and have been willful and/or knowing.

89.    As a result of Defendants' acts of misappropriation set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

90.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

## EIGHTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (D.C. Common Law)

91.    Morgan repeats and realleges each and every allegation set forth herein.

92.    Morgan reposed in Susan Wiswell and Murphy, and Susan Wiswell and Murphy knowingly accepted, Morgan's trust and confidence regarding its email system, email communications, email account password information, and business information.

93.    Morgan relied on Susan Wiswell and Murphy to act in the best interests of Morgan, and Susan Wiswell and Murphy had full knowledge of Morgan's reliance.

94.    Susan Wiswell and Murphy exploited Morgan's reliance for their own personal gain by engaging in a course of conduct designed to harm Morgan.

95.    Susan Wiswell's and Murphy's acts set forth in this First Amended Complaint constitute breach of fiduciary duty in violation of the common law of the District of Columbia.

96.    Susan Wiswell's and Murphy's acts set forth in this First Amended Complaint

were willful and/or knowing.

97.    As a result of the breach of fiduciary duty by Susan Wiswell and Murphy set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

98.    Unless enjoined, Defendants' acts will continue to cause irreparable injury and damage to Morgan.

**NINTH CLAIM FOR RELIEF**
**Unfair Competition**
**(D.C. Common Law)**

99.    Morgan repeats and realleges each and every allegation set forth herein.

100.    Defendants' acts set forth in this First Amended Complaint constitute unfair competition in violation of the common law of the District of Columbia.

101.    Defendants' acts set forth in this First Amended Complaint were done willfully and maliciously with the intent to injure Morgan.

102.    As a result of Defendants' acts of unfair competition set forth in this First Amended Complaint, Morgan has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

103.    Unless enjoined, Defendants' acts will continue to irreparably injure and cause damage to Morgan.

**PRAYER FOR RELIEF**

WHEREFORE, Morgan prays this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

1.    Grant a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and all others in privity, active concert, or participation with Defendants from:

19

(a)    engaging in computer fraud and abuse;

(b)    intercepting or otherwise accessing communications or correspondence to or from Morgan and/or its employees;

(c)    accessing or attempting to access Morgan's computer network, electronic mail ("email") system, correspondence, or other business or client information, or otherwise engaging in unauthorized or unlawful acts (including the acts set forth in this First Amended Complaint) that affect Morgan's computer network, email system, correspondence, business and client records or information, its business operations, or its relationships with its existing and prospective clients;

(d)    conspiring or otherwise agreeing to participate in an unlawful act, or in a lawful act in an unlawful manner, to harass or injure Morgan;

(e)    misappropriating Morgan's trade secrets or other proprietary information or materials;

(f)    trespassing on Morgan's personal property;

(g)    using any trade practice, including those complained of herein, that tends to compete unfairly with or to injure Morgan, its business, and/or the goodwill related to its business;

(h)    engaging in any acts, including those complained of herein, that improperly interfere with the business relations of Morgan, including making any false statements about Morgan or the circumstances surrounding the termination of Susan Wiswell's and/or Murphy's employment with Morgan, or the other acts complained of herein; and

(i)    engaging in any acts, including those complained of herein, that breach Susan Wiswell's and/or Murphy's fiduciary duty to Morgan.

20

2.    Order Defendants to:

(a)    destroy or cause to be destroyed all of Morgan's electronic information, and to return or caused to be returned to Morgan all of Morgan's tangible information (such as documents and things), in their possession, custody, or control that were improperly obtained from Morgan; and

(b)    provide a sworn written statement that:

i.    identifies in detail any and all information, documents, and things improperly obtained from Morgan;

ii.    identifies all persons or entities to whom such information was provided or otherwise disclosed; and

iii.    verifies that Defendants have destroyed or cause to be destroyed, or have returned or caused to be returned to Morgan, any and all such information, documents, and things in their possession, custody, or control that were improperly obtained from Morgan.

3    Order Murphy to issue a retraction of her false statement about Morgan complained of herein, and order Defendants to issue retractions of any other false statements they have made about Morgan.

4.    Enter final judgment in favor of Morgan on all of its claims.

5.    Order Defendants to pay Morgan all monetary damages to which it is entitled, in an amount to be determined at trial, including:

(a)    an award of Morgan's damages as a result of Defendants' acts;

(b)    an award of Defendants' profits, if any, arising from Defendants' acts;

(c)    an award of punitive damages, pursuant to 18 U.S.C. §§ 2520 and 2707 and other applicable laws, in light of Defendants' willful and/or knowing acts;

21

(d)    an award of Morgan's reasonable attorneys' fees, pursuant to 15 U.S.C. §
1117, 18 U.S.C. §§ 2520 and 2707, and other applicable laws;

(e)    an award of Morgan's costs and expenses incurred in prosecuting this
action;

(f)    an award of damages of not less than $1,000 for each of Defendants'
hundreds of violations of Section 2701 of the Electronic Communications Privacy Act, pursuant
to 18 U.S.C. § 2707(b) and (c); and

(g)    an award of statutory damages of not less than $10,000 for Defendants'
hundreds of violations of Section 2511 of the Electronic Communications Privacy Act, pursuant
to 18 U.S.C. § 2520(c)(2)(B).

6.    Award such other and further relief as this Court deems just.

## JURY DEMAND

Morgan requests a jury trial for all claims so triable.


Date: February 2 , 2006                    Respectfully submitted,

John F. Hornick (D.C. Bar No. 384701)
Stacy H. King (D.C. Bar No. 473007)
Timothy A. Lemper (D.C. Bar No. 494538)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff
William A. Morgan, Jr., P.C.